# EXHIBIT 1



# Notice of Service of Process

**SOP / ALL**
**Transmittal Number: 18053941**
**Date Processed: 04/18/2018**

| | |
|---|---|
| Primary Contact: | Service Process Team 3-11-309<br>Nationwide Mutual Insurance Company<br>Three Nationwide Plaza<br>Columbus, OH 43215 |
| Electronic copy provided to: | Kevin Jones<br>Cassandra Struble<br>Joshua Schonauer |

| | |
|---|---|
| **Entity:** | National Casualty Company<br>Entity ID Number  3617956 |
| **Entity Served:** | National Casualty Company |
| **Title of Action:** | Acuity, A Mutual Insurance Company vs. National Casualty Company |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Cook County Circuit Court, Illinois |
| **Case/Reference No:** | 2018-CH-04484 |
| **Jurisdiction Served:** | Ohio |
| **Date Served on CSC:** | 04/17/2018 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | National Casualty Company |
| **How Served:** | Client Direct |
| Sender Information: | Orleans Canty Novy, LLC<br>N/A |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

 **Illinois Department of Insurance**

BRUCE RAUNER
Governor

JENNIFER HAMMER
Director

April 11, 2018

National Casualty Company
One West Nationwide Blvd
MC 1-04-701
Columbus, OH 43215-2220

Re:    Case #2018CH4484

Gentlemen:

Enclosed please find copy of Summons and Complaint for Declaratory Judgment and Other Relief received by me as your agent for service of process on April 11, 2018, in my Springfield office in the case of Acuity, A Mutual Insurance Company vs. your company, et al.

Sincerely,

Jennifer Hammer
Director of Insurance

JH:MS:alt
Enclosure

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

L00097807003041718

Summons - Alias Summons                                                                 (12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ACUITY, A MUTUAL INSURANCE COMPANY

v.

NATIONAL CASUALTY COMPANY

No. 2018-CH-04484

Defendant Address:
NATIONAL CASUALTY COMPANY
C/O ILLINOIS DEPT. OF INSURANCE
320 W. WASHINGTON
SPRINGFIELD, IL 62767

☑ SUMMONS ☐ ALIAS - SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 802                          ,Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid 1500
Rolling Meadows, IL 60008

☐ District 4 - Maywood
Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60428

☐ Richard J. Daley Center
50 W. Washington, LL-01
Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: 61094

Name: ORLEANS CANTY NOVY LLC

Atty. for: ACUITY, A MUTUAL INSURANCE COMPANY

Address: 325 WASHINGTON ST #400

City/State/Zip Code: WAUKEGAN, IL 60085

Telephone: (847) 625-8200

Primary Email Address: jorleans@ocnlaw.com

Secondary Email Address(es):

mkulik@ocnlaw.com

Witness:                    Friday, 06 April 2018

/s DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service:

(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

(Area Code)    (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
CALENDAR: 10
PAGE 1 of 10
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| Acuity, A Mutual Insurance Company, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 18—CH - 04484 |
| National Casualty Company | ) |
| | ) |
| Defendant. | ) |
| | ) |

### COMPLAINT FOR DECLARATORY JUDGMENT AND FOR OTHER RELIEF

NOW COMES the Plaintiff, Acuity, A Mutual Insurance Company, ("Acuity"), by and through its attorneys, ORLEANS CANTY NOVY, LLC, and as for its Complaint for Declaratory Judgment and for Other Relief, states as follows:

### INTRODUCTION

1. At all times relevant hereto, Plaintiff, Acuity, was an insurance company incorporated in the State of Wisconsin, with its principal place of business in Sheboygan, Wisconsin, that issued Commercial Automobile Insurance liability polices, including a policy of such insurance to Kingsbury Acres Greenhouse, Inc. ("Kingsbury").

2. At all times relevant hereto, Defendant, National Casualty Company ("National Casualty") was an insurance company with its principal place of business located in Madison, Wisconsin, that issued commercial lines of insurance, including Commercial Automobile Coverage to AAAction Transportation, Inc. ("AAAction").

3. This Declaratory Judgment action is brought pursuant to 735 ILCS 5/2-701 and involves the respective rights and duties between Acuity and National Casualty arising from an

underlying Complaint filed on May 26, 2016 by Cathy Komada as Independent Executor of the Estate of Jeffrey R. Komada ("Komada") in the Circuit Court of Cook County, Illinois, under case number 2016 L 5275, which has been amended from time to time, and is currently entitled "Fourth Amended Complaint at Law" (the "Complaint"). A copy of the Complaint is attached as Exhibit A.

4. This Complaint for Declaratory Judgment and for Other Relief seeks a declaration and finding that National Casualty must contribute toward Acuity's defense and indemnification of Kingsbury in connection with the Complaint.

## THE COMPLAINT

5. The Complaint alleges that on April 30, 2016 an incident took place on I-294 near West Touhy Avenue in Cook County, Illinois when Komada was "standing outside his vehicle assisting a stranded motorist and her five year old daughter", at which time he was struck by a tractor-trailer driven by Bruce Dove ("Dove"). The Complaint is premised in negligence and alleges that Dove was an "agent and/or employee" of Kingsbury at the time of the incident and, therefore, seeks to hold Kingsbury vicariously liable for Dove's acts or omissions.

6. Further, the Complaint alleges that at the time of the incident Dove was an agent of AAAction and seeks to hold AAAction vicariously liable for Dove's acts or omissions.

7. Further, the Complaint alleges that at the time of the incident Dove operated the tractor-trailer as "agent and/or employee" of Dove Logistics, LLC.

## INVESTIGATION AND TENDER TO NATIONAL CASUALTY

8. Investigation has shown that Dove Logistics, LLC entered into an "Independent Contractor Agreement" with AAAction, a motor carrier operating pursuant to state and/or federal law, whereby AAAction agreed to have exclusive possession, control and use of certain

equipment, a 1995 Peterbilt Tractor (VIN#1XP5DB8X2SN369549) operated by Dove at the time of the incident. See, Independent Contractor Agreement attached as Exhibit B.

9.      Investigation has shown that Dove Logistics, LLC and/or Dove was under dispatch from AAAction and operating under AAAction's federal authority issued by the federal Department of Transportation at the time of the incident.

10.     Investigation has shown the Kingsbury leased the trailer being pulled by the 1995 Peterbilt tractor and made it available for AAAction's use at the time of the incident.

11.     On June 30, 2017, Acuity tendered the defense and indemnity of its named insured, Kingsbury, to National Casualty Company, and requested that National Casualty agree to contribute an equal share toward Kingsbury's defense of the Complaint. See, June 30, 2017 correspondence to National Casualty attached as Exhibit C.

12.     To date, National Casualty has not responded to Acuity's tender of defense.

## THE NATIONAL CASUALTY POLICY

13.     National Casualty issued motor carrier liability coverage to AAAction, policy, no. LFO0002507, effective October 1, 2015 to October 1, 2016, with a covered automobile limit of $1,000,000 each occurrence. A copy of the National Casualty policy is attached as Exhibit D.

14.     The Declarations page of the National Casualty policy identifies the following covered autos:

> "64" Owned Commercial "Autos" Only
>
> Only those trucks, tractors and "trailers you own (and for Covered Autos Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those trucks tractors and "trailers" you acquire ownership of after the policy begins.
>
> "68" Hired "Autos" Only
>
> Only those "autos" you lease, hire, rent or borrow. This does not include

any "private passenger type" "auto" you lease, hire, rent or borrow from any member of your household, any of your "employees", partners (if you are a partnership), members (if you are a limited liability company), or agents or members of their households.

15.     The National Casualty Policy further provides, in pertinent part, as follows:

**Section II – Covered Autos Liability Coverage**

**A.     Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

\*\*\*

**1.     Who Is An Insured**

The following are "insureds":

\*\*\*\*

c.     The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected, is being used exclusively in your business.

**SECTION V – MOTOR CARRIER CONDITIONS**

\*\*\*

**B.     General Conditions**

\*\*\*

**5.     Other Insurance – Primary and Excess Insurance Provisions**

\*\*\*

b.     While any covered "auto" is hired or borrowed by you from another motor carrier", this Coverage Form's Covered Autos Liability Coverage is:

(1) Primary if a written agreement between the other "motor

carrier" as the lessor and you as the lessee does not require the lessor and you as the lessee does not require the lessor to hold you harmless, and then only while the covered "auto" is used exclusively in your business as a "motor carrier" for hire.

(2) Excess over any other collectable insurance if a written agreement between the other "motor carrier" as the lessor and you as the lessee requires the lessor to hold you harmless.

c.    While a covered "auto" which is a "trailer" is connected to a power unit, this Coverage Form's Covered Auto Liability Coverage is:

(1) Provided on the same basis, either primary or excess, as the Covered Autos Liability Coverage Provided for the power unit if the power unit is a covered "auto".

(2) Excess if the power unit is not a covered "auto".

**SECTION VI – DEFINITIONS**

\*\*\*

B.    "Auto" means:

1.    A land motor vehicle, "trailer" or semitrailer designed for travel on public road; or

2.    Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is principally garaged.

## THE ACUITY POLICY

16.    Acuity issued a Commercial Automobile policy of insurance to Kingsbury Acres Greenhouse, Inc., policy number X93151 (the "Acuity policy") with effective dates of April 15, 2016 to April 15, 2017, and a liability limit of $1,000,000 each accident. A Copy of the Acuity policy is attached as Exhibit E.

17.    The Acuity policy Declarations page identifies the following covered autos:

Liability "1"

Any "auto".

18. The Acuity policy further provides, in pertinent part:

**SECTION II – LIABILITY COVERAGE**

**A.    COVERAGE**

We will pay all sums an "insured" legally must pay as damages because of bodily injury or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered auto.

> **1. Who is an Insured**
>
> The following are "insureds":
>
> **a.**  You for any covered "auto".
> **b.**  Anyone else while using with your permission a covered "auto" you own, hire, or borrow.
>
> ***

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

***

**B. GENERAL CONDITIONS**

***

**5.    Other Insurance**

> **a.** For any covered "auto" you own, this coverage form provides primary insurance. For any covered "auto" you do not own, the insurance provided by this coverage form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this coverage form provides for the "trailer" is
>
> (1) Excess while it is connected to a motor vehicle you do not own.
>
> ***

d. When this coverage form and any other coverage form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our coverage form bears to the total of the limits of all the coverage forms and policies covering on the same basis.

## COUNT I – DECLARATORY JUDGMENT

19. Plaintiff re-alleges and incorporates paragraph 1 through 18 above as though fully set forth herein.

20. An actual controversy exists between Acuity and National Casualty concerning whether Acuity is entitled to receive reimbursement from National Casualty for 50% of its defense and any indemnity payments in connection with the defense of the Complaint and this Court is granted the power to determine and adjudicate the rights and obligations thereto under 735 ILCS 5/2-701.

21. Kingsbury is an "insured" under the National Casualty policy because Kingsbury provided the trailer that was connected to the tractor being hauled by AAAction at the time of the incident alleged in the Complaint.

22. The trailer being hauled by the AAAction at the time of the incident alleged in the Complaint qualifies as an insured "auto" under the National Casualty policy. Further, the tractor qualifies as an insured "auto" under the National Casualty policy because it was leased, hired or borrowed by Kingsbury.

23. The Acuity policy also insured Kingsbury and the trailer being operated by AAAction at the time of the incident.

24. The "Independent Contractor Agreement" between Dove, LLC and AAAction required that Dove, LLC hold AAAction harmless "from any direct, indirect and consequential loss damage, fine, expense, including reasonable attorney's fees, action, claim for injury to

persons, including death…in connection with [Dove, LLC's] obligations and/or services under this Agreement." See, Ex. B at ¶5(g).

25.     As such, the National Casualty policy provides excess coverage for Kingsbury.

26.     Further, the Acuity policy provides excess coverage for Kingsbury because the trailer was connected to a tractor that was not owned by Kingsbury.

27.     Because both the National Casualty policy and the Acuity policy provide excess coverage for Kingsbury, they are "incompatible" and must share in the loss on a pro-rated basis. *State Farm Fire & Cas. Co. v. Utica Nat. Ins. Grp.*, 873 N.E. 2d 416 (1st Dist. 2007).

28.     Accordingly, because the Acuity and National Casualty policies each provide for $1,000,000 in liability coverage per accident, the policies must share an equal proportion of coverage, and thus, the Court should find and declare that National Casualty must reimburse Acuity 50% of all attorney's fees, costs, and indemnity payments, paid or payable, with respect to Kingsbury in connection with the Complaint.

WHEREFORE, Plaintiff, Acuity, A Mutual Insurance Company requests that this Court enter Judgment in its favor and against Defendant, National Casualty Company, finding and declaring that National Casualty Company must reimburse Plaintiff 50% of all attorney's fees, costs, and indemnity payments paid or payable with the respect to Kingsbury in connection with the Complaint.

## COUNT II – EQUITABLE SUBROGATION (pled in the alternative)

29.     Plaintiff re-alleges and incorporates paragraphs 1-28 above as though fully set forth herein.

30.     National Casualty, through its failure to respond to Acuity's tender of defense has breached its duty to defend and indemnify Kingsbury in connection with the Complaint.

31.     Based on the doctrine of equitable subrogation, Acuity is entitled to full reimbursement from National Casualty of all defense costs, attorney's fees, and indemnity payments, paid or to be paid, since National Casualty's duty to defend Kingsbury was triggered in connection with the Complaint.

32.     Further, National Casualty, due to its failure to respond to Acuity's tender of defense, has waived and shall be estopped as a matter of law from asserting any defenses to coverage.

WHEREFORE, Acuity requests that judgment be entered in its favor finding and declaring that National Casualty must reimburse Acuity all defense costs, attorney's fees, and indemnity payments, paid or to be paid, since National Casualty's duty to defend Kingsbury was triggered in connection with the Complaint. Further, the Court should find and declare that National Casualty has waived and is estopped as a matter of law from asserting any defenses to coverage.

## COUNT IV – EQUITABLE CONTRIBUTION (pled in the alternative)

33.     Plaintiff re-alleges and incorporates paragraphs 1-32 above as though fully set forth herein.

34.     Based on the allegations of the Complaint, both Acuity and National Casualty cover Kingsbury with regard to the operation of the trailer at the time of the incident alleged in the Complaint.

35.     There is sufficient identity of the risks covered by Acuity and National Casualty such that National Casualty should have recognized that it affords coverage for Kingsbury in connection with the Complaint.

36.     Based on the doctrine of equitable contribution, Acuity is entitled to full

reimbursement from National Casualty of all defense costs, attorney's fees, and indemnity payments, paid or to be paid, since National Casualty's duty to defend Kingsbury was triggered in connection with the Complaint.

37.    Further, National Casualty, due to its failure to respond to Acuity's tender of defense, has waived and shall be estopped as a matter of law from asserting any defenses to coverage.

WHEREFORE, Acuity requests that judgment be entered in its favor finding and declaring that National Casualty must reimburse Acuity all defense costs, attorney's fees, and indemnity payments, paid or to be paid, since National Casualty's duty to defend Kingsbury was triggered in connection with the Complaint.    Further, the Court should find and declare that National Casualty has waived and is estopped as a matter of law from asserting any defenses to coverage.

Respectfully submitted,

Plaintiff, Acuity, a Mutual Insurance Company,

One of Its Attorneys
ORLEANS CANTY NOVY, LLC

Jason Orleans (jorleans@ocnlaw.com)
**Service to be made by E-mail To (service@ocnlaw.com) ONLY**
ORLEANS CANTY NOVY, LLC
65 E. Wacker Place, Suite 1220
Chicago, Illinois 60601
Telephone: (847) 625-8200
Facsimile: (847) 625-8262
Firm ID: 61094

L00097807014041718

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
CALENDAR: 10
PAGE 1 of 11
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

ELECTRONICALLY FILED
2/14/2017 9:17 AM
2016-L-005275
CALENDAR: A
PAGE 1 of 11
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

STATE OF ILLINOIS)
           ) SS
COUNTY OF COOK )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT - LAW DIVISION

CATHY KOMADA as Independent Executor    )
of the Estate of JEFFERY R. KOMADA,      )
deceased,                         )
                             )
           Plaintiff,         )
vs.                           )     No. 2016 L 05275
                             )
BRUCE DOVE, Individually and as agent of   )
AAACTION TRANSPORTATION, INC., and    )
as agent of DOVE LOGISTICS LLC, and     )
KINGSBURY ACRES GREENHOUSE, INC.,   )
and HICKORY CREEK NURSERY, INC.     )
d/b/a ALSIP HOME & NURSERY, and      )
HELEN ODESSKY,                )
                             )
          Defendants.        )

### FOURTH AMENDED COMPLAINT AT LAW

### COUNT I
### (BRUCE DOVE, INDIVIDUALLY AND AS AGENT OF AAACTION TRANSPORTATION, INC.)

NOW COMES the Plaintiff, CATHY KOMADA, as Independent Executor of the Estate

of JEFFERY R. KOMADA, deceased, by and through her attorneys, MITCHELL HOFFMAN &

WOLF, L.L.C., and complaining of the Defendant, BRUCE DOVE, individually and as agent of

AAACTION TRANSPORTATION, INC., states as follows:

1.      That on April 30, 2016, Interstate 294 was part of the Interstate Highway System with lanes

running in a north-south direction at or near mile marker 41 in Cook County Illinois.

1



EXHIBIT

A

L000978070160417118

2.      At all times pertinent the Defendant, BRUCE DOVE, was operating a semi-tractor trailer, owned by Defendant, AAACTION TRANSPORTATION, INC., southbound on I-294 near West Touhy Avenue in Cook County, Illinois.

3.      At all times pertinent the Defendant, BRUCE DOVE, was operating the vehicle as the agent and/or employee of the Defendant, AAACTION TRANSPORTATION, INC.

4.      That on April 30, 2016, Plaintiff's Decedent, JEFFERY R. KOMADA, was standing outside his vehicle assisting a stranded motorist and her five year old daughter when the vehicle operated by the Defendant struck the Plaintiff's Decedent, JEFFERY R. KOMADA.

5.      That at all times pertinent, it was the duty of the Defendant, BRUCE DOVE, individually and as agent of AAACTION TRANSPORTATION, INC., to operate said semi tractor-trailer with due care and caution, in accordance with the applicable statutes regulations and ordinances, in effect at said time and place.

6.      That in disregard for said duties, the Defendant, BRUCE DOVE, individually and as agent of AAACTION TRANSPORTATION, INC., was negligent in one or more of the following ways:

      a)      Failed to maintain proper control over said semi tractor-trailer;

      b)      Carelessly and negligently operated said semi tractor-trailer at an excessive and dangerous rate of speed in light of traffic conditions;

      c)      Failed to keep a proper lookout.

7.      That as a direct and proximate result of one or more of the foregoing wrongful acts or omissions of the Defendant, BRUCE DOVE, individually and as agent of AAACTION TRANSPORTATION, INC. said semi-tractor trailer struck JEFFERY R. KOMADA causing his death on April 30, 2016.

8.      That Plaintiff, CATHY KOMADA, is the duly appointed Independent Executor of the Estate of JEFFERY R. KOMADA, deceased.

ELECTRONICALLY FILED
2/14/2017 9:17 AM
2016-L-005275
PAGE 2 of 11

2

L00097807016041718

9.     That at the time of his wrongful death JEFFERY R. KOMADA left the following dependants:

> CATHY KOMADA – adult – wife
> Jacqueline Komada – Adult Daughter
> Vanessa Komada – Adult Daughter

Each of whom has suffered pecuniary loss and will deprived of love care and affection as a result of the wrongful death of JEFFERY R. KOMADA.

WHEREFORE, the Plaintiff, CATHY KOMADA, as Independent Executor of the Estate of JEFFERY R. KOMADA, prays for judgment in its favor and against the Defendant, BRUCE DOVE, individually and as agent of AAACTION TRANSPORTATION, INC., in a sum in excess of the jurisdictional minimum of this Court plus costs of this action.

ELECTRONICALLY FILED
2/14/2017 9:17 AM
2016-L-005275
PAGE 3 of 11

## COUNT II
### (BRUCE DOVE, INDIVIDUALLY AND AS AGENT OF DOVE LOGISTICS LLC)

NOW COMES the Plaintiff, CATHY KOMADA, as Independent Executor of the Estate of JEFFERY R. KOMADA, deceased, by and through her attorneys, MITCHELL HOFFMAN & WOLF, L.L.C., and complaining of the Defendant, BRUCE DOVE, individually and as agent of DOVE LOGISTICS LLC, states as follows:

1.     That on April 30, 2016, Interstate 294 was part of the Interstate Highway System with lanes running in a north-south direction at or near mile marker 41 in Cook County Illinois.

2.     At all times pertinent the Defendant, BRUCE DOVE, was operating a semi-tractor trailer, owned by DOVE LOGISTICS LLC, southbound on I-294 near West Touhy Avenue in Cook County, Illinois.

3.     At all times pertinent the Defendant, BRUCE DOVE, was operating the vehicle as the agent and/or employee of the Defendant, DOVE LOGISTICS LLC

3
PAGE 3 of 11
2018-CH-04484
4/9/2018 11:37 AM
ELECTRONICALLY FILED

4.    That on April 30, 2016, Plaintiff's Decedent, JEFFERY R. KOMADA, was standing outside his vehicle assisting a stranded motorist and her five year old daughter when the vehicle operated by the Defendant struck the Plaintiff's Decedent, JEFFERY R. KOMADA.

5.    That at all times pertinent, it was the duty of the Defendant, BRUCE DOVE, individually and as agent of DOVE LOGISTICS LLC, to operate said semi tractor-trailer with due care and caution, in accordance with the applicable statutes regulations and ordinances, in effect at said time and place.

6.    That in disregard for said duties, the Defendant, BRUCE DOVE, individually and as agent of DOVE LOGISTICS LLC, was negligent in one or more of the following ways:

    a)    Failed to maintain proper control over said semi tractor-trailer;

    b)    Carelessly and negligently operated said semi tractor-trailer at an excessive and dangerous rate of speed in light of traffic conditions;

    c)    Failed to keep a proper lookout.

7.    That as a direct and proximate result of one or more of the foregoing wrongful acts or omissions of the Defendant, BRUCE DOVE, individually and as agent of DOVE LOGISTICS LLC said semi-tractor trailer struck JEFFERY R. KOMADA causing his death on April 30, 2016.

8.    That Plaintiff, CATHY KOMADA, is the duly appointed Independent Executor of the Estate of JEFFERY R. KOMADA, deceased.

9.    That at the time of his wrongful death JEFFERY R. KOMADA left the following dependants:

    CATHY KOMADA – adult – wife
    Jacqueline Komada – Adult Daughter
    Vanessa Komada – Adult Daughter

Each of whom has suffered pecuniary loss and will deprived of love care and affection as a result of the wrongful death of JEFFERY R. KOMADA.

ELECTRONICALLY FILED
2/14/2017 9:17 AM
2016-L-005275
PAGE 4 of 11

WHEREFORE, the Plaintiff, CATHY KOMADA, as Independent Executor of the Estate of JEFFERY R. KOMADA, prays for judgment in his favor and against the Defendant, BRUCE DOVE, individually and as agent of DOVE LOGISTICS LLC, in a sum in excess of the jurisdictional minimum of this Court plus costs of this action.

## COUNT III
### (KINGSBURY ACRES GREENHOUSE, INC.)

NOW COMES the Plaintiff, CATHY KOMADA, as Independent Executor of the Estate of JEFFERY R. KOMADA, deceased, by and through her attorneys, MITCHELL HOFFMAN & WOLF, L.L.C., and complaining of the Defendant, KINGSBURY ACRES GREENHOUSE, INC. (hereinafter "KINGSBURY"), states as follows:

1.    That on April 30, 2016, Interstate 294 was part of the Interstate Highway System with lanes running in a north-south direction at or near mile marker 41 in Cook County Illinois.

2.    At all times pertinent the Defendant, BRUCE DOVE, was operating a semi-tractor trailer, owned by KINGSBURY, southbound on I-294 near West Touhy Avenue in Cook County, Illinois.

3.    At all times pertinent the Defendant, BRUCE DOVE, was operating the vehicle as the agent and/or employee of the Defendant, KINGSBURY.

4.    That on April 30, 2016, Plaintiff's Decedent, JEFFERY R. KOMADA, was standing outside his vehicle assisting a stranded motorist and her five year old daughter when the vehicle operated by the Defendant struck the Plaintiff's Decedent, JEFFERY R. KOMADA.

5.    That at all times pertinent, it was the duty of the Defendant, BRUCE DOVE, acting as agent of KINGSBURY, to operate said semi tractor-trailer with due care and caution, in accordance with the applicable statutes regulations and ordinances, in effect at said time and place.

ELECTRONICALLY FILED
2/14/2017 9:17 AM
2016-L-005275
PAGE 5 of 11

6.    That in disregard for said duties, the Defendant through its agent was negligent in one or more of the following ways:

    b)    Failed to maintain proper control over said semi tractor-trailer;

    b)    Carelessly and negligently operated said semi tractor-trailer at an excessive and dangerous rate of speed in light of traffic conditions;

    c)    Failed to keep a proper lookout.

7.    That as a direct and proximate result of one or more of the foregoing wrongful acts or omissions of the Defendant, KINGSBURY, said semi-tractor trailer struck JEFFERY R. KOMADA causing his death on April 30, 2016.

8.    That Plaintiff, CATHY KOMADA, is the duly appointed Independent Executor of the Estate of JEFFERY R. KOMADA, deceased.

9.    That at the time of his wrongful death JEFFERY R. KOMADA left the following dependants:

    CATHY KOMADA – adult - wife
    Jacqueline Komada – Adult Daughter
    Vanessa Komada – Adult Daughter

Each of whom has suffered pecuniary loss and will deprived of love care and affection as a result of the wrongful death of JEFFERY R. KOMADA.

    WHEREFORE, the Plaintiff, CATHY KOMADA, as Independent Executor of the Estate of JEFFERY R. KOMADA, prays for judgment in its favor and against the Defendant, as agent of KINGSBURY ACRES GREENHOUSE, INC., in a sum in excess of the jurisdictional minimum of this Court plus costs of this action.

ELECTRONICALLY FILED
2/14/2017 9:17 AM
2016-L-005275
PAGE 6 of 11

## COUNT IV
### (HICKORY CREEK NURSERY, INC. D/B/A ALSIP HOME & NURSERY)

NOW COMES the Plaintiff, CATHY KOMADA, as Independent Executor of the Estate of JEFFERY R. KOMADA, deceased, by and through her attorneys, MITCHELL HOFFMAN & WOLF, L.L.C., and complaining of the Defendant, HICKORY CREEK NURSERY, INC. d/b/a ALSIP HOME & NURSERY, an Illinois Corporation, (hereinafter "HICKORY"), states as follows:

1.     That on April 30, 2016, Interstate 294 was part of the Interstate Highway System with lanes running in a north-south direction at or near mile marker 41 in Cook County Illinois.

2.     At all times pertinent the Defendant, BRUCE DOVE, was operating a semi-tractor trailer, owned by HICKORY, southbound on I-294 near West Touhy Avenue in Cook County, Illinois.

3.     At all times pertinent the Defendant, BRUCE DOVE, was operating the vehicle as the agent and/or employee of the Defendant, HICKORY.

4.     That on April 30, 2016, Plaintiff's Decedent, JEFFERY R. KOMADA, was standing outside his vehicle assisting a stranded motorist and her five year old daughter when the vehicle operated by the Defendant struck the Plaintiff's Decedent, JEFFERY R. KOMADA.

5.     That at all times pertinent, it was the duty of the Defendant, BRUCE DOVE, acting as agent of HICKORY, to operate said semi tractor-trailer with due care and caution, in accordance with the applicable statutes regulations and ordinances, in effect at said time and place.

6.     That in disregard for said duties, the Defendant through its agent was negligent in one or more of the following ways:

    a)     Failed to maintain proper control over said semi tractor-trailer;

    b)     Carelessly and negligently operated said semi tractor-trailer at an excessive and dangerous rate of speed in light of traffic conditions;

ELECTRONICALLY FILED
2/14/2017 9:17 AM
2016-L-085275
PAGE 7 of 11

c)     Failed to keep a proper lookout.

7.     That as a direct and proximate result of one or more of the foregoing wrongful acts or omissions of the Defendant, HICKORY, said semi-tractor trailer struck JEFFERY R. KOMADA causing his death on April 30, 2016.

8.     That Plaintiff, CATHY KOMADA, is the duly appointed Independent Executor of the Estate of JEFFERY R. KOMADA, deceased.

9.     That at the time of his wrongful death JEFFERY R. KOMADA left the following dependants:

> CATHY KOMADA – adult - wife
> Jacqueline Komada – Adult Daughter
> Vanessa Komada – Adult Daughter

Each of whom has suffered pecuniary loss and will deprived of love care and affection as a result of the wrongful death of JEFFERY R. KOMADA.

WHEREFORE, the Plaintiff, CATHY KOMADA, as Independent Executor of the Estate of JEFFERY R. KOMADA, prays for judgment in its favor and against the Defendant, HICKORY CREEK NURSERY, INC. d/b/a ALSIP HOME & NURSERY , in a sum in excess of the jurisdictional minimum of this Court plus costs of this action.

ELECTRONICALLY FILED
2/14/2017 9:17 AM
2016-L-005275
PAGE 8 of 11

## COUNT V
## (HELEN ODESSKY)

NOW COMES the Plaintiff, CATHY KOMADA, as Independent Executor of the Estate of JEFFERY R. KOMADA, deceased, by and through her attorneys, MITCHELL HOFFMAN & WOLF, L.L.C., and complaining of the Defendant, HELEN ODESSKY, states as follows:

1.     That on April 30, 2016, Interstate 294 was part of the Interstate Highway System with lanes running in a north-south direction at or near mile marker 41 in Cook County Illinois.

2. At all times pertinent the Defendant, HELEN ODESSKY, was operating her vehicle southbound on I-294 near West Touhy Avenue in Cook County, Illinois immediately behind the vehicle being operated by the Plaintiff's Decedent.

3. That at said time and place the Defendant's, HELEN ODESSKY, vehicle struck the rear end of the Plaintiff's Decedent's vehicle rendering the vehicles inoperable and stalled in one of the middle of the lanes of traffic on I-294.

4. That on April 30, 2016, Plaintiff's Decedent, JEFFERY R. KOMADA, was standing outside his vehicle assisting the Defendant, HELEN ODESSKY and her five year old daughter when a semi-tractor trailer operated by the Defendant, BRUCE DOVE, struck the Plaintiff's Decedent, JEFFERY R. KOMADA.

5. That at all times pertinent, it was the duty of the Defendant, HELEN ODESSKY, to operate her vehicle with due care and caution, in accordance with the applicable statutes regulations and ordinances, in effect at said time and place.

6. That in disregard for said duties, the Defendant, HELEN ODESSKY, was negligent in one or more of the following ways:

ELECTRONICALLY FILED
2/14/2017 9:17 AM
2016-L-005275
PAGE 9 of 11

    a) carelessly and negligently failing to stop her vehicle before striking the Plaintiff's Decedent's vehicle;

    b) carelessly and negligently following too closely behind the vehicle occupied by the Plaintiff's Decedent;

    c) carelessly and negligently failing to maintain a proper lookout;

    d) carelessly and negligently failing to maintain proper control over said vehicle;

    e) carelessly and negligently operating said motor vehicle at an excessive and dangerous rate of speed in light of the traffic and weather conditions then and there present;

    f) failing to turn on her hazard lights after the accident had occurred.

7. That as a direct and proximate result of one or more of the foregoing wrongful acts or omissions of the Defendant, HELEN ODESSKY, said semi-tractor trailer struck JEFFERY R. KOMADA causing his death on April 30, 2016.

8. That Plaintiff, CATHY KOMADA, is the duly appointed Independent Executor of the Estate of JEFFERY R. KOMADA, deceased.

9. That at the time of his wrongful death JEFFERY R. KOMADA left the following dependants:

> CATHY KOMADA – adult - wife
> Jacqueline Komada – Adult Daughter
> Vanessa Komada – Adult Daughter

Each of whom has suffered pecuniary loss and will deprived of love care and affection as a result of the wrongful death of JEFFERY R. KOMADA.

WHEREFORE, the Plaintiff, CATHY KOMADA, as Independent Executor of the Estate of JEFFERY R. KOMADA, prays for judgment in its favor and against the Defendant, HELEN ODESSKY, in a sum in excess of the jurisdictional minimum of this Court plus costs of this action.

ELECTRONICALLY FILED
2/14/2017 9:17 AM
2016-L-005275
PAGE 10 of 11

## COUNT VI
### (JOINT VENTURE – KINGSBURY ACRES AND HICKORY CREEK NURSERY)

NOW COMES the Plaintiff, CATHY KOMADA, as Independent Executor of the Estate of JEFFERY R. KOMADA, deceased, by and through her attorneys, MITCHELL HOFFMAN & WOLF, L.L.C., and complaining of the Defendants, KINGSBURY ACRES GREENHOUSE, INC. (hereinafter "KINGSBURY") and Defendant, HICKORY CREEK NURSERY, INC. d/b/a ALSIP HOME & NURSERY, an Illinois Corporation, (hereinafter "HICKORY"), as Joint Venturers, states as follows:

L0009780702404118

1-9.    Plaintiff hereby incorporates paragraphs one (1) through nine (9) of Count III of this Complaint at Law as and for paragraphs one (1) through nine (9) of this Count VI as though set forth verbatim herein.

9-18.    Plaintiff hereby incorporates paragraphs one (1) through nine (9) of Count IV of this Complaint at Law as and for paragraphs nine (9) through eighteen (18) of this Count VI as though set forth verbatim herein.

19.    That on and prior to April 30, 2016 the Defendants, KINGSBURY and HICKORY were engaged in a joint venture and/or partnership involving the growing, distribution and sale of plants to retailers for profit.

20.    That on and prior to April 30, 2016 and in furtherance of their joint venture the Defendants hired the Defendant, BRUE DOVE, to deliver their plants to Pesches Garden Center in Des Plaines, Illinois.

WHEREFORE, the Plaintiff, CATHY KOMADA, as Independent Executor of the Estate of JEFFERY R. KOMADA, prays for judgment in its favor and against the Defendants, HICKORY CREEK NURSERY, INC. d/b/a ALSIP HOME and NURSERY KINGSBURY ACRES GREENHOUSE, INC., as Joint Venturers, in a sum in excess of the jurisdictional minimum of this Court plus costs of this action.

Attorney for Plaintiff

Ken Hoffman
MITCHELL HOFFMAN & WOLF, L.L.C.
221 North LaSalle, Suite 1148
Chicago, IL 60601
(312)726-6722
khoffman@mitchellhoffmanwolf.com
jwmitchell@mitchellhoffmanwolf.com

ELECTRONICALLY FILED
2/14/2017 9:17 AM
2016-L-005275
PAGE 11 of 11

L-000978070250041718

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
CALENDAR: 10
PAGE 1 of 16
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

## INDEPENDENT CONTRACTOR AGREEMENT

Aaaction Transportation, Inc. ("CARRIER"), a motor carrier operating pursuant to authority issued by state and/or federal agencies, and ___DoiE TRUCKID___ ("INDEPENDENT CONTRACTOR"), in consideration of the covenants and agreements contained herein, enter into this Independent Contractor Agreement ("Agreement").

DOIE LOGISTO LLC,

1.  PROVISION OF SERVICES AND EQUIPMENT.  During the time period set forth in Paragraph 2, INDEPENDENT CONTRACTOR shall provide CARRIER transportation related services and the Equipment set forth below or in an appendix ("Equipment").  INDEPENDENT CONTRACTOR represents and warrants that INDEPENDENT CONTRACTOR has title to or is authorized to contract the Equipment and services to CARRIER.

| Tractor/Trailer No. | Year | Make | Serial No. |
|---|---|---|---|
| 280 | 1995 | PBT | IXP5DB8X2SN369549 |

2.  DURATION OF AGREEMENT (49 CFR 376.12(b)).  This Agreement shall begin on the date indicated on the signature page and shall remain in effect for a period of not less than 30 days from that date, but then may be terminated in accordance with the provisions of paragraph 4; provided, however, that this Agreement may be terminated at any time in accordance with the provisions of paragraph 9.

3.  COMPENSATION (49 CFR 376.12(d)).  It is expressly understood and agreed that INDEPENDENT CONTRACTOR's compensation shall be as set forth in Appendix A and such compensation shall constitute the total compensation for everything furnished, provided, or done by INDEPENDENT CONTRACTOR in connection with this Agreement, including driver's services.

4.  TERMINATION.  Subject to the provisions of paragraph 2, this Agreement may be terminated for any reason by giving one (1) day's written notice to that effect to the other party either personally, by mail, or by fax machine at the address or fax number shown at the end of this Agreement.

5.  INDEPENDENT CONTRACTOR'S RESPONSIBILITIES.

(a)  Compliance with Pertinent Laws and Regulations.
i.  INDEPENDENT CONTRACTOR shall provide competent drivers who meet all of the requirements of the U.S. Department of Transportation, including but not limited to, familiarity and com-



EXHIBIT
B

pliance with state and federal motor carrier safety laws and regulations.

ii. INDEPENDENT CONTRACTOR shall carry a copy of this Agreement in the Equipment at all times and file with CARRIER, on a timely basis, all log sheets, physical examination certificates, accident reports, and any other required data, documents, or reports.

iii. INDEPENDENT CONTRACTOR agrees that all bills of lading, waybills, freight bills, manifests, or other papers identifying the property carried on the Equipment during the period it is contracted shall be those of CARRIER, or as authorized by CARRIER, and shall indicate that the property transported is under the responsibility of CARRIER or a carrier with which the Equipment has been subcontracted.

iv. INDEPENDENT CONTRACTOR further agrees not to receive any credit extension in CARRIER's name or in any way to use CARRIER's name to obtain credit, unless INDEPENDENT CONTRACTOR first receives CARRIER's written consent to do so.

(b) Operational Expenses (49 CFR 376.12(e)).

i. INDEPENDENT CONTRACTOR shall, at its sole cost and expense, provide all the Equipment ready to operate and fully roadworthy, including the necessary licenses, permits, cab cards, vehicle identification stamps, and state base plates, and shall furnish all necessary oil, fuel, tires, and other parts, supplies and equipment necessary or required for the safe and efficient operation and maintenance of the Equipment, including repairs for the operation of such Equipment; and shall pay all other expenses incident to such operation, including, but not limited to, highway use taxes, weight taxes, state property or indefinite situs taxes, fuel taxes, license, permit and registration fees, ferry and toll charges, and detention and accessorial charges not collected by CARRIER because of INDEPENDENT CONTRACTOR's failure to provide the required documentation.

ii. CARRIER shall assume the responsibility of reporting and paying all fuel taxes to the

-2-

Case 1:18-cv-02369 Document #: 1-1 Filed: 05/11/18 Page 28 of 181 PageID #:33
L0009780702704 1718

various states of operation on behalf of INDEPENDENT CONTRACTOR. All state fuel taxes paid by CARRIER on behalf of INDEPENDENT CONTRACTOR shall be charged back to INDEPENDENT CONTRACTOR pursuant to Paragraph 12 of this Agreement. INDEPENDENT CONTRACTOR shall be responsible for providing CARRIER with an accurate accounting of all fuel purchases and miles travelled for the purposes of assisting CARRIER in computing state fuel tax liability for the Equipment. INDEPENDENT CONTRACTOR shall also provide CARRIER with all original fuel receipts and any additional documentation requested by CARRIER.

iii. Unless otherwise required by law, empty mileage expense shall be borne by INDEPENDENT CONTRACTOR.

iv. INDEPENDENT CONTRACTOR shall be responsible for maintaining, and shall maintain the Equipment in safe condition and in complete compliance with all laws and regulations of the states in which INDEPENDENT CONTRACTOR operates, the Department of Transportation, and the Federal Highway Administration.

v. INDEPENDENT CONTRACTOR agrees to pay all fines imposed for violation of any law or regulation by the state in which INDEPENDENT CONTRACTOR operates, the Department of Transportation, or the Federal Highway Administration, where such violation results, at least partially, from the acts or omissions of INDEPENDENT CONTRACTOR.

vi. Except when the violation results from the acts or omissions of INDEPENDENT CONTRACTOR, CARRIER shall assume, on interstate loads only, the risks and costs of fines for overweight and oversize trailers when such trailers are preloaded and sealed, or the load is containerized, or for improperly permitted overdimension and over weight loads, or the trailer or lading is otherwise outside of INDEPENDENT CONTRACTOR's control.

vii. INDEPENDENT CONTRACTOR shall pay for and defend, indemnify and hold CARRIER harmless for any loss, damage, fines, expense, includ-

-3-

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 3 of 16

ing reasonable attorney's fees, actions and claims arising out of, or in connection with, the cleaning up of any accident or any spills involving the Equipment or the INDEPENDENT CONTRACTOR'S services.

(c) Cargo Claims (49 CFR 376.12(i)). INDEPENDENT CONTRACTOR shall be responsible for any claim resulting from cargo shortages, cargo damage or delays in transporting shipments to, in whole or in part, the due negligence of INDEPENDENT CONTRACTOR or its drivers, as determined by CARRIER, provided, however, that CARRIER agrees to limit INDEPENDENT CONTRACTOR's liability for any cargo claim to One Thousand Dollars ($1,000,000) per shipment. This liability limitation shall not apply, however, if the damage is caused, in whole or in part, by any willful or intentional act INDEPENDENT CONTRACTOR or its workers.

(d) Trailer Damage (49 CFR 376.12(i)). INDEPENDENT CONTRACTOR shall be liable for, and pay, all direct, indirect and consequential damage, including but not limited to, towing charges and reasonable attorney's fees, arising out of, or in connection with, INDEPENDENT CONTRACTOR's use of: CARRIER's trailers, CARRIER's customer's trailers, other equipment of CARRIER's, or equipment of any other carrier.

(e) Insurance (49 CFR 376.12(i)). The responsibilities and obligations between CARRIER and INDEPENDENT CONTRACTOR involving insurance shall be as specified in paragraph 6(d) and in Appendix B. CARRIER shall have no insurance responsibilities or obligations pertaining to INDEPENDENT CONTRACTOR other than those expressly stated in this Agreement or mandated by law.

(f) Accident Reports. INDEPENDENT CONTRACTOR shall immediately report any accident to CARRIER involving operations under this Agreement, including INDEPENDENT CONTRACTOR's written report of such accident. In the event INDEPENDENT CONTRACTOR fails to notify CARRIER of the accident within four (4) hours from the time of the accident, INDEPENDENT CONTRACTOR shall be liable for any and all damages resulting from that failure to notify, including but not limited to consequential damages,

-4-

fines, claims by third parties and reasonable attorney fees.

(g) Hold Harmless. INDEPENDENT CONTRACTOR agrees to defend, indemnify and hold harmless CARRIER from any direct, indirect and consequential loss, damage, fine, expense, including reasonable attorney's fees, action, claim for injury to persons, including death, and damage to property which CARRIER may incur arising out of or in connection with INDEPENDENT CONTRACTOR'S obligations and/or services under this Agreement.

6. CARRIER'S RESPONSIBILITIES.

(a) Exclusive Possession and Responsibility (49 CFR 376.12(c)). The Equipment shall be for CARRIER'S exclusive possession, control, and use for the duration of this Agreement. CARRIER shall assume complete responsibility for the operation of the Equipment for the duration of this Agreement. This subparagraph is set forth solely to conform with federal leasing regulations and shall not be used for any other purposes, including any attempt to classify INDEPENDENT CONTRACTOR as an employee of CARRIER.

(b) Inspection of Equipment. CARRIER certifies that, before taking possession of the Equipment, the Equipment was inspected by one of its responsible and competent employees or agents.

(c) Identification of Equipment (49 CFR 376.11(c)). CARRIER shall identify the Equipment in accordance with the requirements of the Federal Highway Administration, Department of Transportation, and appropriate state regulatory agencies. CARRIER shall have the right to place and maintain on the Equipment CARRIER'S name and any lettering, advertisement, slogans or designs as CARRIER may choose. INDEPENDENT CONTRACTOR shall remove such identification at the termination of this Agreement or while operating such Equipment for any purpose other than conducting CARRIER's business. INDEPENDENT CONTRACTOR further agrees to keep the Equipment in clean appearance and identified as described herein, at its sole cost and expense.

(d) Insurance. Unless authorized to be self-insured, CARRIER shall maintain public liability, property

-5-

damage, and cargo insurance in such amounts as are required by the Federal Highway Administration, Department of Transportation, and applicable state regulatory agencies. CARRIER shall maintain insurance coverage for the protection of the public pursuant to the Federal Highway Administration's regulations under 49 U.S.C. § 13906. CARRIER's self-insurance or possession of legally required insurance in no way restricts CARRIER's right of indemnification from INDEPENDENT CONTRACTOR under Paragraph 5(g) and other provisions of this Agreement.

7. <u>INDEPENDENT CONTRACTOR NOT EMPLOYEE OF CARRIER</u>. It is expressly understood and agreed that INDEPENDENT CONTRACTOR is an independent contractor for the Equipment and driver services provided pursuant to this Agreement, and that INDEPENDENT CONTRACTOR agrees to defend, indemnify and hold CARRIER harmless for any claims, suits, or actions, including reasonable attorney's fees in protecting CARRIER'S interests, brought by INDEPENDENT CONTRACTOR, employees, any union, the public, or state or federal agencies, arising out of the operation of the Equipment pursuant to this Agreement. In this regard, INDEPENDENT CONTRACTOR hereby assumes full control and responsibility for all hours scheduled and worked, wages, salaries, workers' compensation and unemployment insurance, state and federal taxes, fringe benefits, and all other costs relating to the use of drivers provided by INDEPENDENT CONTRACTOR pursuant to this Agreement. Proof of such control and responsibility shall be submitted by INDEPENDENT CONTRACTOR to CARRIER as required by CARRIER and may include, but not be limited to, proof of highway use tax being currently paid when the INDEPENDENT CONTRACTOR purchases the license; proof of income tax being currently paid; proof of payment of payroll tax for INDEPENDENT CONTRACTOR'S drivers and a certificate of insurance containing a 30-day notice of change and/or cancellation clause. As required by law, CARRIER agrees to file information tax returns (Form 1099) on behalf of INDEPENDENT CONTRACTOR if INDEPENDENT CONTRACTOR is paid more than the statutory amount in compensation during a calendar year.

8. <u>TRIP-LEASING</u>. INDEPENDENT CONTRACTOR may trip-lease the Equipment upon prior written notice received by CARRIER in the mail.

9. <u>BREACH</u>. Notwithstanding anything to the contrary in this Agreement, this Agreement may be terminated, at any time, by either party in the event of a breach by the other of any term or obligation contained in this Agreement. In the event of a breach and when practicable, written notice shall be served upon the breaching party, notifying such party of the breach and the

-6-

L00097807031041718

termination of the Agreement and reason(s) therefore. If, in CARRIER's judgment, INDEPENDENT CONTRACTOR has subjected CARRIER to liability because of INDEPENDENT CONTRACTOR's acts or omissions, CARRIER may take possession of the lading entrusted to INDEPENDENT CONTRACTOR and complete performance, using the same Equipment or any other equipment. In such event, INDEPENDENT CONTRACTOR shall waive any recourse against CARRIER for such action and INDEPENDENT CONTRACTOR shall reimburse CARRIER for all direct or indirect costs, expenses, or damages including reasonable attorney's fees incurred by CARRIER as a result of CARRIER's taking possession of the lading and completing performance.

10. SETTLEMENT PERIOD (49 CFR 376.12(f)). CARRIER shall settle with INDEPENDENT CONTRACTOR with respect to services provided under this Agreement or an authorized trip-lease within 15 calendar days after INDEPENDENT CONTRACTOR's submission, in proper form, of those documents necessary for CARRIER to secure payment, including, but not necessarily limited to, the signed freight bill, delivery receipt or bill of lading, and properly completed logs as required by the Department of Transportation. If INDEPENDENT CONTRACTOR's compensation is based on a percentage of the gross revenue for a shipment, then CARRIER will give INDEPENDENT CONTRACTOR, before or at the time of settlement, a copy of the rated freight bill, subject to CARRIER's right to delete the names of shippers and consignees, and INDEPENDENT CONTRACTOR may examine copies of the CARRIER's tariff relating to the services upon which settlement is based. CARRIER shall have the right to review all of INDEPENDENT CONTRACTOR's documents and records relating to the use of the Equipment and to the services provided under this Agreement, and INDEPENDENT CONTRACTOR agrees to provide CARRIER with access to such documents and records upon reasonable notice.

11. INDEPENDENT CONTRACTOR NOT REQUIRED TO PURCHASE PRODUCTS, EQUIPMENT, OR SERVICES FROM CARRIER (49 CFR 376.12(i)). INDEPEN-DENT CONTRACTOR is not required to purchase or rent any products, equipment, or services from CARRIER as a condition of entering into this Agreement.

12. CHARGE BACK (49 CFR 376.12(h)). CARRIER shall charge back to INDEPENDENT CONTRACTOR at the time of payment or settle-ment, any expenses CARRIER has borne that, under this Agreement, INDEPENDENT CONTRACTOR is obligated to bear. Such expenses shall be deducted from the amount of INDEPENDENT CONTRACTOR's compensa-tion and shall include, but not be limited to, those expenses set forth in this Agreement as well as C.O.D. and freight collect remittances due CARRIER, cargo claims, property damage, log books, towing charges, insurance deductibles, reasonable attorney's fees incurred in reducing potential liabilities arising out of, or in connection with, INDEPENDENT CONTRACTOR's actions or failure to act under the terms of this Agreement, and all state tax licenses,

-7-

permits, and stamps. CARRIER shall provide INDEPENDENT CONTRACTOR written itemization and documentation of all charge backs prior to making such charge backs.

13. **FINAL SETTLEMENT (49 CFR 376.12(f))**. With respect to final settlement, the failure on the part of INDEPENDENT CONTRACTOR to remove all identification devices of CARRIER, and, except in the case of identification painted directly on the Equipment, return them to CARRIER in any reasonable manner, shall constitute a breach of this Agreement. Such breach shall entitle CARRIER to withhold any payments owed to INDEPENDENT CONTRACTOR until such obligations are met. The parties agree that, in addition to any other right, remedy or claim CARRIER may have, INDEPENDENT CONTRACTOR shall pay CARRIER $25.00 per day for INDEPENDENT CONTRACTOR'S failure to remove and/or return such identification.

14. **ESCROW FUNDS (49 CFR 376.12(k))**. INDEPENDENT CONTRACTOR authorizes CARRIER to establish an escrow in accordance with the provisions set forth in Appendix C attached.

15. **LUMPING AND DETENTION (49 CFR 376.12(e))**. Whenever a shipper or a consignee requires that INDEPENDENT CONTRACTOR be assisted in the loading or unloading of property transported on behalf of CARRIER, CARRIER shall pass through to INDEPENDENT CONTRACTOR any compensation it receives from such shipper or consignee for any costs associated with such requirement. Otherwise, INDEPENDENT CONTRACTOR shall be responsible for the loading or unloading of such property at INDEPENDENT CONTRACTOR's expense. Further, detention charges that are collected by CARRIER shall be directly paid to INDEPENDENT CONTRACTOR in accordance with its compensation percentages. CARRIER is entitled to all other accessorial charges.

16. **COVENANT NOT TO COMPETE**. INDEPENDENT CONTRACTOR, in consideration of CARRIER entering into this Agreement with INDEPENDENT CONTRACTOR, hereby consents and agrees, during the term of this Agreement and for a period of one (1) year after termination of this Agreement, not to engage, directly or indirectly, either individually or as an employee, officer, director, shareholder, owner, partner or consultant in any entity, in soliciting, transporting or handling business of any customers of CARRIER served by CARRIER while INDEPENDENT CONTRACTOR was under contract to, or employment with, CARRIER. In addition, during the term of this Agreement and for a period of one (1) year after termination of this Agreement, INDEPENDENT CONTRACTOR agrees not to solicit, employ or entice any employees of CARRIER or independent contractors under contract to CARRIER from their relationship with CARRIER and agrees not to solicit, employ or entice such employees or independent contractors to accept any position with INDEPENDENT CONTRACTOR or with any entity in which INDEPENDENT CONTRACTOR is an

- 8 -

employee, officer, director, shareholder, owner, partner or consultant. The parties hereto agree that INDEPENDENT CONTRACTOR shall pay CARRIER, as liquidated damages and not as a penalty, an amount equal to thirty-five percent (35%) of the gross revenue of any and all business obtained by INDEPENDENT CONTRACTOR by virtue of INDEPENDENT CONTRACTOR's breach of this covenant not to compete for a period of one (1) year thereafter as just and reasonable compensation to CARRIER, and the parties further agree that INDEPENDENT CONTRACTOR shall pay CARRIER all costs of collecting these liquidated damages, including reasonable attorney's fees. If requested, INDEPENDENT CONTRACTOR shall provide CARRIER, within ten (10) days of such request, all information and documentation regarding such gross revenues to assist CARRIER in verifying that the correct amount of liquidated damages is paid. In the event that any provisions of this Agreement are found by a court of competent jurisdiction to be void, illegal or invalid, the remaining provisions of this Agreement shall nevertheless be binding with the same force and effect as if the void, illegal or invalid parts were deleted. In the event the amount of liquidated damages or the restrictions set forth in this paragraph, including the covenant not to compete's duration, are found by a court of competent jurisdiction to be void, illegal, or invalid, the parties agree that a reasonable amount of liquidated damages and/or a reasonable restriction on the covenant not to compete, including its duration, as applicable, shall be provided by the court.

17. **BENEFIT.** This Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their respective successors.

18. **NOTICE.** All notice provisions of this Agreement shall be in writing delivered personally, by postage prepaid, first class mail, or by facsimile machine to the addresses or fax number shown at the end of this Agreement.

19. **COMPLETE AGREEMENT.** This Agreement, including any Appendices attached, constitutes the sole, entire, and existing agreement between the parties herein, and supersedes all prior agreements and undertakings, oral and written, expressed or implied, or practices, between the parties, and expresses all obligations and restrictions imposed on each of the respective parties during its term, except those specifically modified or changed by mutual written agreement between CARRIER and INDEPENDENT CONTRACTOR. This Agreement shall be deemed to have been drawn in accordance with the statutes and laws of the State of Indiana and in the event of any disagreement or litigation, the laws of this state shall apply and suit must be brought in this state.

-9-

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 9 of 16

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 10 of 16

-10-

IN WITNESS WHEREOF, CARRIER and INDEPENDENT CONTRACTOR do
hereby sign this Agreement on this _____ day of
_____ 20___, the effective date of this Agreement.

CARRIER

Reaction Transportation, Inc.
5412 Boulder Avenue
Portage, IN 46368
Telephone: (219) 763-2211
Telefax: (219)764-2255

By: _____

INDEPENDENT CONTRACTOR

Doug Logistics llc

Telephone: 219-363-9810
Telefax: _____

By: _____

L00097807035041718

RECEIPT FOR POSSESSION OF CONTRACTED VEHICLE(S)

Received from DOVE LOGISTICS

the vehicle or vehicles described in this Agreement.

Equipment received at _____

on FEB _____ 2016 at 12⁰⁰ A.M. ___ P.M. ___

By _____

RECEIPT FOR RETURN OF CONTRACTED VEHICLE(S)

Received from _____

the vehicles or vehicles described in this Agreement in good order.

Equipment received at _____

on _____ 20.____ at _____ A.M. _____ P.M. _____

Contractor _____

By _____

-11-

## Appendix A

### Independent Contractor's Compensation

Unless otherwise agreed to in writing between the parties, CARRIER shall pay INDEPENDENT CONTRACTOR 75% of the gross revenue. Gross revenue shall mean all revenue billed and collected by CARRIER for commodities hauled and transported by INDEPENDENT CONTRACTOR reduced by: (a) any and all expenses attributed to accessorial services paid to a third party or to INDEPENDENT CONTRACTOR by CARRIER; (b) the amount paid to any third party by CARRIER in relation to the movement of the shipment, including without limitation, amounts paid to other contractors of pro rata payment for their participation in this shipment or any amounts paid by CARRIER to interline or augmenting carriers; (c) any revenue received by CARRIER in excess value charge on high value freight; and (d) all incentives, discounts or commissions given to CARRIER's customers or other third parties. All accessorial service charges, such as loading fees and detention charges, billed and collected by CARRIER from its customer shall be paid to INDEPENDENT CONTRACTOR at 75% of the gross revenue.

The parties recognize and agree that CARRIER is authorized by INDEPENDENT CONTRACTOR to deduct all amounts set forth in the INDEPENDENT CONTRACTOR's compensation under this appendix.

At the discretion of CARRIER, CARRIER shall pay INDEPENDENT CONTRACTOR an advance of INDEPENDENT CONTRACTOR's anticipated compensation. All such advances shall be charged back to INDEPENDENT CONTRACTOR pursuant to the Agreement. INDEPENDENT CONTRACTOR hereby authorizes CARRIER to make advance payments to any driver that may be operating the Equipment on behalf of INDEPENDENT CONTRACTOR.

INDEPENDENT CONTRACTOR

By: _Bruce W. Om?_
Date: _2/2/2016_

CARRIER

AAACTION TRANS. INC.
P.O. BOX 919
PORTAGE, INDIANA 46368

By: _C. H. Hao_
Date: _2-1-16_

-12-

L00097807037041718

## Appendix B

### Insurance (49 CFR 376.12(j))

INDEPENDENT CONTRACTOR shall be covered under CARRIER's public liability and property damage insurance coverage and shall be charged back for the first One Thousand Dollars ($1,000.00) for each such claim; provided, however, that INDEPENDENT CONTRACTOR shall be responsible for the entire claim if the claim is caused, in whole or in part, by the willful or intentional acts or admissions of INDEPENDENT CONTRACTOR or its driver. The insurance provided by CARRIER is not intended to protect INDEPENDENT CONTRACTOR whenever the equipment is not being operated on behalf of CARRIER.

INDEPENDENT CONTRACTOR shall maintain, at its sole cost and expense, the following minimum insurance coverages during the term of this Agreement:

1. **NON-TRUCKING USE ("BOBTAIL")** - INDEPENDENT CONTRACTOR shall procure, carry and maintain public liability and property damage insurance which shall provide coverage to INDEPENDENT CONTRACTOR whenever the Equipment is not being operated on behalf of CARRIER ("bobtail coverage") in a combined single limit of not less than One Million Dollars ($1,000,000) for injury or death to any person or for damages to property in any one occurrence. INDEPENDENT CONTRACTOR shall be responsible for any loss or damage in excess of the policy limit.

2. **WORKERS' COMPENSATION OR OCCUPATIONAL ACCIDENT** - Prior to commencing operations under this Agreement, INDEPENDENT CONTRACTOR shall provide a certificate of insurance showing that INDEPENDENT CONTRACTOR has procured workers' compensation insurance or a policy of occupational accident insurance, in an amount and upon such terms as acceptable to CARRIER.

INDEPENDENT CONTRACTOR shall furnish to CARRIER written certificates obtained from INDEPENDENT CONTRACTOR's insurance CARRIER showing that all insurance coverages required above have been procured from an "A" rated company, are being properly maintained, and the premiums therefore are paid, specifying the name of the insurance CARRIER, the policy number, the expiration date, naming CARRIER as an additional named insured and further showing that written notice of cancellation or modification of the policy shall be given to CARRIER at least thirty (30) days prior to such cancellation or modification.

In addition to the insurance coverages required under this Agreement, it is INDEPENDENT CONTRACTOR's responsibility to procure, carry and maintain any fire, theft, uninsured and/or

-13-

L000978070380417'18

underinsured motorist and collision insurance coverage that INDEPENDENT CONTRACTOR may desire for the Equipment.

INDEPENDENT CONTRACTOR may, at INDEPENDENT CONTRACTOR's option, authorize CARRIER to obtain and administer, on INDEPENDENT CONTRACTOR's behalf, the insurance coverages required by this Agreement, in which case INDEPENDENT CONTRACTOR will be charged back for all of CARRIER's expense and cost in obtaining and administering such coverage. If insurance coverage is requested from CARRIER, INDEPENDENT CONTRACTOR shall pay the first month's costs of all requested coverage upon execution of the Agreement. INDEPENDENT CONTRACTOR recognizes that CARRIER is not in the business of selling insurance, and any insurance coverage requested by INDEPENDENT CONTRACTOR from CARRIER is subject to all of the terms, conditions and exclusions of the actual policy issued by the insurance underwriter. CARRIER shall provide INDEPENDENT CONTRACTOR with a certificate of insurance for each insurance policy under which the INDEPENDENT CONTRACTOR requests coverage. A copy of the actual policy is also available from CARRIER upon written request by the INDEPENDENT CONTRACTOR.

-14-

INDEPENDENT CONTRACTOR hereby certifies that INDEPENDENT CONTRACTOR has in effect and shall maintain the insurance coverages marked with a check below:

NON-TRUCKING USE/BOBTAIL ( )

Insurance Co.________________

Policy No.________________

Coverage Dates:________________

Minimum Coverage: $1,000,000

WORKERS' COMPENSATION ( )

Insurance Co.________________

Policy No.________________

Coverage Dates:________________

TRACTOR PHYSICAL DAMAGE ( )

Insurance Co.________________

Policy No.________________

Coverage Dates:________________

NOTE: INDEPENDENT CONTRACTOR must provide CARRIER with a certificate of insurance for all coverages marked above naming CARRIER as a "certificate holder" before this Agreement becomes effective.

________________

INDEPENDENT CONTRACTOR's Signature

Date:________________

If CARRIER is able to obtain and provide it, INDEPENDENT CONTRACTOR requests CARRIER, through CARRIER's insurer, to obtain for INDEPENDENT CONTRACTOR the insurance coverages marked with a check below:

NON-TRUCKING USE/BOBTAIL (✓)

Monthly Cost: 41[oo]

OCCUPATIONAL ACCIDENT/CONTINGENT WORKERS' COMPENSATION ( )

Monthly Cost: N/A

TRACTOR PHYSICAL DAMAGE ( )

Insured Vehicle Value: N/A

Monthly Cost: N/A

[signature]

INDEPENDENT CONTRACTOR's Signature

Date: 2/2/2016

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 15 of 16

## Appendix C

### Escrow (49 CFR 376.12(k))

In the event that CARRIER exercises its right to establish an escrow as set forth in Paragraph 14 of this Agreement, the following shall be applicable:

1. The amount of principal to be held in escrow ("escrow funds") shall not exceed $ 1,000.00.

2. Escrow funds shall be held by the CARRIER for the purpose of insuring compliance with the provisions of the Agreement and may be applied to the applicable Paragraphs in the Agreement.

3. While escrow funds are under CARRIER'S control, CARRIER shall provide an accounting to INDEPENDENT CONTRACTOR of all transactions involving such funds by clearly indicating on individual settlement sheets the amount and description of any deduction or addition made to the escrow fund. CARRIER shall provide signed receipts to INDEPENDENT CONTRACTOR for any deposits to such fund.

4. Upon INDEPENDENT CONTRACTOR'S request, CARRIER shall provide INDEPENDENT CONTRACTOR with an accounting of any transactions involving INDEPENDENT CONTRACTOR'S escrow funds.

5. CARRIER shall pay interest on the escrow funds. The amount of interest shall be established on the date the interest period begins and shall be equal to the average yield of 91-day, 13-week treasury bills, as established in the weekly auction by the Department of Treasury. For purposes of calculating the balance of the escrow fund on which interest is paid, CARRIER may deduct a sum equal to the average advance made to INDEPENDENT CONTRACTOR during the period of time for which interest is paid.

6. Escrow funds shall be repaid upon the prompt return by INDEPENDENT CONTRACTOR of all signs, licenses, permits, notices, tax cards, operating authority, and other paperwork and property belonging to the CARRIER. The amount of escrow funds may be reduced to reflect expenses incurred by CARRIER with respect to any efforts undertaken by CARRIER to seek return of such items. Any such reductions shall be accounted for in the final accounting period provided by CARRIER.

7. Escrow funds, less any reductions, shall be repaid within forty-five (45) days from the date of termination of this Agreement.

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 16 of 16

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
CALENDAR: 10
PAGE 1 of 16
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

## INDEPENDENT CONTRACTOR AGREEMENT

Aaaction Transportation, Inc. ("CARRIER"), a motor carrier operating pursuant to authority issued by state and/or federal agencies, and _Dove Truckin_ ("INDEPENDENT CONTRACTOR"), in consideration of the covenants and agreements contained herein, enter into this Independent Contractor Agreement ("Agreement"). _Dove Logistics inc.,_

1.   PROVISION OF SERVICES AND EQUIPMENT.   During the time period set forth in Paragraph 2, INDEPENDENT CONTRACTOR shall provide CARRIER transportation related services and the Equipment set forth below or in an appendix ("Equipment").   INDEPENDENT CONTRACTOR represents and warrants that INDEPENDENT CONTRACTOR has title to or is authorized to contract the Equipment and services to CARRIER.

| Tractor/Trailer No. | Year | Make | Serial No. |
|---|---|---|---|
| 280 | 1995 | PBT | 1XP5DB8X25N369549 |

2.   DURATION OF AGREEMENT (49 CFR 376.12(b)).   This Agreement shall begin on the date indicated on the signature page and shall remain in effect for a period of not less than 30 days from that date, but then may be terminated in accordance with the provisions of paragraph 4; provided, however, that this Agreement may be terminated at any time in accordance with the provisions of paragraph 9.

3.   COMPENSATION (49 CFR 376.12(d)).   It is expressly understood and agreed that INDEPENDENT CONTRACTOR's compensation shall be as set forth in Appendix A and such compensation shall constitute the total compensation for everything furnished, provided, or done by INDEPENDENT CONTRACTOR in connection with this Agreement, including driver's services.

4.   TERMINATION.   Subject to the provisions of paragraph 2, this Agreement may be terminated for any reason by giving one (1) day's written notice to that effect to the other party either personally, by mail, or by fax machine at the address or fax number shown at the end of this Agreement.

5.   INDEPENDENT CONTRACTOR'S RESPONSIBILITIES.

    (a)   Compliance with Pertinent Laws and Regulations.
        i.   INDEPENDENT CONTRACTOR shall provide competent drivers who meet all of the requirements of the U.S. Department of Transportation, including but not limited to, familiarity and com-



EXHIBIT
B

pliance with state and federal motor carrier safety laws and regulations.

ii. INDEPENDENT CONTRACTOR shall carry a copy of this Agreement in the Equipment at all times and file with CARRIER, on a timely basis, all log sheets, physical examination certificates, accident reports, and any other required data, documents, or reports.

iii. INDEPENDENT CONTRACTOR agrees that all bills of lading, waybills, freight bills, manifests, or other papers identifying the property carried on the Equipment during the period it is contracted shall be those of CARRIER, or as authorized by CARRIER, and shall indicate that the property transported is under the responsibility of CARRIER or a carrier with which the Equipment has been subcontracted.

iv. INDEPENDENT CONTRACTOR further agrees not to receive any credit extension in CARRIER's name or in any way to use CARRIER's name to obtain credit, unless INDEPENDENT CONTRACTOR first receives CARRIER's written consent to do so.

(b) Operational Expenses (49 CFR 376.12(e)).

i. INDEPENDENT CONTRACTOR shall, at its sole cost and expense, provide all the Equipment ready to operate and fully roadworthy, including the necessary licenses, permits, cab cards, vehicle identification stamps, and state base plates, and shall furnish all necessary oil, fuel, tires, and other parts, supplies and equipment necessary or required for the safe and efficient operation and maintenance of the Equipment, including repairs for the operation of such Equipment; and shall pay all other expenses incident to such operation, including, but not limited to, highway use taxes, weight taxes, state property or indefinite situs taxes, fuel taxes, license, permit and registration fees, ferry and toll charges, and detention and accessorial charges not collected by CARRIER because of INDEPENDENT CONTRACTOR's failure to provide the required documentation.

ii. CARRIER shall assume the responsibility of reporting and paying all fuel taxes to the

-2-

various states of operation on behalf of INDEPENDENT CONTRACTOR. All state fuel taxes paid by CARRIER on behalf of INDEPENDENT CONTRACTOR shall be charged back to INDEPENDENT CONTRACTOR pursuant to Paragraph 12 of this Agreement. INDEPENDENT CONTRACTOR shall be responsible for providing CARRIER with an accurate accounting of all fuel purchases and miles travelled for the purposes of assisting CARRIER in computing state fuel tax liability for the Equipment. INDEPENDENT CONTRACTOR shall also provide CARRIER with all original fuel receipts and any additional documentation requested by CARRIER.

iii. Unless otherwise required by law, empty mileage expense shall be borne by INDEPENDENT CONTRACTOR.

iv. INDEPENDENT CONTRACTOR shall be responsible for maintaining, and shall maintain the Equipment in safe condition and in complete compliance with all laws and regulations of the states in which INDEPENDENT CONTRACTOR operates, the Department of Transportation, and the Federal Highway Administration.

v. INDEPENDENT CONTRACTOR agrees to pay all fines imposed for violation of any law or regulation by the state in which INDEPENDENT CONTRACTOR operates, the Department of Transportation, or the Federal Highway Administration, where such violation results, at least partially, from the acts or omissions of INDEPENDENT CONTRACTOR.

vi. Except when the violation results from the acts or omissions of INDEPENDENT CONTRACTOR, CARRIER shall assume, on interstate loads only, the risks and costs of fines for overweight and oversize trailers when such trailers are preloaded and sealed, or the load is containerized, or for improperly permitted overdimension and over weight loads, or the trailer or lading is otherwise outside of INDEPENDENT CONTRACTOR'S control.

vii. INDEPENDENT CONTRACTOR shall pay for and defend, indemnify and hold CARRIER harmless for any loss, damage, fines, expense, includ-

-3-

ing reasonable attorney's fees, actions and claims arising out of, or in connection with, the cleaning up of any accident or any spills involving the Equipment or the INDEPENDENT CONTRACTOR'S services.

(c) **Cargo Claims (49 CFR 376.12(j)).** INDEPENDENT CONTRACTOR shall be responsible for any claim resulting from cargo shortages, cargo damage or delays in transporting shipments to, in whole or in part, the due negligence of INDEPENDENT CONTRACTOR or its drivers, as determined by CARRIER, provided, however, that CARRIER agrees to limit INDEPENDENT CONTRACTOR's liability for any cargo claim to One Thousand Dollars ($1,000.00) per shipment. This liability limitation shall not apply, however, if the damage is caused, in whole or in part, by any willful or intentional act INDEPENDENT CONTRACTOR or its workers.

(d) **Trailer Damage (49 CFR 376.12(j)).** INDEPENDENT CONTRACTOR shall be liable for, and pay, all direct, indirect and consequential damage, including but not limited to, towing charges and reasonable attorney's fees, arising out of, or in connection with, INDEPENDENT CONTRACTOR's use of: CARRIER's trailers, CARRIER's customer's trailers, other equipment of CARRIER'S, or equipment of any other carrier.

(e) **Insurance (49 CFR 376.12(j)).** The responsibilities and obligations between CARRIER and INDEPENDENT CONTRACTOR involving insurance shall be as specified in paragraph 6(d) and in **Appendix B.** CARRIER shall have no insurance responsibilities or obligations pertaining to INDEPENDENT CONTRACTOR other than those expressly stated in this Agreement or mandated by law.

(f) **Accident Reports.** INDEPENDENT CONTRACTOR shall immediately report any accident to CARRIER involving operations under this Agreement, including INDEPENDENT CONTRACTOR's written report of such accident. In the event INDEPENDENT CONTRACTOR fails to notify CARRIER of the accident within four (4) hours from the time of the accident, INDEPENDENT CONTRACTOR shall be liable for any and all damages resulting from that failure to notify, including but not limited to consequential damages,

-4-

fines, claims by third parties and reasonable attorney fees.

(g) Hold Harmless. INDEPENDENT CONTRACTOR agrees to defend, indemnify and hold harmless CARRIER from any direct, indirect and consequential loss, damage, fine, expense, including reasonable attorney's fees, action, claim for injury to persons, including death, and damage to property which CARRIER may incur arising out of or in connection with INDEPENDENT CONTRACTOR'S obligations and/or services under this Agreement.

6. CARRIER'S RESPONSIBILITIES.

(a) Exclusive Possession and Responsibility (49 CFR 376.12(c)). The Equipment shall be for CARRIER'S exclusive possession, control, and use for the duration of this Agreement. CARRIER shall assume complete responsibility for the operation of the Equipment for the duration of this Agreement. This subparagraph is set forth solely to conform with federal leasing regulations and shall not be used for any other purposes, including any attempt to classify INDEPENDENT CONTRACTOR as an employee of CARRIER.

(b) Inspection of Equipment. CARRIER certifies that, before taking possession of the Equipment, the Equipment was inspected by one of its responsible and competent employees or agents.

(c) Identification of Equipment (49 CFR 376.11(c)). CARRIER shall identify the Equipment in accordance with the requirements of the Federal Highway Administration, Department of Transportation, and appropriate state regulatory agencies. CARRIER shall have the right to place and maintain on the Equipment CARRIER'S name and any lettering, advertisement, slogans or designs as CARRIER may choose. INDEPENDENT CONTRACTOR shall remove such identification at the termination of this Agreement or while operating such Equipment for any purpose other than conducting CARRIER's business. INDEPENDENT CONTRACTOR further agrees to keep the Equipment in clean appearance and identified as described herein, at its sole cost and expense.

(d) Insurance. Unless authorized to be self-insured, CARRIER shall maintain public liability, property

-5-

damage, and cargo insurance in such amounts as are required by the Federal Highway Administration, Department of Transportation, and applicable state regulatory agencies. CARRIER shall maintain insurance coverage for the protection of the public pursuant to the Federal Highway Administration's regulations under 49 U.S.C. § 13906. CARRIER's self-insurance or possession of legally required insurance in no way restricts CARRIER's right of indemnification from INDEPENDENT CONTRACTOR under Paragraph 5(g) and other provisions of this Agreement.

7. INDEPENDENT CONTRACTOR NOT EMPLOYEE OF CARRIER. It is expressly understood and agreed that INDEPENDENT CONTRACTOR is an independent contractor for the Equipment and driver services provided pursuant to this Agreement, and that INDEPENDENT CONTRACTOR agrees to defend, indemnify and hold CARRIER harmless for any claims, suits, or actions, including reasonable attorney's fees in protecting CARRIER'S interests, brought by INDEPENDENT CONTRACTOR, employees, any union, the public, or state or federal agencies, arising out of the operation of the Equipment pursuant to this Agreement. In this regard, INDEPENDENT CONTRACTOR hereby assumes full control and responsibility for all hours scheduled and worked, wages, salaries, workers' compensation and unemployment insurance, state and federal taxes, fringe benefits, and all other costs relating to the use of drivers provided by INDEPENDENT CONTRACTOR pursuant to this Agreement. Proof of such control and responsibility shall be submitted by INDEPENDENT CONTRACTOR to CARRIER as required by CARRIER and may include, but not be limited to, proof of highway use tax being currently paid when the INDEPENDENT CONTRACTOR purchases the license; proof of income tax being currently paid; proof of payment of payroll tax for INDEPENDENT CONTRACTOR'S drivers and a certificate of insurance containing a 30-day notice of change and/or cancellation clause. As required by law, CARRIER agrees to file information tax returns (Form 1099) on behalf of INDEPENDENT CONTRACTOR if INDEPENDENT CONTRACTOR is paid more than the statutory amount in compensation during a calendar year.

8. TRIP-LEASING. INDEPENDENT CONTRACTOR may trip-lease the Equipment upon prior written notice received by CARRIER in the mail.

9. BREACH. Notwithstanding anything to the contrary in this Agreement, this Agreement may be terminated, at any time, by either party in the event of a breach by the other of any term or obligation contained in this Agreement. In the event of a breach and when practicable, written notice shall be served upon the breaching party, notifying such party of the breach and the

-6-

termination of the Agreement and reason(s) therefore. If, in CARRIER's judgment, INDEPENDENT CONTRACTOR has subjected CARRIER to liability because of INDEPENDENT CONTRACTOR's acts or omissions, CARRIER may take possession of the lading entrusted to INDEPENDENT CONTRACTOR and complete performance, using the same Equipment or any other equipment. In such event, INDEPENDENT CONTRACTOR shall waive any recourse against CARRIER for such action and INDEPENDENT CONTRACTOR shall reimburse CARRIER for all direct or indirect costs, expenses, or damages including reasonable attorney's fees incurred by CARRIER as a result of CARRIER's taking possession of the lading and completing performance.

10. SETTLEMENT PERIOD (49 CFR 376.12(f)). CARRIER shall settle with INDEPENDENT CONTRACTOR with respect to services provided under this Agreement or an authorized trip-lease within 15 calendar days after INDEPENDENT CONTRACTOR's submission, in proper form, of those documents necessary for CARRIER to secure payment, including, but not necessarily limited to, the signed freight bill, delivery receipt or bill of lading, and properly completed logs as required by the Department of Transportation. If INDEPENDENT CONTRACTOR's compensation is based on a percentage of the gross revenue for a shipment, then CARRIER will give INDEPENDENT CONTRACTOR, before or at the time of settlement, a copy of the rated freight bill, subject to CARRIER's right to delete the names of shippers and consignees, and INDEPENDENT CONTRACTOR may examine copies of the CARRIER's tariff relating to the services upon which settlement is based. CARRIER shall have the right to review all of INDEPENDENT CONTRACTOR'S documents and records relating to the use of the Equipment and to the services provided under this Agreement, and INDEPENDENT CONTRACTOR agrees to provide CARRIER with access to such documents and records upon reasonable notice.

11. INDEPENDENT CONTRACTOR NOT REQUIRED TO PURCHASE PRODUCTS, EQUIPMENT, OR SERVICES FROM CARRIER (49 CFR 376.12(i)). INDEPENDENT CONTRACTOR is not required to purchase or rent any products, equipment, or services from CARRIER as a condition of entering into this Agreement.

12. CHARGE BACK (49 CFR 376.12(h)). CARRIER shall charge back to INDEPENDENT CONTRACTOR at the time of payment or settlement, any expenses CARRIER has borne that, under this Agreement, INDEPENDENT CONTRACTOR is obligated to bear. Such expenses shall be deducted from the amount of INDEPENDENT CONTRACTOR's compensation and shall include, but not be limited to, those expenses set forth in this Agreement as well as C.O.D. and freight collect remittances due CARRIER, cargo claims, property damage, log books, towing charges, insurance deductibles, reasonable attorney's fees incurred in reducing potential liabilities arising out of, or in connection with, INDEPENDENT CONTRACTOR's actions or failure to act under the terms of this Agreement, and all state tax licenses,

-7-

9EI ʞo L ƎⱤⱯd
Ɐ8ᔭ0-HƆ-8102
WV ㄥƐ:ⅠⅠ 8102/9/ㄣ
ᗡƎ⅂Ⅰ⅂ ⱯⅡⱯƆⅠNOƆⱮ⅂Ǝ

permits, and stamps. CARRIER shall provide INDEPENDENT CONTRACTOR written itemization and documentation of all charge backs prior to making such charge backs.

13. FINAL SETTLEMENT (49 CFR 376.12(f)). With respect to final settlement, the failure on the part of INDEPENDENT CONTRACTOR to remove all identification devices of CARRIER, and, except in the case of identification painted directly on the Equipment, return them to CARRIER in any reasonable manner, shall constitute a breach of this Agreement. Such breach shall entitle CARRIER to withhold any payments owed to INDEPENDENT CONTRACTOR until such obligations are met. The parties agree that, in addition to any other right, remedy or claim CARRIER may have, INDEPENDENT CONTRACTOR shall pay CARRIER $25.00 per day for INDEPENDENT CONTRACTOR'S failure to remove and/or return such identification.

14. ESCROW FUNDS (49 CFR 376.12(k)). INDEPENDENT CONTRACTOR authorizes CARRIER to establish an escrow in accordance with the provisions set forth in Appendix C attached.

15. LUMPING AND DETENTION (49 CFR 376.12(e)). Whenever a shipper or a consignee requires that INDEPENDENT CONTRACTOR be assisted in the loading or unloading of property transported on behalf of CARRIER, CARRIER shall pass through to INDEPENDENT CONTRACTOR any compensation it receives from such shipper or consignee for any costs associated with such requirement. Otherwise, INDEPENDENT CONTRACTOR shall be responsible for the loading or unloading of such property at INDEPENDENT CONTRACTOR's expense. Further, detention charges that are collected by CARRIER shall be directly paid to INDEPENDENT CONTRACTOR in accordance with its compensation percentages. CARRIER is entitled to all other accessorial charges.

16. COVENANT NOT TO COMPETE. INDEPENDENT CONTRACTOR, in consideration of CARRIER entering into this Agreement with INDEPENDENT CONTRACTOR, hereby consents and agrees, during the term of this Agreement and for a period of one (1) year after termination of this Agreement, not to engage, directly or indirectly, either individually or as an employee, officer, director, shareholder, owner, partner or consultant in any entity, in soliciting, transporting or handling business of any customers of CARRIER served by CARRIER while INDEPENDENT CONTRACTOR was under contract to, or employment with, CARRIER. In addition, during the term of this Agreement and for a period of one (1) year after termination of this Agreement, INDEPENDENT CONTRACTOR agrees not to solicit, employ or entice any employees of CARRIER or independent contractors under contract to CARRIER from their relationship with CARRIER and agrees not to solicit, employ or entice such employees or independent contractors to accept any position with INDEPENDENT CONTRACTOR or with any entity in which INDEPENDENT CONTRACTOR is an

-8-

employee, officer, director, shareholder, owner, partner or consultant. The parties hereto agree that INDEPENDENT CONTRACTOR shall pay CARRIER, as liquidated damages and not as a penalty, an amount equal to thirty-five percent (35%) of the gross revenue of any and all business obtained by INDEPENDENT CONTRACTOR by virtue of INDEPENDENT CONTRACTOR's breach of this covenant not to compete for a period of one (1) year thereafter as just and reasonable compensation to CARRIER, and the parties further agree that INDEPENDENT CONTRACTOR shall pay CARRIER all costs of collecting these liquidated damages, including reasonable attorney's fees. If requested, INDEPENDENT CONTRACTOR shall provide CARRIER, within ten (10) days of such request, all information and documentation regarding such gross revenues to assist CARRIER in verifying that the correct amount of liquidated damages is paid. In the event that any provisions of this Agreement are found by a court of competent jurisdiction to be void, illegal or invalid, the remaining provisions of this Agreement shall nevertheless be binding with the same force and effect as if the void, illegal or invalid parts were deleted. In the event the amount of liquidated damages or the restrictions set forth in this paragraph, including the covenant not to compete's duration, are found by a court of competent jurisdiction to be void, illegal, or invalid, the parties agree that a reasonable amount of liquidated damages and/or a reasonable restriction on the covenant not to compete, including its duration, as applicable, shall be provided by the court.

17. **BENEFIT.** This Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their respective successors.

18. **NOTICE.** All notice provisions of this Agreement shall be in writing delivered personally, by postage prepaid, first class mail, or by facsimile machine to the addresses or fax number shown at the end of this Agreement.

19. **COMPLETE AGREEMENT.** This Agreement, including any Appendices attached, constitutes the sole, entire, and existing agreement between the parties herein, and supersedes all prior agreements and undertakings, oral and written, expressed or implied, or practices, between the parties, and expresses all obligations and restrictions imposed on each of the respective parties during its term, except those specifically modified or changed by mutual written agreement between CARRIER and INDEPENDENT CONTRACTOR. This Agreement shall be deemed to have been drawn in accordance with the statutes and laws of the State of Indiana and in the event of any disagreement or litigation, the laws of this state shall apply and suit must be brought in this state.

-9-

IN WITNESS WHEREOF, CARRIER and INDEPENDENT CONTRACTOR do
hereby sign this Agreement on this ___ day of _2_____,
20 16 , the effective date of this Agreement.

CARRIER                              INDEPENDENT CONTRACTOR

Aaaction Transportation, Inc.        Dove Logistics LLC

5412 Boulder Avenue
Portage, IN 46368
Telephone: (219) 753-2211            Telephone: 219-363-9810
Telefax: (219)764-2255               Telefax: _____

By: _C. S. Chan_____              By: _Bernard. Onl._____

-10-

RECEIPT FOR POSSESSION OF CONTRACTED VEHICLE(S)

Received from DOVE LOGISTICS

the vehicle or vehicles described in this Agreement.

Equipment received at DURAND I

on FEB 9 20 16 at 12⁰⁰ A.M. P.M.

By C Ochoa


RECEIPT FOR RETURN OF CONTRACTED VEHICLE(S)


Received from _____

the vehicles or vehicles described in this Agreement in good order.

Equipment received at _____

on _____ 20.___ at ___ A.M. ____ P.M. ____

Contractor _____

By _____

-11-

## Appendix A

## Independent Contractor's Compensation

Unless otherwise agreed to in writing between the parties, CARRIER shall pay INDEPENDENT CONTRACTOR 75% of the gross revenue. Gross revenue shall mean all revenue billed and collected by CARRIER for commodities hauled and transported by INDEPENDENT CONTRACTOR reduced by: (a) any and all expenses attributed to accessorial services paid to a third party or to INDEPENDENT CONTRACTOR by CARRIER; (b) the amount paid to any third party by CARRIER in relation to the movement of the shipment, including without limitation, amounts paid to other contractors of pro rata payment for their participation in this shipment or any amounts paid by CARRIER to interline or augmenting carriers; (c) any revenue received by CARRIER in excess value charge on high value freight; and (d) all incentives, discounts or commissions given to CARRIER's customers or other third parties. All accessorial service charges, such as loading fees and detention charges, billed and collected by CARRIER from its customer shall be paid to INDEPENDENT CONTRACTOR at 75% of the gross revenue.

The parties recognize and agree that CARRIER is authorized by INDEPENDENT CONTRACTOR to deduct all amounts set forth in the INDEPENDENT CONTRACTOR's compensation under this appendix.

At the discretion of CARRIER, CARRIER shall pay INDEPENDENT CONTRACTOR an advance of INDEPENDENT CONTRACTOR's anticipated compensation. All such advances shall be charged back to INDEPENDENT CONTRACTOR pursuant to the Agreement. INDEPENDENT CONTRACTOR hereby authorizes CARRIER to make advance payments to any driver that may be operating the Equipment on behalf of INDEPENDENT CONTRACTOR.

AAACTION TRANS. INC.
P.O. BOX 919
PORTAGE, INDIANA 46368

INDEPENDENT CONTRACTOR                 CARRIER

By: _Bruce W. _____                    By: _C. _____
Date: _2/2/2016_                       Date: _2-1-16_

-12-

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 12 of 16

Appendix B

Insurance (49 CFR 376.12(j))

INDEPENDENT CONTRACTOR shall be covered under CARRIER's public liability and property damage insurance coverage and shall be charged back for the first One Thousand Dollars ($1,000.00) for each such claim; provided, however, that INDEPENDENT CONTRACTOR shall be responsible for the entire claim if the claim is caused, in whole or in part, by the willful or intentional acts or admissions of INDEPENDENT CONTRACTOR or its driver. The insurance provided by CARRIER is not intended to protect INDEPENDENT CONTRACTOR whenever the equipment is not being operated on behalf of CARRIER.

INDEPENDENT CONTRACTOR shall maintain, at its sole cost and expense, the following minimum insurance coverages during the term of this Agreement:

1. **NON-TRUCKING USE ("BOBTAIL")** - INDEPENDENT CONTRACTOR shall procure, carry and maintain public liability and property damage insurance which shall provide coverage to INDEPENDENT CONTRACTOR whenever the Equipment is not being operated on behalf of CARRIER ("bobtail coverage") in a combined single limit of not less than One Million Dollars ($1,000,000) for injury or death to any person or for damages to property in any one occurrence. INDEPENDENT CONTRACTOR shall be responsible for any loss or damage in excess of the policy limit.

2. **WORKERS' COMPENSATION OR OCCUPATIONAL ACCIDENT** - Prior to commencing operations under this Agreement, INDEPENDENT CONTRACTOR shall provide a certificate of insurance showing that INDEPENDENT CONTRACTOR has procured workers' compensation insurance or a policy of occupational accident insurance, in an amount and upon such terms as acceptable to CARRIER.

INDEPENDENT CONTRACTOR shall furnish to CARRIER written certificates obtained from INDEPENDENT CONTRACTOR's insurance CARRIER showing that all insurance coverages required above have been procured from an "A" rated company, are being properly maintained, and the premiums therefore are paid, specifying the name of the insurance CARRIER, the policy number, the expiration date, naming CARRIER as an additional named insured and further showing that written notice of cancellation or modification of the policy shall be given to CARRIER at least thirty (30) days prior to such cancellation or modification.

In addition to the insurance coverages required under this Agreement, it is INDEPENDENT CONTRACTOR's responsibility to procure, carry and maintain any fire, theft, uninsured and/or

- 13 -

underinsured motorist and collision insurance coverage that INDEPENDENT CONTRACTOR may desire for the Equipment.

INDEPENDENT CONTRACTOR may, at INDEPENDENT CONTRACTOR's option, authorize CARRIER to obtain and administer, on INDEPENDENT CONTRACTOR's behalf, the insurance coverages required by this Agreement, in which case INDEPENDENT CONTRACTOR will be charged back for all of CARRIER's expense and cost in obtaining and administering such coverage. If insurance coverage is requested from CARRIER, INDEPENDENT CONTRACTOR shall pay the first month's costs of all requested coverage, upon execution of the Agreement. INDEPENDENT CONTRACTOR recognizes that CARRIER is not in the business of selling insurance, and any insurance coverage requested by INDEPENDENT CONTRACTOR from CARRIER is subject to all of the terms, conditions and exclusions of the actual policy issued by the insurance underwriter. CARRIER shall provide INDEPENDENT CONTRACTOR with a certificate of insurance for each insurance policy under which the INDEPENDENT CONTRACTOR requests coverage. A copy of the actual policy is also available from CARRIER upon written request by the INDEPENDENT CONTRACTOR.

-14-

L000978070550417 18

INDEPENDENT CONTRACTOR hereby certifies that INDEPENDENT CONTRACTOR has in effect and shall maintain the insurance coverages marked with a check below:

**NON-TRUCKING USE/BOBTAIL** ( )

Insurance Co.__________

Policy No.__________

Coverage Dates:__________

Minimum Coverage: $1,000,000

**WORKERS' COMPENSATION** ( )

Insurance Co.__________

Policy No.__________

Coverage Dates:__________

**TRACTOR PHYSICAL DAMAGE** ( )

Insurance Co.__________

Policy No.__________

Coverage Dates:__________

NOTE: INDEPENDENT CONTRACTOR must provide CARRIER with a certificate of insurance for all coverages marked above naming CARRIER as a "certificate holder" before this Agreement becomes effective.

__________
INDEPENDENT CONTRACTOR's Signature

Date:__________

If CARRIER is able to obtain and provide it, INDEPENDENT CONTRACTOR requests CARRIER, through CARRIER's insurer, to obtain for INDEPENDENT CONTRACTOR the insurance coverages marked with a check below:

**NON-TRUCKING USE/BOBTAIL** (✓)

Monthly Cost: 41[96]

**OCCUPATIONAL ACCIDENT/CONTINGENT WORKERS' COMPENSATION** ( )

Monthly Cost: N/A

**TRACTOR PHYSICAL DAMAGE** ( )

Insured Vehicle Value: N/A

Monthly Cost: N/A

[signature]
INDEPENDENT CONTRACTOR's Signature

Date: 2/2/2016

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 15 of 16

Case: 1:18-cv-03369 Document #: 1-1 Filed: 05/11/18 Page 57 of 181 PageID #:62

## Appendix C

### Escrow (49 CFR 376.12 (k))

In the event that CARRIER exercises its right to establish an escrow as set forth in Paragraph 14 of this Agreement, the following shall be applicable:

1.  The amount of principal to be held in escrow ("escrow funds") shall not exceed $ 1,000.00 .

2.  Escrow funds shall be held by the CARRIER for the purpose of insuring compliance with the provisions of the Agreement and may be applied to the applicable Paragraphs in the Agreement.

3.  While escrow funds are under CARRIER'S control, CARRIER shall provide an accounting to INDEPENDENT CONTRACTOR of all transactions involving such funds by clearly indicating on individual settlement sheets the amount and description of any deduction or addition made to the escrow fund. CARRIER shall provide signed receipts to INDEPENDENT CONTRACTOR for any deposits to such fund.

4.  Upon INDEPENDENT CONTRACTOR'S request, CARRIER shall provide INDEPENDENT CONTRACTOR with an accounting of any transactions involving INDEPENDENT CONTRACTOR'S escrow funds.

5.  CARRIER shall pay interest on the escrow funds. The amount of interest shall be established on the date the interest period begins and shall be equal to the average yield of 91-day, 13-week treasury bills, as established in the weekly auction by the Department of Treasury. For purposes of calculating the balance of the escrow fund on which interest is paid, CARRIER may deduct a sum equal to the average advance made to INDEPENDENT CONTRACTOR during the period of time for which interest is paid.

6.  Escrow funds shall be repaid upon the prompt return by INDEPENDENT CONTRACTOR of all signs; licenses, permits, notices, tax cards, operating authority, and other paperwork and property belonging to the CARRIER. The amount of escrow funds may be reduced to reflect expenses incurred by CARRIER with respect to any efforts undertaken by CARRIER to seek return of such items. Any such reductions shall be accounted for in the final accounting period provided by CARRIER.

7.  Escrow funds, less any reductions, shall be repaid within forty-five (45) days from the date of termination of this Agreement.

F:\USERS\KORIMONT\WPWIN\KDOCCR\OWN\AB\ARACTION\ICA.WPD

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04
CALENDAR: 0
PAGE 1 of 9
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN



**ACUITY**

June 30, 2017

NATIONAL CASUALTY COMPANY
ONE WEST NATIONWIDE BLVD
COLUMBUS OH 43215-2220

RE: Acuity Claim Number: PF8025
Case Name: Cathy Komada, et al. v. Bruce Dove, et al.
Insured: Kingsbury Acres Greenhouse, Inc.
Court No.: Court No.: 16 L 05275
(Cook County, IL)
Date of Loss: 04/30/2016

Dear Sir and/or Madam:

Acuity is currently defending Kingsbury Acres Greenhouse, Inc. ("Kingsbury") in a lawsuit filed by Cathy Komada, as Independent Executor of the Estate of Jeffery R. Komada, against Kingsbury; Bruce Dove, individually and as agent of AAAction Transportation, Inc. ("AAA") and Dove Logistics LLC; and Hickory Creek Nursery, Inc. d/b/a Alsip Home & Nursery ("Hickory") among others ("the Komada suit").

Acuity has recently received a copy of a motor carrier coverage policy issued to AAAction by National Casualty Company ("National") policy no. LFO0002507, effective October 1, 2015, with a covered autos liability limit of $1,000,000.00 ("the National policy"). It is Acuity's position that the National policy provides coverage to Kingsbury for the Komada suit and that, therefore, National owes Kingsbury a duty to defend it in the suit. Accordingly, Acuity requests that National agree to an equal share of Kingsbury's defense in the Komada suit. The basis for Acuity's position follows.

### The Komada Suit

On May 26, 2016, Cathy Komada ("Cathy"), as Independent Executor of the Estate of Jeffery R. Komada ("Jeffrey"), filed suit in the Circuit Court of Cook County, case no. 2016 L 5275. The case was then removed to federal court for a short time, at which time Kingsbury was added as a defendant, in the Second Amended Complaint, filed on July 18, 2016. The case was remanded to Cook County in August 2016. Cathy Komada filed a third amended complaint on September 28, 2016, naming the following defendants: Bruce Dove ("Dove") individually and as agent of AAA and Dove Logistics LLC; Kingsbury; and Hickory Creek Nursery, Inc. d/b/a Alsip Home & Nursery ("Hickory") ("the Komada complaint").

2800 South Taylor Drive · Sheboygan, WI 53081
920.458.9131 · 800.242.7666 · 920.458.1618 FAX
www.acuity.com

EXHIBIT
C

L00097807058041718

2

The Komada complaint alleges that on April 30, 2016, Jeffrey was "standing outside his vehicle assisting a stranded motorist and her five year old daughter" when he was struck by a truck driven by Dove. The Komada complaint further alleges that Dove was an "agent and/or employee" of Kingsbury at the time of the incident and, therefore, seeks to hold Kingsbury vicariously liable for Dove's acts or omissions. The complaint likewise alleges that Dove was an agent of AAA at the time of the incident. The complaint does not allege ownership of the tractor or trailer, though Acuity understands that Dove owned the tractor and Kingsbury leased the trailer from Xtra Lease, which was then dispatched by AAA.

### The National Policy

The declarations page of the National policy identifies the following covered autos:

> 64    Owned Commercial "Autos" Only
>
> Only those trucks, tractors and "trailers" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those trucks tractors and "trailers" you acquire ownership of after the policy begins.
>
> 68    Hired "Autos" Only
>
> Only those "autos" you lease, hire, rent or borrow. This does not include any "private passenger type" "auto" you lease, hire, rent or borrow from any member of your household, any of your "employees", partners (if you are a partnership), members (if you are a limited liability company), or agents or members of their households.

The National policy further provides, in pertinent part, as follows:

**Section II – Covered Autos Liability Coverage**

**A.    Coverage**

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership maintenance or use of a covered "auto." ***

**1.    Who Is An Insured**

> The following are "insureds":

\*        \*        \*

PAGE 2 of 5
2018-CH-04484
4/6/2018 11:37 AM
ELECTRONICALLY FILED

3

c. The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected, is being used exclusively in your business.

\* \* \*

## SECTION V – MOTOR CARRIER CONDITIONS

\* \* \*

**B. General Conditions**

\* \* \*

5. **Other Insurance – Primary and Excess Insurance Provisions**

\* \* \*

b. While any covered "auto" is hired or borrowed by you from another "motor carrier". this Coverage Form's Covered Autos Liability Coverage is:

(1) Primary if a written agreement between the other "motor carrier" as the lessor and you as the lessee does not require the lessor to hold you harmless, and then only while the covered "auto is used exclusively in your business as a "motor carrier" for hire.

(2) Excess over any other collectible insurance if a written agreement between the other "motor carrier" as the lessor and you as the lessee requires the lessor to hold you harmless.

c. While a covered "auto" which is a "trailer" is connected to a power unit, this Coverage Form's Covered Autos Liability Coverage is:

(1) Provided on the same basis, either primary or excess, as the Covered Autos Liability Coverage Provided for the power unit if the power unit is a covered "auto".

(2) Excess if the power unit is not a covered "auto".

4

## SECTION VI – DEFINITIONS

\*       \*       \*

B.    "Auto" means:

1.    A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

2.    Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

### Coverage Position & Tender

Kingsbury qualifies as an insured on the National policy as it is "the owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected, is being used exclusively in your business."   Moreover, the trailer and Dove's power unit qualify as "covered autos" under the National policy as symbol 68 is selected in the National policy and includes as covered autos "those 'autos' you lease, hire, rent or borrow." As such, National owes Kingsbury a duty to defend it in the Komada suit.

Comparing the relevant Other Insurance provision in the National policy with the Other Insurance provision in the Acuity policy, both policies provide excess coverage and, therefore, National and Acuity must equally share in the loss.  The Acuity policy's Other Insurance clause provides that "while a covered 'auto' which is a 'trailer' is connected to another vehicle, [this insurance] is \*\*\* [e]xcess while it is connected to a motor vehicle you do not own."

The National policy's Other Insurance provision, at section (c), provides that the insurance is provided to a trailer on the same basis, primary or excess, as the coverage provided for the power unit.  The power unit coverage is described at paragraph (b), which says that the insurance is excess where the agreement requires the owner of the power unit, the motor carrier, to hold the named insured harmless.

In this case, the contract between the owner of the power unit (Dove) and AAA does require that that Dove hold AAA harmless, at section 5(g) of the agreement.  As such, the plain language of the policy identifies its coverage for the power unit as excess.  Because the coverage for the trailer is afforded the same priority of coverage as the power unit in the National policy, that coverage would also be excess.

For these reasons, Acuity hereby tenders the defense and indemnity of Kingsbury in the Komada suit to AAA and its insurer, National, and requests that National agree to share in Kingsbury's defense with Acuity on a 50/50 basis.  Acuity further requests AAA provide a copy of this tender letter to National and that AAA and/or

5

National confirm that any and all excess carriers of AAA have been put on notice of this suit. Please contact the undersigned immediately to confirm that AAA will accept the tender of defense and indemnity.

Sincerely,

Rebecca M. Falzone, AINS
Field Claims Representative
Acuity, A Mutual Insurance Company

CC: AA Action Transportation and Counsel for AA Action Transportation

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
CALENDAR: 10
PAGE 1 of 56
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# National Casualty Company

## COMMERCIAL AUTO COVERAGE
## MOTOR CARRIER COVERAGE FORM SUPPLEMENTAL DECLARATIONS

Policy No. LE0000207                        Effective Date 12/03/2015
                                               12:01 A.M. Standard Time

Named Insured: ASSAULT ON TRANSPORTATION, INC.        Agent No. 33917

Item 1. — Business Description: TRUCKER HAULING STEEL, CONCRETE, BRICK, BLDG MATERIALS (SEE 3599).

Form of Business:   ☒ Corporation      ☐ Limited Liability Company      ☐ Individual      ☐ Partnership
                    ☐ Other:

Audit Period (if applicable):   ☒ Annually    ☐ Semi-Annually    ☐ Quarterly    ☐ Monthly

Item 2. – Schedule of Coverages and Covered Autos

This policy provides only those coverages where a charge is shown in the premium column below. Each of those coverages will apply only to those "autos" shown as covered "autos." "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTOS Section of the Motor Carrier Coverage Form next to the name of the coverage.

| Coverages | Covered Autos | Limit<br>The Most We Will Pay for Any One Accident or Loss | Premium |
|---|---|---|---|
| Covered Autos Liability | 66, 69, 71 | $    1,000,000 | $    37,557 |
| Personal Injury Protection (P.I.P.)<br>(or equivalent No-fault coverage) | NONE | Separately stated in each P.I.P. endorsement, minus any Deductible shown therein or scheduled on form CAI-117. | $ NOT COV'D |
| Added P.I.P. (or equivalent added No-fault coverage) | NONE | Separately stated in each added P.I.P. endorsement. | $ NOT COV'D |
| Property Protection Insurance (P.P.I.) (Michigan only) | NONE | Separately stated in the P.P.I. endorsement minus $    N/A    Deductible for each "accident." | $ NOT COV'D |
| Auto Medical Payments | NONE | $ NOT COV'D  each insured | $ NOT COV'D |
| Medical Expense And Income Loss Benefits (Virginia only) | NONE | Separately stated in the Medical Expense And Income Loss Benefits endorsement. | $ NOT COV'D |
| Uninsured Motorists (UM) | 63 | Separately stated in each UM endorsement | $    INCLUDED |
| Underinsured Motorists (UIM) (when not included in UM Coverage) | 64 | Separately stated in each UIM endorsement. | $    INCLUDED |
| Trailer Interchange Comprehensive Coverage | NONE | Least of actual cash value, cost of repair or $ NOT COV'D Limit of Insurance, minus $    N/A  Deductible for each covered "trailer." | $ NOT COV'D |
| Trailer Interchange Specified Causes Of Loss Coverage | NONE | | $ NOT COV'D |
| Trailer Interchange Collision Coverage | NONE | | $ NOT COV'D |
| Physical Damage Comprehensive Coverage | 67 | Actual cash value or cost of repair or stated amount, whichever is less, minus any applicable Deductible for each covered "auto." (See Item 4. for hired or borrowed "autos.") | $    INCLUDED |
| Physical Damage Specified Causes of Loss Coverage | NONE | | $ NOT COV'D |
| Physical Damage Collision Coverage | 67 | See Schedule of Covered Auto You Own. See Item 4. for Hired and Borrowed Autos | $    1,025 |

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 2009.

CT-SD-1 (10-13)                          Page 1 of 6                          std01f01



EXHIBIT
D

L00097807063041718

# National Casualty Company

## COMMERCIAL AUTO COVERAGE
## MOTOR CARRIER COVERAGE FORM SUPPLEMENTAL DECLARATIONS (continued)

Policy No.: TFC0032807     Effective Date: 15/01/2015

12:01 A.M. Standard Time

Named Insured: ARASTION TRANSPORTATION, INC.     Agent No.: 13012

**Item 2. - Schedule of Coverages and Covered Autos (continued)**

| Coverages | Covered Autos | Limit<br>The Most We Will Pay for Any One Accident or Less | Premium |
|---|---|---|---|
| Physical Damage Towing and Labor | NONE | $NOT COV'D    for each disablement of a private passenger "auto." | $ NOT COV'D |
| Form(s) and endorsement(s) applying to this coverage form and made a part of this policy at the time of issue: See Schedule of Forms and Endorsements. | | Premium for Endorsements | $ |
| | | Estimated Total Premium (This policy may be subject to final audit.) | $    92,583 |

**Item 3. - Schedule of Covered Autos You Own**
    See Schedule of Covered Autos You Own.

**Item 4. - Schedule of Hired or Borrowed Covered Auto Coverage and Premiums.**

Covered Autos Liability Coverage - Cost of Hire Rating Basis for "Autos" used in your Motor Carrier Operations Or Farm Equipment)

| State | Estimated Annual Cost of Hire (Primary) | Rate Per Each $100 Cost of Hire (Primary) | Estimated Annual Cost of Hire (Excess) | Rate Per Each $100 Cost of Hire (Excess) | Premium |
|---|---|---|---|---|---|
| IN | $ IF ANY | $ 7.434 | $ IF ANY | $ 9.822 | $ INCLUDED |
| | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ |
| | | | | Total Hired Auto Premium | $ |

For "autos" used in your motor carrier operations, cost of hire means:

1. The total dollar amount of costs you incurred for the hire of automobiles (includes "trailers" and semitrailers), and if not included therein;

2. The total remunerations of all operators and drivers' helpers, of hired automobiles whether hired with a driver or lessor or an "employee" of the lessee, or any other third party; and

3. The total dollar amount of any other costs (e.g., repair, maintenance, fuel, etc.) directly associated with operating the hired automobiles whether such costs are absorbed by the "insured," paid to the lessor or owner, or paid to others.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2009

# National Casualty Company

## COMMERCIAL AUTO COVERAGE
## MOTOR CARRIER COVERAGE FORM SUPPLEMENTAL DECLARATIONS (continued)

Policy No.: XFGU 02351      Effective Date: 10/01/2015

     12:01 A.M. Standard Time

Named Insured: ALACTION TRANSPORTATION, INC.      Agent No.: 13012

**Item 4. - Schedule of Hired or Borrowed Covered Auto Coverage and Premiums (continued).**

Covered Autos Liability Coverage - Cost of Hire Rating Basis for "Autos" NOT used in your Motor Carrier Operations (Other than Mobile or Farm Equipment).

| State | Estimated Annual Cost of Hire (Primary) | Rate Per Each $100 Cost of Hire (Primary) | Estimated Annual Cost of Hire (Excess) | Rate Per Each $100 Cost of Hire (Excess) | Premium |
|---|---|---|---|---|---|
| N/A | $ N/A | $ N/A | $ N/A | $ N/A | $ NOT COV'D |
| | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ |
| | | | | Total Hired Auto Premium | $ |

For "autos" not used in your motor carrier operations, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

| Physical Damage Coverages - Cost of Hire Rating Basis for All "Autos" (Other than Mobile or Farm Equipment). | | | |
|---|---|---|---|
| Coverage | Limit of Insurance The Most We Will Pay Deductible | Estimated Annual Cost of Hire For Each State (Excluding Autos Hired With A Driver) | Premium |
| Comprehensive | Actual cash value, cost of repair or $ NOT COV'D whichever is less, minus $ N/A Deductible for each covered "auto." | $ N/A | $ NOT COV'D |
| Specified Causes of Loss | Actual cash value, cost of repair or $ NOT COV'D whichever is less, minus $ N/A Deductible for each covered "auto." | $ N/A | $ NOT COV'D |
| Collision | Actual cash value, cost of repair or $ NOT COV'D whichever is less, minus $ N/A Deductible for each covered "auto." | $ N/A | $ NOT COV'D |
| | | Total Hired Auto Premium | $ |

For Physical Damage Coverages, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for any "auto" that is leased, hired, rented or borrowed with a driver.

Hired or Borrowed Mobile and Farm Equipment
If this box is checked ☐, see Mobile and Farm Equipment Supplementary Schedule.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 2009

PAGE 3 of 56
2018-CH-04484
4/6/2018 11:37 AM
ELECTRONICALLY FILED

# National Casualty Company

## COMMERCIAL AUTO COVERAGE
## MOTOR CARRIER COVERAGE FORM SUPPLEMENTAL DECLARATIONS (continued)

Policy No.: 1PO1992507

Effective Date: 07/31/2015

12.01 A.M. Standard Time

Named Insured: ANDERSON TRANSPORTATION, INC.

Agent No.: 18012

### Item 5. - Schedule for Non-ownership Covered Autos Liability

| Rating Basis | Number | Premium |
|---|---|---|
| Number of Employees | 0-25 | $ INCLUDED |
| Number of Partners (Active and Inactive) | NONE | $ N/A |
| Total Non-ownership Covered Autos Liability Premium | | $ |

### Item 6. - Trailer Interchange Coverage

| Coverages | Limits of Insurance | Premium |
|---|---|---|
| Comprehensive | | $ |
| Specified Causes of Loss | Stated in Item 2. | $ |
| Collision | | $ |
| Total Trailer Interchange Premium | | $ |

### Item 7. - Schedule for Gross Receipts or Mileage Basis

Address of Business Headquarters Location:
5412 BOULDER AVENUE, PORTAGE, IN 46368

Type Of Risk (Check One)
☒ Motor Carriers   ☐ Public Autos   ☐ Leasing Or Rental Concerns

Rating Basis (Check One)
☒ Gross Receipts (Per $100)   ☐ Mileage (Per Mile)

Estimated Yearly (Gross Receipts Or Mileage)
1,700,000

| | Rate | Premium |
|---|---|---|
| Covered Autos Liability | $ 4.81 | $ 81,782 |
| Personal Injury Protection | $ | $ |
| Added Personal Injury Protection | $ | $ |
| Property Protection Insurance (Michigan Only) | $ | $ |
| Auto Medical Payments | $ | $ |
| Medical Expense And Income Loss Benefits (Virginia Only) | $ | $ |
| Uninsured Motorists (UM) | $ INCL | $ INCLUDED |
| Underinsured Motorists (UIM) (when not included in UM Coverage) | $ INCL | $ INCLUDED |
| Trailer Interchange | $ | $ |
| Comprehensive | $ | $ |
| Specified Causes Of Loss | $ | $ |
| Collision | $ | $ |
| Towing And Labor | $ | $ |
| | Total Premium | $ 81,782 |
| | Minimum Premium | $ 73,604 |

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2002

CT-SD-4 (10-13)

Page 4 of 5

PAGE 4 of 56
2018-CH-04484
4/6/2018 11:37 AM
ELECTRONICALLY FILED

# National Casualty Company

### COMMERCIAL AUTO COVERAGE
### MOTOR CARRIER COVERAGE FORM SUPPLEMENTAL DECLARATIONS (continued)

Policy No. _____                    Effective Date: __10/20/2015_____
                                                  12:01 A.M. Standard Time

Named Insured: _XXACTION_TRANSPORTATION,_INC._____ Agent No.: _13012_____

When gross receipts or mileage is used as a premium basis.

For Motor Carriers:

Gross receipts means the total amount earned by the named insured for enleping or transporting property regardless of whether you or any other carrier originate the shipment or transportation. Gross receipts includes the total amount received from renting equipment, with or without drivers, to any person or organization not engaged in the business of transporting property for hire by "auto" are fifteen percent ("5%) of the total amount received from renting any equipment with or without drivers to any person or organization engaged in the business of transporting property for hire by "auto." Gross Receipts does not include:

1.  Amounts you paid to air, sea or land carriers operating under their own permits.

2.  Advertising revenue.

3.  Taxes collected as a separate item and paid directly to the government.

4.  C O D. collections for cost of merchandise including collection fees.

5.  Warehouse storage fees.

Mileage means the total live and dead mileage of all revenue producing "autos" operated during the policy period.

For Public Autos:

Gross receipts means the total amount earned by the named insured for transporting passengers, mail and merchandise. Gross receipts does not include:

1.  Amounts paid to air, sea or land carriers operating under their own permits.

2.  Advertising revenue.

3.  Taxes collected as a separate item and paid directly to the government.

4.  C.O.D. collections for cost of mail or merchandise including collection fees.

Mileage means the total live and dead mileage of all revenue producing "autos" operated during the policy period.

For Rental Or Leasing Concerns:

Gross receipts means the total amount earned by the named insured for the leasing or renting of "autos" to others without drivers.

Mileage means the total live and dead mileage of all "autos" leased or rented to others without drivers during the policy period.

THESE SUPPLEMENTAL DECLARATIONS TOGETHER WITH THE COMMON POLICY DECLARATIONS AND THE
FORM(S) AND ENDORSEMENT(S), IF ANY, COMPLETE THE POLICY.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2009

CT-SD-1 (10-12)                         Page 5 of 5

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 5 of 56

L00097807067041718

# National Casualty Company

## SCHEDULE OF COVERED AUTOS YOU OWN

Policy No. _____ Effective Date _____ 10/31/2018 _____
12:01 A.M. Standard Time

Named Insured AAXXTION TRANSPORTATION, INC. Agent No _____ 13832

| Covered Auto Number | Description | | |
|---|---|---|---|
| | Year | Model; Trade Name; Body Type | Serial Number(s); Vehicle ID Number (VIN) |
| | | CURRENT VEHICLE SCHEDULE ON FILE WITH COMPANY | |

| Covered Auto Number | Town & State Where Covered Auto Will Be Principally Garaged | Territory | Original Cost New | Stated Amount |
|---|---|---|---|---|
| | PORTAGE          IN | 116 | | 20,000 |

| Covered Auto Number | Radius of Operation in Miles | Business Use S= Service R= Retail C= Commercial | Size GVW, GCW or Vehicle Seating Capacity | Age Group | Code |
|---|---|---|---|---|---|
| | 500 NORMAL & FREQUENT | | | | |

UT-234 (4-08)

Page 1 of 2
INSURED

ut234v1.fap

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 6 of 56

# National Casualty Company

## SCHEDULE OF COVERED AUTOS YOU OWN (continued)

Policy No. _____ LF00852007 _____ Effective Date _____ 10/01/2015 _____
12:01 A.M. Standard Time

Named Insured _____ BRACTION TRANSPORTATION, INC. _____ Agent No. _____ 12312 _____

| Coverages - Premiums, Limits and Deductibles | | | | |
|---|---|---|---|---|
| Covered Auto Number | Liability Premium | P.I.P. Premium | Added P.I.P Premium | P.P.I. Premium (Michigan only) |
| | $1,792 | | | |

| Covered Auto Number | Auto Medical Payments | | Medical Expense Benefits (VA Only) Premium | Income Loss Benefits (VA Only) Premium | Uninsured Motorist Premium | Underinsured Motorist Premium | Total Liability Premium |
|---|---|---|---|---|---|---|---|
| | Limit | Premium | | | | | |
| | | | | | INCLUDED | INCLUDED | $1,792 (BAP) |

| Covered Auto Number | Other Than Collision | | | Collision | | Towing & Labor Premium | Total Physical Damage Premium |
|---|---|---|---|---|---|---|---|
| | Deductible | Comprehensive Premium | Specified Causes of Loss Premium | Deductible | Premium | | |
| | 1,000 | INCLUDED | | 1,000 | 1,026 | | 1,026 |

UT-234 (4-08)

Page 2 of 2

COMMERCIAL AUTO
CA 00 20 10 13

# MOTOR CARRIER COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI - Definitions.

## SECTION I - COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| 61 | Any "Auto" | |
| 62 | Owned "Autos" Only | Only the "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 63 | Owned Private Passenger "Type "Autos" Only | Only the "private passenger type" "autos" you own. This includes those "private passenger type" "autos" that you acquire ownership of after the policy begins. |
| 64 | Owned Commercial "Autos" Only | Only those trucks, tractors and trailers you own (and for Covered Autos Liability Coverage any "trailers" you don't own while connected to a power unit you own). This includes those trucks, tractors and "trailers" you acquire ownership of after the policy begins. |
| 65 | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the no-fault law in the state where they are licensed or principally garaged. |
| 66 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that, because of the law in the state where they are licensed or principally garaged, are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 67 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 68 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "private passenger type" "auto" you lease, hire, rent or borrow from any member of your household, any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or agents or members of their households. |
| 69 | "Trailers" In Your Possession Under A Written Trailer Or Equipment Interchange Agreement | Only those "trailers" you do not own while in your possession under a written "trailer" or equipment interchange agreement in which you assume liability for "loss" to the "trailers" while in your possession. |

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 8 of 56

| Symbol | | Description Of Covered Auto Designation Symbols |
|--------|--|------------------------------------------------|
| 70 | Your Trailers In The Possession Of Anyone Else Under A Written Trailer Interchange Agreement | Only those "trailers" you own or hire while in the possession of anyone else under a written "trailer" interchange agreement. When Symbol 70 is entered next to a Physical Damage Coverage in Item Two of the Declarations, the Physical Damage Coverage exclusion relating to "loss" to a "trailer" in the possession of anyone else does not apply to that coverage. |
| 71 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "private passenger" type "autos" owned by your "employees" or partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |
| 79 | "Mobile Equipment" Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are and vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |

B. Owned Autos You Acquire After The Policy Begins

1. If Symbols 61, 62, 63, 64, 65, 66 or 79 are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol 67 is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

SECTION II - COVERED AUTOS LIABILITY COVERAGE

A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

Copyright, Insurance Services Office, Inc., 2011 CA 00 20 10 13

We will have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. Who Is An Insured

   The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      (1) The owner or any "employee", agent or driver of the owner, or anyone else from whom you hire or borrow a covered "auto".

      (2) Your "employee" or agent if the covered "auto" is owned by that "employee" or agent or a member of his or her household.

      (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

      (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

      (5) A partner (if you are a partnership), or member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

   c. The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected, is being used exclusively in your business.

   d. The lessor of a covered "auto" that is not a "trailer" or any "employee", agent or driver of the lessor while the "auto" is leased to you under a written agreement if the written agreement between the lessor and you

does not require the lessor to hold you harmless and then only when the leased "auto" is used in your business as a "motor carrier" for hire.

   e. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

   However, none of the following is an "insured":

   (1) Any "motor carrier" for hire or his or her agents or "employees", other than you and your "employees":

      (a) If the "motor carrier" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.

      (b) If the "motor carrier" is not insured for hired "autos" under an "auto" liability insurance form that insures on a primary basis the owners of the "autos" and their agents and "employees" while the "autos" are leased to that "motor carrier" and used in his or her business.

      However, Paragraph (1) above does not apply if you have leased an "auto" to the for-hire "motor carrier" under a written lease agreement in which you have held that "motor carrier" harmless.

   (2) Any rail, water or air carrier or its "employees" or agents, other than you and your "employees", for a "trailer" if "bodily injury" or "property damage" or a "covered pollution cost or expense" occurs while the "trailer" is detached from a covered "auto" you are using and:

      (a) Is being transported by the carrier; or

      (b) Is being loaded on or unloaded from any unit of transportation by the carrier.

2. Coverage Extensions

   a. Supplementary Payments

      We will pay for the "insured":

      (1) All expenses we incur.

      (2) Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

PAGE 10 of 56
2018-CH-04484
4/6/2018 11:37 AM
ELECTRONICALLY FILED

(3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

(5) All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

b. Out-of-state Coverage Extensions

While a covered "auto" is away from the state where it is licensed, we will:

(1) Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limit specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing "motor carriers" of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of "loss" because of these extensions.

B. Exclusions

This insurance does not apply to any of the following:

1. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

2. Contractual

Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:

a. Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

b. That the "insured" would have in the absence of the contract or agreement.

3. Workers' Compensation

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

4. Employee Indemnification And Employer's Liability

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to the conduct of the "insured's" business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. Fellow Employee

"Bodily injury" to:

a. Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

Copyright, Insurance Services Office, Inc., 2011    CA 00 20 10 13

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 11 of 56

b. The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph a. above.

6. Care, Custody Or Control

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

7. Handling Of Property

"Bodily injury" or "property damage" resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

8. Movement Of Property By Mechanical Device

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

9. Operations

"Bodily injury" or "property damage" arising out of the operation of:

a. Any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment"; or

b. Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

10. Completed Operations

"Bodily injury" or "property damage" arising out of "your work" after that work has been completed or abandoned.

In the exclusion, your work means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph a. or b. above.

Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed;

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

11. Pollution

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Copyright, Insurance Services Office, Inc., 2011

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 12 of 56

Paragraph 2. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto" and

(b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

12. War

"Bodily injury" or "property damage" arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

13. Racing

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

C. Limit Of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

SECTION III - TRAILER INTERCHANGE COVERAGE

A. Coverage

1. We will pay all sums you legally must pay as damages because of "loss" to a "trailer" you don't own or its equipment under:

a. Comprehensive Coverage

From any cause except:

(1) The "trailer's" collision with another object; or

(2) The "trailer's" overturn.

b. Specified Causes Of Loss Coverage

Caused by:

(1) Fire, lightning or explosion;

(2) Theft;

(3) Windstorm, hail or earthquake;

(4) Flood;

(5) Mischief or vandalism; or

(6) The sinking, burning, collision or derailment of any conveyance transporting the "trailer".

c. Collision Coverage

Caused by:

(1) The "trailer's" collision with another object; or

(2) The "trailer's" overturn.

 Copyright, Insurance Services Office, Inc., 2011 CA DS 20 10 13

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 13 of 56

2. We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

3. **Coverage Extensions**

   The following apply as Supplementary Payments. We will pay for you:

   a. All expenses we incur.

   b. The cost of bonds to release attachment, but only for bond amounts within our Limit of Insurance.

   c. All reasonable expenses incurred at our request, including actual loss of earnings up to $250 a day because of time off from work.

   d. All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

   e. All interest on the full amount of any judgment that accrues after entry of the judgment; but our duty to pay interest ends when we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

   These payments will not reduce the Limit of Insurance.

**B. Exclusions**

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   a. Nuclear Hazard

      (1) The explosion of any weapon employing atomic fission or fusion; or

      (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

   b. War Or Military Action

      (1) War, including undeclared or civil war;

      (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

      (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending any of these.

2. We will not pay for loss of use.

3. Other Exclusions

   We will not pay for "loss" due and confined to:

   a. Wear and tear, freezing, mechanical or electrical breakdown.

   b. Blowouts, punctures or other road damage to tires.

   This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

**C. Limits Of Insurance**

The most we will pay for "loss" to any one "trailer" is the least of the following amounts:

1. The actual cash value of the damaged or stolen property at the time of the "loss";

2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality; or

3. The Limit Of Insurance shown in the Declarations

**D. Deductible**

For each covered "trailer", our obligation to pay.

1. The actual cash value of the damaged or stolen property at the time of the "loss" will be reduced by the applicable deductible shown in the Declarations

2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality will be reduced by the applicable deductible shown in the Declarations.

3. The damages for "loss" that would otherwise be payable will be reduced by the applicable deductible shown in the Declarations prior to the application of the Limit Of Insurance shown in the Declarations

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 14 of 56

## SECTION IV - PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   a. Comprehensive Coverage

   From any cause except:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

   b. Specified Causes Of Loss Coverage

   Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft;

   (3) Windstorm, hail or earthquake;

   (4) Flood;

   (5) Mischief or vandalism; or

   (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   c. Collision Coverage

   Caused by:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

2. Towing - Private Passenger Type Autos

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the "private passenger type" is disabled. However, the labor must be performed at the place of disablement.

3. Glass Breakage - Hitting A Bird Or Animal - Falling Objects Or Missiles

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. Coverage Extension

   a. Transportation Expenses

   We will also pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the "private passenger type". We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

   b. Loss Of Use Expenses

   For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

   (1) Other than collision only if the Declarations indicates that Comprehensive Coverage is provided for any covered "auto";

   (2) Specified Causes Of Loss only if the Declarations indicates that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

   (3) Collision only if the Declarations indicates that Collision Coverage is provided for any covered "auto".

   However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

### B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   a. Nuclear Hazard

   (1) The explosion of any weapon employing atomic fission or fusion, or

   (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

Copyright Insurance Services Office, Inc., 2011

CA 00 20 10 13

b. War Or Military Action

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any of the following:

a. Any covered "auto" while in anyone else's possession under a written "trailer" interchange agreement. But this exclusion does not apply to a loss payee, however if we pay the loss payee, you must reimburse us for our payment.

b. Any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

c. Tapes, records, discs or similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

d. Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

e. Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

f. Any accessories used with the electronic equipment described in Paragraph e. above.

3. Exclusions 2.e. and 2.f. do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

a. Permanently installed in or upon the covered "auto";

b. Removable from a housing unit which is permanently installed in or upon the covered "auto";

c. An integral part of the same unit housing any electronic equipment described in Paragraphs a. and b. above; or

d. Necessary for the normal operation of the "auto" or the monitoring of the "auto's" operating system.

4. We will not pay for "loss" due and confined to:

a. Wear and tear, freezing, mechanical or electrical breakdown.

b. Blowouts, punctures or other road damage to tires.

This exclusion does not apply to "loss" resulting from the total theft of a covered "auto".

5. We will not pay for "loss" to a covered "auto" due to "diminution in value".

C. Limits Of Insurance

1. The most we will pay for:

a. "Loss" to any one covered "auto" is the lesser of:

(1) The actual cash value of the damaged or stolen property as of the time of the "loss"; or

(2) The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

b. All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

(1) Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

(2) Removable from a permanently installed housing unit as described in Paragraph b.(1) above; or

(3) An integral part of such equipment as described in Paragraphs b.(1) and b.(2) above.

2. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

3. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

Copyright, Insurance Services Office, Inc., 2011

PAGE 16 of 56
2018-CH-04484
4/6/2018 11:37 AM
ELECTRONICALLY FILED

D. Deductible

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

SECTION V - MOTOR CARRIER CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

A. Loss Conditions

1. Appraisal For Physical Damage Loss

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

2. Duties In The Event Of Accident, Claim, Suit Or Loss

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties.

a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

b. Additionally, you and any other involved "insured" must:

(1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost

(2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

(4) Authorize us to obtain medical records or other pertinent information

(5) Submit to examination at our expense, by physicians of our choice, as often as we reasonably require.

c. If there is a "loss" to a covered "auto" or its equipment, you must also do the following:

(1) Promptly notify the police if the covered "auto" or any of its equipment is stolen

(2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

(3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

(4) Agree to examination under oath at our request and give us a signed statement of your answers.

3. Legal Action Against Us

No one may bring a legal action against us under this Coverage Form until:

a. There has been full compliance with all the terms of this Coverage Form; and

b. Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

4. Loss Payment - Physical Damage Coverages

At our option, we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

 Copyright, Insurance Services Office, Inc., 2011 CA 00 20 10 13

PAGE 17 of 56
2018-CH-04484
4/6/2018 11:37 AM
ELECTRONICALLY FILED

if we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

2. Transfer Of Rights Of Recovery Against Others To Us

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

B. General Conditions

1. Bankruptcy

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligation under this Coverage Form.

2. Concealment, Misrepresentation Or Fraud

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

a. This Coverage Form;
b. The covered "auto";
c. Your interest in the covered "auto"; or
d. A claim under this Coverage Form.

3. Liberalization

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

4. No Benefit To Bailee - Physical Damage Coverages

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

5. Other Insurance – Primary And Excess Insurance Provisions

a. While any covered "auto" is hired or borrowed from you by another "motor carrier", this Coverage Form's Covered Autos Liability Coverage is:

(1) Primary if a written agreement between you as the lessor and the other "motor carrier" as the lessee requires you to hold the lessee harmless

(2) Excess over any other collectible insurance if a written agreement between you as the lessor and the other "motor carrier" as the lessee does not require you to hold the lessee harmless.

b. While any covered "auto" is hired or borrowed by you from another "motor carrier", this Coverage Form's Covered Autos Liability Coverage is:

(1) Primary if a written agreement between the other "motor carrier" as the lessor and you as the lessee does not require the lessor to hold you harmless, and then only while the covered "auto" is used exclusively in your business as a "motor carrier" for hire.

(2) Excess over any other collectible insurance if a written agreement between the other "motor carrier" as the lessor and you as the lessee requires the lessor to hold you harmless.

c. While a covered "auto" which is a "trailer" is connected to a power unit, this Coverage Form's Covered Autos Liability Coverage is:

(1) Provided on the same basis, either primary or excess, as the Covered Autos Liability Coverage provided for the power unit if the power unit is a covered "auto".

(2) Excess if the power unit is not a covered "auto".

d. Any Trailer Interchange Coverage provided by this Coverage Form is primary for any covered "auto".

e. Except as provided in Paragraphs a., b., c. and d., above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.

f. For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

g. Regardless of the provisions of Paragraphs a., b., c., d. and e. above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

---

CA 00 20 10 13      Copyright, Insurance Services Office, Inc., 2011     

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 18 of 56

b. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

6. **Premium Audit**

   a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

   b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

7. **Policy Period, Coverage Territory**

   Under this Coverage Form, we cover "accidents" and "losses" occurring:

   a. During the policy period shown in the Declarations; and

   b. Within the coverage territory.

   The coverage territory is:

   (1) The United States of America;

   (2) The territories and possessions of the United States of America;

   (3) Puerto Rico;

   (4) Canada; and

   (5) Anywhere in the world if a covered "auto" of the "private passenger type" is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

   provided that the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada, or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

8. **Two Or More Coverage Forms Or Policies Issued By Us**

   If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION VI – DEFINITIONS

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means:

   1. A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

   2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

   1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Copyright, Insurance Services Office, Inc., 2011 CA 00 20 10 13

ELECTRONICALLY FILED
4/9/2018 11:37 AM
2018-CH-04484
PAGE 19 of 56

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge dispersal, seepage, migration, release or escape of "pollutants";

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph 6.b. or 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto", if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

E. "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

F. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

G. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

H. "Insured contract" means

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

6. That part of any other contract or agreement, entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

PAGE 20 of 56
2018-CH-04484
4/9/2018 11:37 AM
ELECTRONICALLY FILED

b. That pertains to the loan, lease or rental of an "auto" to you or any of your employees, if the "auto" is loaned, leased or rented with a driver; or

c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" unless the covered "auto" is used in your business as a "motor carrier" for hire as in Section II, Paragraph A.4.d. of the Who Is An Insured provision.

I. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

J. "Loss" means direct and accidental loss or damage.

K. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. Power cranes, shovels, loaders, diggers or drills; or

   b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in Paragraph 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

   b. Cherry pickers and similar devices used to raise or lower workers; or

6. Vehicles not described in Paragraph 1., 2., 3. or 4. above, maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   a. Equipment designed primarily for:

      (1) Snow removal;

      (2) Road maintenance, but not construction or resurfacing; or

      (3) Street cleaning;

   b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

L. "Motor carrier" means a person or organization providing transportation by "auto" in the furtherance of a commercial enterprise.

M. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

N. "Private passenger type" means a private passenger or station wagon type "auto" and includes an "auto" of the pickup or van type if not used for business purposes.

O. "Property damage" means damage to or loss of use of tangible property.

P. "Suit" means a civil proceeding in which:

1. Damages because of "bodily injury" or "property damage"; or

Copyright, Insurance Services Office, Inc., 2011

CA 00 20 10 13

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 21 of 56

L00097807083041718.

2. A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" submits with our consent.

Q. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

R. "Trailer" includes a semitrailer or a dolly used to convert a semitrailer into a trailer. But for Trailer Interchange Coverage only, "trailer" also includes a container.

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 22 of 56

POLICY NUMBER: 6-0036780+

COMMERCIAL AUTO
CA 04 44 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US (WAIVER OF SUBROGATION)

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.
This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

Named Insured: ANACTION TRANSPORTATION, INC.

Endorsement Effective Date: 10/01/2016

## SCHEDULE

Name(s) Of Person(s) Or Organization(s):
UNITED STATES STEEL CORPORATION AND ITS AFFILIATES, INCLUDING ALL UNITS, DIVISIONS
AND SUBSIDIARIES
1350 PENN AVENUE, SUITE 200, PITTSBURG, PA 15222
PER FLAT CHARGE

Information required to complete this Schedule, if not shown above, will be shown in the Declarations

The Transfer Of Rights Of Recovery Against Others To Us condition does not apply to the person(s) or organization(s) shown in the Schedule, but only to the extent that subrogation is waived prior to the "accident" or the "loss" under a contract with that person or organization.

CA 04 44 10 13

Copyright, Insurance Services Office, Inc., 2011

Page 1 of 1
0004452013.tap

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 23 of 56

POLICY NUMBER:  UFC00575C1

COMMERCIAL AUTO
CA 20 48 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DESIGNATED INSURED FOR
# COVERED AUTOS LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement identifies person(s) or organization(s) who are "insureds" for Covered Autos Liability Coverage under the Who Is An Insured provision of the Coverage Form. This endorsement does not alter coverage provided in the Coverage Form.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

Named Insured:  AAACTION TRANSPORTATION, INC.

Endorsement Effective Date:  10/01/2015

SCHEDULE

Name Of Person(s) Or Organization(s):
ANY PERSON OR ORGANIZATION FROM YOU ARE REQUIRED TO ADD AS AN ADDITIONAL INSURED UNDER WRITTEN CONTRACT, WRITTEN AGREEMENT, OR WRITTEN PERMIT CURRENTLY IN EFFECT OR BECOMING EFFECTIVE DURING THE TERM OF THE POLICY AND EXECUTED PRIOR TO THE "BODILY INJURY" OR "PROPERTY DAMAGE"

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Each person or organization shown in the Schedule is an "insured" for Covered Autos Liability Coverage, but only to the extent that person or organization qualifies as an "insured" under the Who Is An Insured provision contained in Paragraph A.1. of Section II – Covered Autos Liability Coverage in the Business Auto and Motor Carrier Coverage Forms and Paragraph D.2. of Section I – Covered Autos Coverages of the Auto Dealers Coverage Form.

CA 20 48 10 13

Copyright, Insurance Services Office, Inc., 2011
INSURED

Page 1 of 1
ca2048101?a.tap

POLICY NUMBER: LF03C02501

COMMERCIAL AUTO
CA 99 28 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# STATED AMOUNT INSURANCE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

Named Insured:  ANACTION TRANSPORTATION, INC.

Endorsement Effective Date:  10/01/20_6

SCHEDULE

The insurance provided by this endorsement is reduced by the following deductible(s):

| Vehicle Number | Coverage | Limit Of Insurance And Deductible | | Premium |
|---|---|---|---|---|
| SEE UT-234 | SEE UT-234 | $ SEE UT-234 | Limit Of Insurance | $ |
| | | $ | Deductible | |
| | | $ | Limit Of Insurance | $ |
| | | $ | Deductible | |
| | | $ | Limit Of Insurance | $ |
| | | $ | Deductible | |
| | | | Total Premium | $ |

NOTE:

The amount shown in the Schedule or in the Declarations is not necessarily the amount you will receive at the time of "loss" for the described property. Please refer to the Limits Of Insurance and Deductible provisions which follow.

Designation Or Description Of Covered "Autos"

| Vehicle Number | Model Year | Trade Name And Model |
|---|---|---|
| SEE UT-234 | SEE UT-234 | SEE UT-234 |
| | | |
| | | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Copyright, Insurance Services Office, Inc., 2011
INSURED

ELECTRONICALLY FILED
4/9/2018 11:37 AM
2018-CH-04484
PAGE 25 of 56

A. This endorsement provides only those coverages where a premium is shown in the Schedule. Each of these coverages applies only to the vehicles shown as covered "autos".

B. For a covered "auto" described in the Schedule, Physical Damage Coverage - Limits Of Insurance is replaced by the following:

Limits Of Insurance

1. The most we will pay for any one "loss" to any one covered "auto" is the least of the following amounts:

   a. The actual cash value of the damaged or stolen property as of the time of the "loss";

   b. The cost of repairing or replacing the damaged or stolen property with property of like kind and quality; or

   c. The Limit Of Insurance shown in the Schedule.

2. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

3. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

C. Deductible

1. For each covered "auto", our obligation to pay.

   a. The actual cash value of the damaged or stolen property as of the time of the "loss" will be reduced by the applicable deductible shown in the Schedule;

   b. The cost of repairing or replacing the damaged or stolen property with property of like kind and quality will be reduced by the applicable deductible shown in the Schedule; or

   c. The damages for "loss" that would otherwise be payable will be reduced by the applicable deductible shown in the Schedule prior to the application of the Limit Of Insurance shown in the Schedule.

2. Any Comprehensive Coverage Deductible shown in the Schedule does not apply to "loss" caused by fire or lightning.

Copyright, Insurance Services Office, Inc., 2011

CA 99 28 10 13

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 26 of 56

COMMERCIAL AUTO
CA 99.48 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLLUTION LIABILITY - BROADENED COVERAGE FOR COVERED AUTOS - BUSINESS AUTO AND MOTOR CARRIER COVERAGE FORMS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement the provisions of the Coverage Form apply unless modified by the endorsement.

A. Covered Autos Liability Coverage is changed as follows:

1. Paragraph a. of the Pollution Exclusion applies only to liability assumed under a contract or agreement.

2. With respect to the coverage afforded by Paragraph A.1, above, Exclusion B.6. Care, Custody Or Control does not apply.

B. Changes in Definitions

For the purposes of this endorsement, Paragraph D. of the Definitions Section is replaced by the following:

D. "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration release or escape of "pollutants".

a. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

b. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraphs a. and b. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

Copyright Insurance Services Office, Inc., 2011

Page 1 of 1

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 27 of 56

# National Casualty Company

ENDORSEMENT
NO.

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| MP30009567 | 10/01/2015 | ABACTION TRANSPORTATION, INC. | 19019 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## SINGLE AUTO PHYSICAL DAMAGE AND CARGO DEDUCTIBLE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
MOTOR TRUCK CARGO COVERAGE FORM

Subsection D. Deductible of the PHYSICAL DAMAGE COVERAGE section of the BUSINESS AUTO COVERAGE FORM and the MOTOR CARRIER COVERAGE FORM is replaced by:

D    Deductible

Our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to 'loss' caused by fire or lightning.

Application of the deductible, whichever applies, will be as follows:

1.   The deductible amount will apply to each covered "auto" when not attached to another at the time of "loss."

2.   The single highest deductible amount for any of such covered "autos" will apply if a "loss" applies to more than one covered "auto" when each covered "auto" are attached to one another at the time of the "loss."

3.   If you have a "loss" in any one occurrence that applies to both "auto" Physical Damage and Cargo, the deductible that will apply to the "loss" is the single highest applicable covered "auto" Physical Damage deductible or Cargo deductible. This applies while the covered property is in or on one or more "vehicles" at one or more "terminal" locations or any combination of "vehicles" or "terminal" locations.

The following is added to Section D. Deductible of the MOTOR TRUCK CARGO COVERAGE FORM:

If a loss applies to covered property in or on one or more "autos" at one or more terminal locations or any combination of "autos" or terminal locations and a "loss" also applies to one or more covered "autos", then the single highest applicable covered "auto" Physical Damage deductible or Cargo deductible amount will apply to the loss.

With respect to this endorsement, the terms 'auto(s)" or "loss" refer to the definitions found in the Business Auto Coverage Form, Motor Carrier Coverage Form or the Motor Truck Cargo Coverage Form.

AUTHORIZED REPRESENTATIVE                                             DATE

CA-024 (10-13)                                    Page 1 of 1
                                                  INSURED

PAGE 28 of 56
2018-CH-04484
4/9/2018 11:37 AM
ELECTRONICALLY FILED

# National Casualty Company

| ATTACHED TO AND FORM NO. & PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAME OF INSURED | AGENT NO. |
|---|---|---|---|
| LPC8087507 | 15/01/2515 | AAACTION TRANSPORTATION, INC. | 13012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL COVERAGES ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
TRUCKERS COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

Under PHYSICAL DAMAGE COVERAGE, subsection A. Coverage, paragraph 4, Coverage Extensions, the following are added:

### Down-Time Loss Expense Coverage

We will pay "down-time loss expense" as a result of a covered "auto" being repaired for an extended period of time due to a covered "loss" up to a combined maximum limit of $100 a day for a maximum of thirty-five (35) days or until the repairs are completed, whichever comes first. We will pay only for those covered "autos" for which you carry Comprehensive or Specified Causes of Loss and Collision Coverage, subject to the following terms and conditions:

1. We will pay for "down-time loss expense" beginning on the sixth (6th) day after:

   a. The covered "auto" is out of service for repair because of a covered "loss" and the covered "auto" is in the custody of a repair facility; and

   b. We have given approval for repairs to the covered "auto"; and

   c. You have given the repair facility the approval to repair the covered "auto."

2. "Down-time loss expense" will end when any of the following occur:

   a. You have a spare or reserve "auto" available to you to continue your operations;

   b. You purchase a replacement "auto";

   c. Repairs to the covered "auto" have been completed by the repair facility and the repair facility has determined the covered "auto" is road-worthy;

   d. The maximum limit of "down-time loss expense" coverage has been met;

   e. Theft of a covered "auto"; or

   f. A total "loss" or "constructive total loss" to a covered "auto" is declared by us.

3. "Down-time loss expense" means actual loss of "business income" for the period of time that a covered "auto":

   a. Is out of service for repair or replacement as a result of a covered "loss"; and

   b. Is in the custody of a repair facility if not a total "loss."

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1998

CA-128 (9-14)

Page 1 of 3
INSURED

ELECTRONICALLY FILED
4/9/2018 11:37 AM
2018-CH-04484
PAGE 29 of 56

4. "Business income" means:

   a. Net income (net profit or loss before income taxes) that would have been earned or incurred; and

   b. Continuing normal operating expenses incurred, including payroll.

**Electronic Equipment Coverage**

We will extend the Collision Coverage for "loss" to "electronic equipment" provided the "electronic equipment" is not already covered under the policy. This coverage is subject to a $100 Deductible per "loss" in lieu of any other Collision Deductible shown in the policy. The most we will pay for "loss" to "electronic equipment" is $5,000.

"Electronic equipment" means electronic devices or computer systems, facsimile machines, satellite communication or tracking systems, video camera monitoring systems, collision prevention systems, cellular phones, two-way mobile radios or scanning monitor receivers owned by the "insured" to be used in an "auto."

**Loan Or Lease Gap Coverage**

Subject to the stated Limit shown in the Declarations, in the event of a total "loss" to a covered "auto" for which a "finance agreement" exists and the actual cash value at cost of repair or stated amount shown in the Declarations is equal to or greater than the outstanding financial obligation in the "finance agreement," the most we will pay for a total "loss" is the greater of:

   a. The outstanding financial obligation under a "finance agreement" for a covered "auto" at the time of loss; or

   b. The actual cash value of the covered "auto" at the time of loss.

However, at the time of the total "loss" we will not pay any:

1. Overdue "finance agreement" payments including any type of late fees or penalties;

2. Financial penalties imposed under a lease for excessive use, abnormal wear and tear or high mileage;

3. Security deposits not refunded by the lessor;

4. Costs for extended warranties, Credit Life Insurance, Health, Accident or Disability Insurance purchased with the loan or lease;

5. Carry-over balances from previous loans or leases; or

6. Unpaid principal incurred in the outstanding "finance agreement" balance that was not used by you to purchase the covered "auto."

As used in this endorsement, "finance agreement" means a written lease or loan contract entered into as part of your business, pertaining to the lease or purchase by you of a covered "auto," and subject to a valid promissory note or a written payment obligation contained in a lease, and security agreement or other written agreement establishing a security interest, executed concurrently with the purchase or lease of the covered "auto."

**Personal Effects Coverage**

We will pay for "loss" to "personal effects" of the "insured" while within a covered "auto" subject to a maximum limit of $2,500 per "loss," less any Comprehensive or Collision Deductible shown in the Declarations, whichever Coverage Deductible is applicable for that covered "auto." However, we will only apply one Deductible if there is "loss" to both "personal effects" and the covered "auto" caused by the same "accident."

This extension of coverage does not apply:

1. Unless Comprehensive or Specified Causes Of Loss Coverage and Collision Physical Damage Coverage is shown in the Declarations as coverage; or

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1998

ELECTRONICALLY FILED
4/9/2018 11:37 AM
2018-CH-04484
PAGE 30 of 56

2. To "loss" caused by theft, unless there are visible signs or marks of forcible entry into the covered "auto".

"Personal effects" means personal property owned or worn by you.

However, the following items are not "personal effects":

 a. "Electronic equipment";

 b. Contraband or property in the course of illegal transportation or trade;

 c. Records or accounts, currency, coins, deeds, banknotes, bullion, evidences of debt, securities, tickets, stamps, manuscripts or commercial paper or other documents of value;

 d. Furs or fur garments, jewelry, watches, precious or semi-precious stones; or

 e. Live animals.

Towing Coverage

In addition to the Limit Of Insurance, we will pay the reasonable cost to recover a covered "auto" as a result of a covered "loss" and tow the covered "auto" to the nearest facility capable of making the necessary repairs. Covered "auto" does not mean an "auto" of the private passenger type.

Windshield Coverage

We will pay under Comprehensive Coverage for the cost of repairing the damaged windshield on your covered "auto" without a deductible. We will only pay if the Declarations indicates Comprehensive Coverage applies.

With respect to this endorsement, under PHYSICAL DAMAGE COVERAGE, subsection 9. Deductible, the following is added:

Diminishing Deductible

For each consecutive Policy Period that you purchase the Special Coverage Endorsement and you do not have a paid Physical Damage "loss" under this endorsement with us, the Deductible shown in the Declarations for each Physical Damage Coverage will be reduced by the percentage for the applicable Year shown in the table below of this endorsement.

| No. of "Loss" Free Years with the Special Coverages Endorsement | Deductible Percentage Reduction |
|---|---|
| One | 0% |
| Two | 25% |
| Three | 50% |
| Four | 75% |
| Five or more | 100% |

If we pay a Physical Damage "loss" during any Policy Period under this endorsement, the Deductible shown in the Declarations will not be reduced for any subsequent "loss" during the remainder of the Policy Period, and the Deductible Percentage Reduction will revert back to Year One Deductible Percentage Reduction or zero percent (0%) if this coverage endorsement is renewed.

With respect to this endorsement, the term repair(s) does not mean replaced or replacing.

AUTHORIZED REPRESENTATIVE   DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 1998

PAGE 31 of 56
2018-CH-04484
4/6/2018 11:37 AM
ELECTRONICALLY FILED

## National Casualty Company

**ENDORSEMENT NO.**

| ATTACHING TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO |
|---|---|---|---|
| CPC0001507 | 10/01/2015 | ARACT OF TRANSPORTATION, INC. | 13012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

### HYDRAULIC FRACTURING EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
AUTO DEALERS COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. The following exclusion is added to Paragraph B. Exclusions of Section II - Covered Autos Liability Coverage in the Business Auto and Motor Carrier Coverage Forms and Paragraph 4. Exclusions of Section D. Covered Autos Liability Coverage in the Auto Dealers Coverage Form:

Hydraulic Fracturing

This insurance does not apply to:

1. "Bodily injury," "property damage" or "covered pollution" cost or expense"

   a. "Arising," in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in geologic formations to facilitate the release and extraction of hydrocarbons, including but not limited to oil or natural gas. Such operations include but are not limited to "hydraulic fracturing," "gas fracking" and/ or the actual, alleged, threatened or suspected contact with, exposure to, existence of or presence of any "flowback" or the handling, transporting, storage, release or disposal of any "flowback" by any "insured" or by any other person or entity; or

   b. Caused, directly or indirectly or in whole or in part, by any operation involving substances under pressure used for pumping underground with the objective of creating fractures in geologic formations to facilitate the release and extraction of hydrocarbons, including but not limited to oil or natural gas. Such operations include, but are not limited to, "hydraulic fracturing," "gas fracking" and/ or the actual, alleged, threatened or suspected contact with, exposure to, existence of or presence of any "flowback" or the handling, transporting, storage, release or disposal of any "flowback" by any "insured" or by any other person or entity, that are, or that are contained in any property that is:

      (a) Being transported or towed by, handled or handled for movement into, onto or from, the covered "auto";

      (b) Otherwise in the course of transit by any "insured" or by any other person or entity; or

      (c) Being stored, disposed of, treated or processed in or upon the covered "auto."

CA 141 (10 13)  
Page 1 of 2  
INSURED

PAGE 32 of 56
2018-CH-04484
4/6/2018 11:37 AM
ELECTRONICALLY FILED

2. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, remediating, disposing of, or in any way responding to or assessing the effects of "hydraulic fracturing," "gas fracking" or "flowback" by any "insured" or by any other person or entity.

We will have no duty to settle any claim or defend any "suit" against the "insured" arising out of or in any way related to items 1. or 2. above.

B. With respect to this endorsement, the following additional definitions apply:

1. "Hydraulic fracturing" or hydro-fracking means the process by which water, "proppants" chemicals and/ or other fluid additives are injected at high pressure into underground geologic formations to create fractures to facilitate the extraction of any hydrocarbons including but not limited to natural gas and/ or oil.

2. "Flowback" means any substance containing returned "hydraulic fracturing" fluid, including but not limited to water, "proppants," "hydraulic fracturing" fluid additives, and, any hydrocarbon components, salts, conventional pollutants, organics, metals, and naturally occurring radioactive material brought to the surface with the water.

3. "Gas fracking" or liquefied propane/ butane gas fracturing means the waterless process by which propane gel and "proppants" are injected at high pressure into geologic formations to create fractures, to facilitate the release and extraction of natural gas.

4. "Proppant" means particles that are used to keep fractures open after a "hydraulic fracturing" treatment.

AUTHORIZED REPRESENTATIVE     DATE

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 33 of 56

OMB No. 2125-0005
Expiration Date: 06/15/2013

U.S. Department of Transportation
Federal Motor Carrier
Safety Administration

**ENDORSEMENT FOR MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980**

Issued to ____ QUARTION TRANSPORTATION, INC. ____ of PORTAGE, IN 46368

Dated at ____ CARMEL, IN ____ the ____ 5TH ____ day of ____ OCTOBER ____, 20 15

Amending Policy No. ____ LFC0002207 ____ Effective Date ____ 10/01/2015

Name of Insurance Company ____ NATIONAL CASUALTY COMPANY

Countersigned by _____

Authorized Company Representative

The policy to which this endorsement is attached provides primary or excess insurance, as indicated by "[X]", for the limits shown:

[X] This insurance is primary and the company shall not be liable for amounts in excess of $ 1,000,000 for each accident.

[ ] This insurance is excess and the company shall not be liable for amounts in excess of $ _____ for each accident in excess of the underlying limit of $ _____ for each accident.

Whenever required by the Federal Motor Carrier Safety Administration (FMCSA) the company agrees to furnish the FMCSA a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FMCSA, to verify that the policy is in force as of a particular date. The telephone number to call is: (800) 423 7675

Cancellation of this endorsement may be effected by the company by giving (1) thirty-five (35) days notice in writing to the other party (such 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the FMCSA's registration requirements under 49 U.S.C. 13901, by providing thirty (30) days notice to the FMCSA (said 30 days notice to commence from the date the notice is received by the FMCSA at its office in Washington, D.C.).

**DEFINITIONS AS USED IN THIS ENDORSEMENT**

Accident includes continuous or repeated exposure to conditions which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

Motor Vehicle means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

Bodily Injury means injury to the body, sickness, or disease to any person, including death resulting from any of these.

Property Damage means damage to or loss of use of tangible property.

Environmental Restoration means restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

Public Liability means liability for bodily injury, property damage, and environmental restoration.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other

environmental restoration, or to an insured, even in the case of the company from liability for bodily injury or property damage sustained by anyone, shall relieve the company from liability for fault of the insured and prevent the institution or maintenance of a suit or action on this policy within the time limits provided by law. The company is not entitled to the protection of any defense, other than those set forth in this endorsement, which the company might otherwise make against the insured. Nothing contained in the policy shall operate to make available to the insured the defense of any suit, any portion of the penalty or fine that may be imposed on the insured. The liability of the company extends to such amounts as the company may be required to pay under the law of any State in which the insured may be required to pay and apportion such amounts among several claimants. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

The liability of the company for the amounts prescribed in this endorsement shall apply irrespective of whether or not all policies of insurance applicable to the accident are available or collectible. However, the company shall be entitled to recover from the insured any amount paid by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

IT IS FURTHER UNDERSTOOD AND AGREED THAT, UPON CERTIFICATION, THIS ENDORSEMENT MAY BE USED TO FULFILL THE FINANCIAL RESPONSIBILITY REQUIREMENTS OF 49 CFR 387. The insured agrees to reimburse the company for any such payment made by the company.

Form MCS-90 (page 1 of 2)

MC 1822q (1-11) Wolters Kluwer Financial Services Uniform Form™ INSURED

mc-1822q-11_.zup

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 34 of 56

L00097807096041718

## SCHEDULE OF LIMITS—PUBLIC LIABILITY

| Type of Cargo | Commodity Transported | Jan. 1, 1985 |
|---|---|---|
| (1) For hire motor carriers of property (nonhazardous) in interstate or foreign commerce. (In any vehicle) | Property (nonhazardous) | $750,000 |
| (2) For hire and private carriers of hazardous substances, oil, or hazardous commodities in any vehicle (in vehicles under 10,000 lbs. in any quantity) | Hazardous substances as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks or hopper-type vehicles with capacities in excess of 3,500 water gallons, or bulk shipments of ... in packages having a capacity in excess of 110 gallons ... Class A, or Class B ... Group I, Poison Gas ... Division 1.1, 1.2, or 1.3 ... radioactive materials ... as defined in 49 CFR 173.403 | $5,000,000 |
| (3) For hire and private carriers of oil or hazardous substances (in vehicles over 10,000 lbs.) | Oil listed in 49 CFR 172.101; hazardous waste, hazardous materials and hazardous substances defined in 49 CFR 171.8 ... as described in 49 CFR 172.101, but not mentioned in paragraph (4) above | $1,000,000 |
| (4) For hire or private (in interstate or foreign commerce, with a gross vehicle weight of less than 10,000 pounds). | Any quantity of Division 1.1, 1.2, or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403 | $5,000,000 |

Form MCS-90 (page 2 of 2)

MCS90Zq (11-11)

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 35 of 56

COMMERCIAL AUTO
CA 01 19 10 13

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INDIANA CHANGES

For a covered "auto" licensed in, or "auto dealer operations" conducted in, Indiana, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement or to any amendment to or replacement thereof, the provisions of the Coverage Form apply unless modified by the endorsement.

**Changes In Conditions**

A. Except as provided in Paragraph B. of this endorsement, Other Insurance in the Auto Dealers and Business Auto Coverage Forms and Other Insurance - Primary And Excess Insurance Provisions in the Motor Carrier Coverage Form are changed by adding the following and supersedes any provision to the contrary:

If there is other applicable Insurance available under one or more policies or provisions of coverage, any insurance we provide for any covered "auto" owned by an "insured" is primary and shall first be exhausted.

B. Other Insurance in the Auto Dealers and Business Auto Coverage Forms and Other Insurance - Primary and Excess Insurance Provisions in the Motor Carrier Coverage Form are changed by adding the following:

1. When two Coverage Forms providing liability coverage apply to an "auto" and:

   a. One provides coverage to a named "insured" engaged in the business of selling, repairing, servicing, delivering, testing, road testing, parking or storing "autos"; and

   b. The other provides coverage to a person not engaged in that business; and

   c. At the time of an "accident" a person described in 1.a. is operating an "auto" owned by the business described in 1.a., then that person's liability coverage is primary and the Coverage Form issued to a business described in 1.a. is excess over any coverage available to that person.

2. When two Coverage Forms providing liability coverage apply to an "auto" and:

   a. One provides coverage to a named insured engaged in the business of repairing, servicing, parking or storing "autos"; and

   b. The other provides coverage to a person not engaged in that business; and

   c. At the time of an "accident" an "insured" under the Coverage Form described in 2.a. is operating an "auto" owned by a person described in 2.b., then the liability Coverage Form issued to the business described in 2.a. is primary and the Coverage Form issued to a person described in 2.b. is excess over any coverage available to the business.

Copyright, Insurance Services Office, Inc., 2012
INSURED

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 36 of 56

Case: 1:18-cv-03369 Document #: 1-1 Filed: 05/11/18 Page 100 of 181 PageID #:105
L00097807098041418

COMMERCIAL AUTO
CA 04 33 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INDIANA CHANGES - POLLUTION EXCLUSION

For a covered "auto" licensed in, or "garage operations" conducted in, Indiana, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement or to any amendment to or replacement thereof, the provisions of the Coverage Form apply unless modified by the endorsement.

A. **Changes In Covered Autos Liability Coverage**

The following is added to the Pollution Exclusion:

This Pollution Exclusion applies whether or not such irritant or contaminant has any function in your business, operations, premises, site or location.

B. **Changes In General Liability Coverages**

With respect to the Auto Dealers Coverage Form:

1. The following is added to Exclusion 2.f. Pollution of Paragraph A. Bodily Injury And Property Damage Liability:

This Pollution Exclusion applies whether or not such irritant or contaminant has any function in your business, operations, premises, site or location.

2. The following is added to Exclusion 2.l. Pollution of Paragraph B. Personal And Advertising Injury Liability:

This Pollution Exclusion applies whether or not such irritant or contaminant has any function in your business, operations, premises, site or location.

CA 04 33 10 13      Copyright, Insurance Services Office, Inc., 2012      Page 1 of 1
INSURED

POLICY NUMBER: 1C0002507

COMMERCIAL AUTO
CA 21 44 08 14

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INDIANA UNINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Indiana, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

Named Insured: REACTIVE TRANSPORTATION, INC.

Endorsement Effective Date: 10/01/2015

## SCHEDULE

| "Bodily Injury": | $ | 50,000 | Each "Accident" |
|---|---|---|---|
| "Bodily Injury" And "Property Damage": | $ | | Each "Accident" |
| Section C - Exclusions applies in its entirety unless an "X" is entered below: | | | |
| ☐ If an "X" is entered in this box, Exclusion 8. does not apply. | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | |

### A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damage must result from:

    a. "Bodily injury" sustained by the "insured" and caused by an "accident" with an "uninsured motor vehicle"; or

    b. "Property damage" caused by an "accident" with an "uninsured motor vehicle" if the Schedule or Declarations indicates that both "bodily injury" and "property damage" Uninsured Motorists Insurance apply.

   The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

### B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

    a. The Named Insured and any "family members".

    b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

    c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

PAGE 38 of 56
2018-CH-04484
4/6/2018 11:37 AM
ELECTRONICALLY FILED

2. A partnership, limited liability company corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

   c. The Named Insured for "property damage" only.

C. Exclusions

This insurance does not apply to:

1. Any claim settled without our consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. The direct or indirect benefit of any insurer of property.

4. "Bodily injury" if sustained by:

   a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" under this Coverage Form; or

   b. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured on a primary basis under any other Coverage Form or policy.

5. "Property damage" to an "auto" or its property contained in an "auto" owned by the Named Insured which is not a covered "auto".

6. Any "insured" using a vehicle without a reasonable belief that the "insured" is entitled to do so.

7. "Property damage" for which the "insured" has been or is entitled to be compensated by other property or physical damage insurance.

8. The first $300 of the amount of "property damage" to the property of each "insured" as the result of any one "accident". This exclusion does not apply if the Named Insured's covered "auto" is legally parked and unoccupied when involved in an "accident" with an "uninsured motor vehicle".

9. "Property damage" caused by a hit-and-run vehicle.

10. Punitive or exemplary damages.

11. "Bodily injury" or "property damage" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit shown in this endorsement.

2. The Limit of Insurance under this coverage shall be reduced by all sums paid or payable by or for anyone who is legally responsible, including all sums paid under this Coverage Form's Covered Autos Liability Coverage.

3. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form or Medical Payments Coverage endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

4. We will not pay for a loss which is paid or payable under Physical Damage Coverage.

5. No "insured" shall recover duplicate payments for the same elements of loss or payments in excess of damages sustained.

Copyright, Insurance Services Office, Inc., 2014

CA 21 44 08 14

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 39 of 56

E.  Changes in Conditions

The Conditions are changed for Uninsured Motorists Coverage as follows:

1.  Other Insurance in the Auto Dealers and Business Auto Coverage Forms and Other Insurance – Primary And Excess Insurance Provisions in the Motor Carrier Coverage Form are replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage, the following priorities of coverage apply:

| First Priority | The Uninsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident". |
|---|---|
| Second Priority | Any other Coverage Form or policy affording Uninsured Motorists Coverage to the "insured". |

a.  The limit of insurance under the vehicle the "insured" was "occupying" under the Coverage Form or policy in the first priority shall first be exhausted.

b.  The maximum recovery for damages under all Coverage Forms or policies may equal but shall not exceed the highest applicable limit of any one vehicle under any insurance providing coverage on either a first or second priority basis.

c.  We will pay only our share of the "loss". Our share is the proportion that our limit of liability bears to the total of all limits applicable to the same level of priority.

2.  The Legal Action Against Us provision is replaced by the following:

Legal Action Against Us

a.  No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form.

b.  Any legal action against us under this Coverage Form must be brought within two years after the date of the "accident". However, this Paragraph 2.b. does not apply to an "insured" if, within two years after the date of the "accident", we and the "insured" agree to arbitration in accordance with this endorsement.

3.  Transfer Of Rights Of Recovery Against Others To Us is changed by adding the following:

a.  If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

b.  If we make a payment because the insurer of the "uninsured motor vehicle" is or becomes insolvent, the Transfer Of Rights Of Recovery Against Others To Us Condition does not apply to any rights of recovery against:

(1)  The Indiana Guaranty Fund; or

(2)  The "insured" of the insolvent insurer, except in amounts that exceed the limit of liability of the Coverage Form or policy that was issued by that insolvent insurer.

4.  The following condition is added:

Arbitration

a.  If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that is recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b.  Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

(1)  Whether the "insured" is legally entitled to recover damages; and

PAGE 40 of 56
2018-CH-04484
4/6/2018 11:37 AM
ELECTRONICALLY FILED

(2) The amount of damages. This applies only if the amount does not exceed the minimum limit for liability specified by the financial responsibility law of Indiana. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

F. Additional Definitions

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Property damage" means damage to a covered "auto" or to property owned by the Named Insured or, if the Named Insured is an individual, a "family member" while contained in a covered "auto". However, "property damage" does not include loss of use of damaged or destroyed property. This definition replaces the definition in the Policy.

4. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the financial responsibility law of Indiana; or

b. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

c. Which is a hit-and-run vehicle and neither the driver nor owner can be identified. A hit-and-run vehicle is one that causes "bodily injury" to an "insured" by hitting the "insured", a covered "auto" or a vehicle an "insured" is "occupying".

However "uninsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

b. Owned by a governmental unit or agency; or

c. Designed for use mainly off public roads while not on public roads.

Copyright, Insurance Services Office, Inc., 2014

CA 21 44 09 14

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 41 of 56

POLICY NUMBER: 1F00002527

COMMERCIAL AUTO
CA 21 16 08 14

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INDIANA UNDERINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Indiana this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

Named Insured: ANACTION TRANSPORTATION, INC.

Endorsement Effective Date: 10/01/2015

## SCHEDULE

| Limit Of Insurance:  $  50,000 | Each "Accident" |
|---|---|

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A  Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle". The damage must result from "bodily injury" sustained by the "insured" and caused by an "accident" with an "underinsured motor vehicle".

   The owner's or driver's liability for this damage must result from the ownership, maintenance or use of the "underinsured motor vehicle".

2. We will pay under this coverage only if Paragraph a. or b. below applies:

   a. The limits of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

   b. A tentative settlement has been made between an "insured" and the insurer of an "underinsured motor vehicle" which would exhaust the limits of liability under any applicable bond or policy, and we:

      (1) Have been given prompt written notice of such tentative settlement; and

      (2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after the receipt of notification.

**B.  Who Is An Insured**

If the Named Insured is designated in the Declarations:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

Copyright, Insurance Services Office, Inc., 2014

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 42 of 56

b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto" The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

    a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

    b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

C. Exclusions

This insurance does not apply to:

1. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

2. The direct or indirect benefit of any insurer of property.

3. "Bodily injury" if sustained by:

    a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" under this Coverage Form; or

    b. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is "insured" on a primary basis under any other Coverage Form or policy.

4. Any "insured" using a vehicle without a reasonable belief that the "insured" is entitled to do so.

5. Punitive or exemplary damages.

6. "Bodily injury" arising directly or indirectly out of:

    a. War, including undeclared or civil war;

    b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit shown in this endorsement.

2. The Limit of Insurance under this coverage shall be reduced by all sums paid or payable by or for anyone who is legally responsible, including all sums paid under this Coverage Form's Covered Autos Liability Coverage.

3. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form or Medical Payments Coverage endorsement attached to this Coverage Part.

    We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

    We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

4. No "insured" shall recover duplicate payments for the same elements of "loss" or payments in excess of damages sustained.

E. Changes In Conditions

The Conditions are changed for Underinsured Motorists Coverage as follows:

1. Other Insurance in the Auto Dealers and Business Auto Coverage Forms and Other Insurance - Primary And Excess Insurance Provisions in the Motor Carrier Coverage Form are replaced by the following:

    If there is other applicable insurance available under one or more policies or provisions of coverage, the following priorities of coverage apply:

| First Priority | The Underinsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident". |
| Second Priority | Any other Coverage Form or policy affording Underinsured Motorists Coverage to the "insured". |

Copyright, Insurance Services Office, Inc., 2014

CA 21 16 03 14

PAGE 43 of 56
2018-CH-04484
4/6/2018 11:37 AM
ELECTRONICALLY FILED

a. The Limit of Insurance under the vehicle the "insured" was "occupying" under the Coverage Form or policy in the first priority "slip" first be exhausted.

b. The maximum recovery for damages under all Coverage Forms or policies may equal but shall not exceed the highest applicable limit of any one vehicle under any insurance providing coverage on either a first or second priority basis.

c. We will pay only our share of the "loss". Our share is the proportion that our limit of liability bears to the total of all limits applicable to the same level of priority.

2. The Legal Action Against Us provision is replaced by the following:

Legal Action Against Us

a. No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form.

b. Any legal action against us under this Coverage Form must be brought within two years after the date of the "accident". However, this Paragraph 2.b. does not apply if, within two years after the date of the "accident":

(1) We and the "insured" agree to arbitration in accordance with this endorsement; or

(2) The "insured" has filed an action for "bodily injury" against the owner or operator of the "underinsured motor vehicle", and such action is:

(a) Filed in a court of competent jurisdiction; and

(b) Not barred by the applicable state statute of limitations.

In the event that the two-year time limitation identified in this condition does not apply, the applicable state statute of limitations will govern legal action against us under this Coverage Form.

3. Duties In The Event Of Accident, Claim, Suit Or Loss in the Business Auto and Motor Carrier Coverage Forms and Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions in the Auto Dealers Coverage Form are changed by adding the following:

a. Promptly send us copies of the legal papers if a "suit" is brought.

b. A person seeking Underinsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of the "underinsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

4. Transfer Of Rights Of Recovery Against Others To Us is changed by adding the following:

a. If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

b. Our rights do not apply under this provision if we:

(1) Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of the "underinsured motor vehicle"; and

(2) Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of such notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after notification:

(a) That payment will be separate from any amount the "insured" is entitled to recover under the provisions of this coverage; and

(b) We also have the right to recover the advanced payment from the insurer or the owner or operator of the "underinsured motor vehicle".

c. If we make a payment because the insurer of the "underinsured motor vehicle" is or becomes insolvent, the Transfer Of Rights Of Recovery Against Others To Us Condition does not apply to any rights of recovery against:

(1) The Indiana Guaranty Fund, or

(2) The "insured" of the insolvent insurer, except in amounts that exceed the limit of liability of the Coverage Form or policy that was issued by that insolvent insurer.

PAGE 44 of 56
2018-CH-04484
4/6/2018 11:37 AM
ELECTRONICALLY FILED

6. The following condition is added:

Arbitration

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

(1) Whether the "insured" is legally entitled to recover damages; and

(2) The amount of damages. This applies only if the amount does not exceed the minimum limit for liability specified by the financial responsibility law of Indiana. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

F. Additional Definitions

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Underinsured motor vehicle" means a land motor vehicle or "trailer" for which the sum of all liability bonds or policies at the time of an "accident" provides at least the amounts required by the financial responsibility law of Indiana but their limits are either:

a. Less than the limit of liability for this coverage; or

b. Reduced by payments to others injured in the "accident" to an amount which is less than the limit of liability for this coverage.

However, "underinsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law.

b. Owned by a governmental unit or agency.

c. Designed for use mainly off public roads while not on public roads.

     Copyright, Insurance Services Office, Inc., 2014     CA 21 16 08 14

PAGE 45 of 56
2018-CH-04484
4/6/2018 11:37 AM
ELECTRONICALLY FILED

COMMERCIAL GENERAL LIABILITY
CG 01 28 03 97

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INDIANA CHANGES - POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Subparagraph f., Pollution of Paragraph 2., Exclusions of Bodily Injury And Property Damage Liability Coverage (Section I - Coverages) and to Paragraph 2., Exclusions of Personal And Advertising Injury Liability Coverage (Section I - Coverages) or to any amendment to or replacement thereof:

This Pollution Exclusion applies whether or not such irritant or contaminant has any function in your business, operations, premises, site or location.

CG 01 28 03 97            Copyright, Insurance Services Office, Inc., 1996            Page 1 of 1
                               CA INSURED

COMMERCIAL INLAND MARINE
CM 01 39 08 00

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INDIANA CHANGES - RIGHTS OF RECOVERY

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART

Loss Condition J. Transfer Of Rights Of Recovery Against Others To Us in the Commercial Inland Marine Conditions is replaced by the following:

J. Transfer Of Rights Of Recovery Against Others To Us

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. Our right to recover damages from another may be enforced even if the person or organization to or for whom we make payment has not been fully compensated for damages.

The person or organization to or for whom we make payment must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property.

2. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance; or

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you.

This will not restrict your insurance.

CM 01 39 08 00

Copyright, Insurance Services Office, Inc., 1999
INSURED

Page 1 of 1

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 47 of 56

IL 01 17 12 10

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INDIANA CHANGES - WORKERS' COMPENSATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM LIABILITY COVERAGE FORM
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. For insurance provided under the:

Commercial General Liability Coverage Part
Commercial Liability Umbrella Coverage Part
Employment-Related Practices Liability
Coverage Part
Liquor Liability Coverage Part
Medical Professional Liability Coverage Part
Owners And Contractors Protective Liability
Coverage Part
Pollution Liability Coverage Part
Products/Completed Operations Liability
Coverage Part
Railroad Protective Liability Coverage Part
Underground Storage Tank Policy

The following is added to the Workers' Compensation And Similar Laws Exclusion:

This exclusion also applies to any obligation of the Insured under the Indiana Workers' Compensation statutes arising out of the failure of the insured to exact from a contractor (or subcontractor if the insured is a contractor) a certificate from the workers' compensation board showing that the contractor (or subcontractor) has complied with the applicable workers' compensation insurance requirements.

B. For insurance provided under the Commercial Automobile Coverage Part, the following is added to the Workers' Compensation Exclusion:

This exclusion also applies to any obligation of the "insured" under the Indiana Workers' Compensation statutes arising out of the failure of the "insured" to exact from a contractor (or subcontractor if the "insured" is a contractor) a certificate from the workers' compensation board showing that the contractor (or subcontractor) has complied with the applicable workers' compensation insurance requirements.

C. For insurance provided under the Farm Liability Coverage Form and Farm Umbrella Liability Policy, the following is added to the Workers' Compensation Or Similar Law Exclusion:

This exclusion also applies to any obligation of the "insured" under the Indiana Workers' Compensation statutes arising out of the failure of the "insured" to exact from a contractor (or subcontractor if the "insured" is a contractor) a certificate from the workers' compensation board showing that the contractor (or subcontractor) has complied with the applicable workers' compensation insurance requirements.

Copyright, Insurance Services Office, Inc., 2010
INSURED

ELECTRONICALLY FILED
4/9/2018 11:37 AM
2018-CH-04484
PAGE 48 of 56

IL 01 56 09 07

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INDIANA CHANGES - CONCEALMENT, MISREPRESENTATION OR FRAUD

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART

The CONCEALMENT, MISREPRESENTATION OR FRAUD Condition is replaced by the following:

CONCEALMENT, MISREPRESENTATION OR FRAUD

We will not pay for any loss or damage in any case of:

1. Concealment or misrepresentation of a material fact or

2. Fraud

committed by an insured at any time and relating to a claim under this policy.

Copyright, ISO Properties, Inc. 2006

INSURER

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 49 of 56

IL 01 58 09 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INDIANA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY - LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY - MORTGAGEHOLDERS ERRORS AND OMISSIONS
COVERAGE FORM*
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

\* Under the Mortgageholders Errors And Omissions Coverage Form, the following condition applies only to Coverage C and Coverage D.

The following condition is added:

Notice given by or on behalf of the insured to any of our authorized agents in Indiana, with particulars sufficient to identify the insured, shall be considered to be notice to us.

Copyright, ISO Properties, Inc., 2007
INSURED

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 50 of 56

IL 02 72 09 07

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INDIANA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph 2. of the Cancellation Common Policy Condition is replaced by the following:

2. Cancellation Of Policies In Effect

a. 90 Days Or Less

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

(2) 20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

(3) 30 days before the effective date of cancellation if we cancel for any other reason.

b. More Than 90 Days

If this policy has been in effect for more than 90 days, or is a renewal of a policy we issued, we may cancel this policy, only for one or more of the reasons listed below, by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

(2) 20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

(3) 45 days before the effective date of cancellation if:

(a) There has been a substantial change in the scale of risk covered by this policy;

(b) Reinsurance of the risk associated with this policy has been cancelled; or

(c) You have failed to comply with reasonable safety recommendations.

IL 02 72 09 07

Copyright, ISO Properties, Inc., 2006
INSTRAS

Page 1 of 2

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 51 of 56

B. The following is added to the Common Policy Conditions and supersedes any provision to the contrary.

NONRENEWAL

1. If we elect not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal at least 45 days before:

   a. The expiration date of this policy, if the policy is written for a term of one year or less; or

   b. The anniversary date of this policy, if the policy is written for a term of more than one year.

2. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

Copyright, ISO Properties, Inc., 2006

IL 02 72 09 07

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 52 of 56

L00097807114041718



# SCOTTSDALE INSURANCE COMPANY®

## National Casualty Company

### Scottsdale Indemnity Company

**SCOTTSDALE**

## CLAIM REPORTING
## INFORMATION

Your insurance policy has been placed with the Scottsdale Insurance Group, a subsidiary of the Nationwide Insurance Company. The Scottsdale Insurance Group is a reliable, service-oriented group of companies that will help protect you against certain losses.

Our commitment to you is to provide fast, fair claim service. Promptly reporting an event that could lead to a claim, as required by your policy, helps us fulfill this commitment to you. Please refer to your policy for this and all other terms and conditions

To report a claim, you may contact the Scottsdale Insurance Group 24 hours a day, 7 days a week, by calling 1-800-423-7675 or via our Web site at www.scottsdaleins.com

Thank you for your business and as always, we appreciate the opportunity to serve you.

| HOW TO REPORT A CLAIM |
|---|
| Call 1-800-423-7675 or visit our Web site at www.scottsdaleins.com |
| In order to expedite this process, please be prepared to furnish as much of the following information as possible: |
| • Your policy number |
| • Date, time and location of the loss/ accident |
| • Details of the loss/ accident |
| • Name, address and phone number of any involved parties |
| • If applicable, name of law enforcement agency or fire department along with the incident number |
| Please refer to your policy for specific claim reporting requirements. |

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 53 of 56



# SCOTTSDALE INSURANCE COMPANY®

### National Casualty Company

### Scottsdale Indemnity Company

## SCOTTSDALE
SCOTTSDALE INSURANCE COMPANY

## POLICYHOLDER DISCLOSURE

### NOTICE OF TERRORISM INSURANCE COVERAGE

TERRORISM RISK INSURANCE ACT

Under the Terrorism Risk Insurance Act of 2002, as amended pursuant to the Terrorism Risk Insurance Program Reauthorization Act of 2015, effective January 1, 2015 (the "Act"), you have a right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act. The term "certified acts of terrorism" means any act that is certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that where coverage is provided by this policy for losses resulting from "certified acts of terrorism," such losses may be partially reimbursed by the United States Government under a formula established by federal law. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government agrees to reimburse eighty-five percent (85%) of covered terrorism losses in calendar year 2015 that exceed the statutorily established deductible paid by the insurance company providing the coverage. This percentage of United States Government reimbursement decreases by one percent (1%) every calendar year beginning in 2016 until it equals eighty percent (80%) in 2020.

You should also know that the Act, as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from "certified acts of terrorism" when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

CONDITIONAL TERRORISM COVERAGE

The federal Terrorism Risk Insurance Program Reauthorization Act of 2015 is scheduled to terminate at the end of December 31, 2020, unless renewed, extended or otherwise continued by the federal government. Should you select Terrorism Coverage provided under the Act and the Act is terminated December 31, 2020, any terrorism coverage as defined by the Act provided in the policy will also terminate

HO1X0567CW (4-15)                    INSURED

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 54 of 56

POLICY NUMBER: LF04302507

ILN 120 10 05

# INDIANA NOTICE TO POLICYHOLDERS
# REGARDING FILING COMPLAINTS WITH
# THE DEPARTMENT OF INSURANCE

Questions regarding your policy or coverage should be directed to

Company Name:
   NATIONAL CASUALTY COMPANY

Contact Number:
   (800) 423-7675

If you:

(a) Need the assistance of the governmental agency that regulates insurance; or

(b) Have a complaint you have been unable to resolve with your insurer;

you may contact the Department of Insurance by mail, telephone or E-mail

State of Indiana Department of Insurance

Consumer Services Division

311 West Washington Street, Suite 300

Indianapolis, Indiana 46204

Consumer Hotline: (800) 622-4461; (317) 232-2395

Complaints can be filed electronically at www.in.gov/idoi.

Copyright, ISO Properties, Inc., 2005
INSURED

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 55 of 56

# National Casualty Company

## COMMERCIAL AUTO COVERAGE
## MOTOR CARRIER COVERAGE FORM SUPPLEMENTAL DECLARATIONS (continued)

Policy No.: LJ COE07607                    Effective Date: 10/01/2015
                                                       12:01 A.M. Standard Time

Named Insured: AAKSTION TRANSPORTATION, INC.      Agent No.: 13212

### Item 2. - Schedule of Coverages and Covered Autos (continued)

| Coverages | Covered Autos | Limit<br>The Most We Will Pay for Any One Accident or Less | Premium |
|---|---|---|---|
| Physical Damage Towing and Labor | NONE | $ NOT COV'D for each disablement of a private passenger "auto." | $ NOT COV'D |
| Form(s) and endorsement(s) applying to this coverage form and made a part of this policy at the time of issue<br>See Schedule of Forms and Endorsements. | | Premium for Endorsements | $ |
| | | Estimated Total Premium (This policy may be subject to final audit.) | $      82,368 |

### Item 3. - Schedule of Covered Autos You Own

See Schedule of Covered Autos You Own.

### Item 4. - Schedule of Hired or Borrowed Covered Auto Coverage and Premiums.

Covered Autos Liability Coverage - Cost of Hire Rating Basis for "Autos" used in your Motor Carrier Operations Or Farm Equipment)

| State | Estimated Annual Cost of Hire (Primary) | Rate Per Each $100 Cost of Hire (Primary) | Estimated Annual Cost of Hire (Excess) | Rate Per Each $100 Cost of Hire (Excess) | Premium |
|---|---|---|---|---|---|
| TN | $  IF ANY | $  7.454 | $  IF ANY | $  0.832 | $  INCLUDED |
| | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ |
| | | | | Total Hired Auto Premium | $ |

For "autos" used in your motor carrier operations, cost of hire means:

1. The total dollar amount of costs you incurred for the hire of automobiles (includes "trailers" and "semitrailers") and if not included therein:

2. The total remuneration of all operators and drivers' helpers of hired automobiles whether hired with a driver by lessor or an "employee" of the lessee, or any other third party, and

3. The total dollar amount of any other costs (e.g., repair, maintenance, fuel, etc.) directly associated with operating the hired automobiles whether such costs are absorbed by the "insured," paid to the lessor or owner, or paid to others.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2009

PAGE 56 of 56
2018-CH-04484
4/6/2018 11:37 AM
ELECTRONICALLY FILED

L00097807118041718

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
CALENDAR: 10
PAGE 1 of 29
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN


**ACUITY**
Mutual Insurance Company

COMMERCIAL AUTO
COVERAGE PART

### Business Auto Amended Declarations

First Named Insured and Address:

KINGSBURY ACRES GREENHOUSE INC
C/O BILL CHRISTAKES
20801 S LA GRANGE RD
FRANKFORT IL 60423

Agency Name and Number:

SHANAHAN INSURANCE AGENCY INC
8071-AL

Policy Number: X93151

Policy Period: | Effective Date: | 04-15-16
| Expiration Date: | 04-15-17
| 12:01 A.M. Standard time at your mailing address shown in the declarations

In return for the payment of the premium and subject to all the terms of the policy, we agree to provide the insurance coverage as stated in the same.

Item Two
SCHEDULE OF COVERAGES AND COVERED AUTOS

Each of these coverages apply only to those *autos* shown as covered *autos* by the entry of one or more of the symbols from the Covered Autos section of the Business Auto Coverage Form next to the name of the coverage.

| Coverages | Covered Auto Symbols | Limit of Insurance | | Premium |
|---|---|---|---|---|
| Liability | 1 | $ 1,000,000 each *accident* | | $ 1,248.00 |
| Uninsured Motorists Bodily Injury | 7,8,9 | 1,000,000 each person | 1,000,000 each *accident* | 25.00 |
| Underinsured Motorists | 7,8,9 | 1,000,000 each person | 1,000,000 each *accident* | 61.00 |
| Comprehensive | 7,8 | Actual cash value, cost of repair or stated amount (if any), whichever is less, minus the deductible shown in Item Three for each covered *auto*. | | 159.00 |
| Collision | 7,8 | Actual cash value, cost of repair or stated amount (if any), whichever is less, minus the deductible shown in Item Three for each covered *auto*. | | 496.00 |
| Estimated Schedule Premium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | | | | 1,989.00 |

PREMIUM SUMMARY

Estimated Schedule Premium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 1,989.00

Estimated Endorsement Premium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100.00

Estimated Advance Premium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 2,089.00

COVERAGE FORMS AND ENDORSEMENTS APPLICABLE TO BUSINESS AUTO COVERAGE

| Form Number | Form Title | Premium |
|---|---|---|
| IL-0017F (11-98) | Common Policy Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | |
| IL-0021F (03-14) | Nuclear Energy Liability Exclusion – Broad Form . . . . . . . . . . . . . . . . . . . . . . | |
| IL-7012 (03-14) | Asbestos Exclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |


EXHIBIT
E

L000978071190417718

Page 2
Policy Number:      X93151
Effective Date:     04-15-16

| Form Number | Form Title | Premium |
|---|---|---|
| CA-7210 (10-98) | Additional Insured – Designated Person or Organization – Primary . . . . . . . | |
| CA-7100 (02-11) | End. for Motor Carrier Policies of Insurance for Public Liability Form MCS-90 | |
| CA-7018 (07-97) | Covered Auto Symbols Endorsement – Truckers . . . . . . . . . . . . . . . . . | |
| CA-7274 (10-13) | Motor Carrier Endorsement . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CA-7036 (08-14) | Indiana Uninsured and Underinsured Motorists Coverage . . . . . . . . . . . | |
| CA-7041 (10-12) | Indiana Changes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CA-9928F (03-10) | Stated Amount Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| IL-0156F (07-89) | Indiana Changes – Concealment, Misrepresentation or Fraud . . . . . . . . . | |
| IL-0158F (03-14) | Indiana Changes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| IL-7015 (03-14) | Indiana Changes – Cancellation and Nonrenewal . . . . . . . . . . . . . . . | |
| CA-0001F (10-14) | Business Auto Coverage Form . . . . . . . . . . . . . . . . . . . . . . . . | |
| CA-2384F (10-13) | Exclusion of Terrorism . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CA-7264 (10-12) | Indiana Changes – Amendment of Definition of Pollutants . . . . . . . . . . | |
| IL-0117R (12-10) | Indiana Changes – Workers' Compensation Exclusion . . . . . . . . . . . . . | |
| CA-7247 (11-15) | ACUITY Enhancements - Business Auto . . . . . . . . . . . . . . . . . . . . | 100.00 |
| CA-7027 (12-93) | Loss Payable Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CA-2001R (03-06) | Lessor – Additional Insured and Loss Payee . . . . . . . . . . . . . . . . | |

Estimated Endorsement Premium . . . . . . . . . . . . . . . . . . . . . . . . . $     100.00

Item Three:
SCHEDULE OF COVERAGES

| Unit No. | Model Year | Vehicle Description | Vehicle ID Number | PGS Comp | PGS Coll | Terr | Class Code |
|---|---|---|---|---|---|---|---|
| 001 | 08 | INTERNATIONAL 4000 SERIES 4300 | 1HTMMAAN18H558087 | 009 | 009 | 116 | 361DL |
| 002 | | HIRED AUTOS ($ 5,000 estimated cost of hire, as defined below) | | | | 116 | 500000 |
| 003 | | NONOWNED AUTOS (1 Employees) | | | | 116 | 600000 |

| Unit No. | Liability Limit | Liability BI Premium | Liability PD Premium | PD Deductible | Medical Payments Limit | Premium |
|---|---|---|---|---|---|---|
| 001 | 1,000,000 | 1,097.00 | Included | | | |
| 002 | 1,000,000 | 40.00 | Included | | | |
| 003 | 1,000,000 | 111.00 | Included | | | |

| Unit No. | Uninsured Motorists Limit | Premium | UMPD Deductible | Underinsured Motorists Limit | Premium |
|---|---|---|---|---|---|
| 001 | 1,000/1,000/0 | 10.00 | | 1,000/1,000 | 34.00 |
| 002 | 1,000/1,000/0 | 10.00 | | 1,000/1,000 | 10.00 |
| 003 | 1,000/1,000/0 | 5.00 | | 1,000/1,000 | 17.00 |

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 2 of 29

CA-7000 (2-12)                                                                    SO 01 01/31/18

Policy Number: X93151
Effective Date: 04-15-16

Page 3

| Unit No. | Comprehensive | | | Specified Causes of Loss | | | Full Glass |
| | Stated Amount | Deductible Amount | Premium Amount | Stated Amount | Deductible Amount | Premium Amount | |
|---|---|---|---|---|---|---|---|
| 001 | 31,184 | 500. | 135.00 | | | | |
| 002 | | 100 | 24.00 | | | | |
| 003 | | | | | | | |

| Unit No. | Stated Amount | Collision Deductible Amount | Premium Amount | Towing | | APC Discount | Safety Discount |
| | | | | Limit | Premium | | |
|---|---|---|---|---|---|---|---|
| 001 | 31,184 | 500 | 460.00 | | | | |
| 002 | | 500 | 36.00 | | | | |
| 003 | | | | | | | |

| Unit No. | Fleet No. | Premium Per Unit Number |
|---|---|---|
| 001 | | 1,736.00 |
| 002 | | 120.00 |
| 003 | | 133.00 |

Estimated Schedule Premium ................ $    1,989.00

* Cost of hire means the total amount you incur for the hire of *autos* you do not own (not including *autos* you borrow or rent from your partners or *employees* or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

* First number is thousands of bodily injury coverage each person; second number is thousands of bodily injury coverage each *accident*; third number (if any) is thousands of property damage coverage each *accident*.

ADDITIONAL NAMED INSUREDS.

WHO IS AN INSURED includes the following Additional Named Insureds.

NONE.

FIRST NAMED INSURED IS:

ORGANIZATION OTHER THAN PARTNERSHIP, JOINT VENTURE OR LIMITED LIABILITY COMPANY

CA-7000(2-12)

SO 01 01/31/18

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 4 of 29

IL00097807122041718

# BUSINESS AUTO COVERAGE FORM

## Index of Policy Provisions

| | Page | | | Page |
|---|---|---|---|---|
| SECTION I – COVERED AUTOS | 1 | SECTION III – PHYSICAL DAMAGE | | |
| Description of Covered Auto Designation | | COVERAGE | 5 | |
| Symbols | 1 | Coverage | 5 | |
| Owned Autos You Acquire After the Policy | | Exclusions | 6 | |
| Begins | 1 | Limit of Insurance | 6 | |
| Certain Trailers, Mobile Equipment and | | Deductible | 7 | |
| Temporary Substitute Autos | 2 | | | |
| | | SECTION IV – BUSINESS AUTO | | |
| | | CONDITIONS | 7 | |
| SECTION II - LIABILITY COVERAGE | 2 | Loss Conditions | 7 | |
| Coverage | 2 | General Conditions | 8 | |
| Exclusions | 3 | | | |
| Limit of Insurance | 5 | SECTION V - DEFINITIONS | 9 | |

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declara-

tions. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in italics have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERED AUTOS

Item Two of the Declarations shows the *autos* that are covered *autos* for each of your coverages. The following numerical symbols describe the *autos* that may be covered *autos*. The symbols entered next to a coverage on the Declarations designate the only *autos* that are covered *autos*.

**A. DESCRIPTION OF COVERED AUTO DESIGNATION SYMBOLS**

SYMBOL    DESCRIPTION

1 =    ANY *AUTO*.

2 =    OWNED *AUTOS* ONLY. Only those *autos* you own (and for Liability Coverage any *trailers* you do not own while attached to power units you own). This includes those *autos* you acquire ownership of after the policy begins.

3 =    OWNED PRIVATE PASSENGER *AUTOS* ONLY. Only the private passenger *autos* you own. This includes those private passenger *autos* you acquire ownership of after the policy begins.

4 =    OWNED *AUTOS* OTHER THAN PRIVATE PASSENGER *AUTOS* ONLY. Only those *autos* you own that are not of the private passenger type (and for Liability Coverage any *trailers* you do not own while attached to power units you own). This includes those *autos* not of the private passenger type you acquire ownership of after the policy begins.

5 =    OWNED *AUTOS* SUBJECT TO NO-FAULT. Only those *autos* you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those *autos* you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged.

6 =    OWNED *AUTOS* SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those *autos* you own that because of the law in the state where they are licensed or principally garaged, are required to have and cannot

not reject Uninsured Motorists Coverage. This includes those *autos* you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

7 =    SPECIFICALLY DESCRIBED *AUTOS*. Only those *autos* described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any *trailers* you do not own while attached to any power unit described in Item Three).

8 =    HIRED *AUTOS* ONLY. Only those *autos* you lease, hire, rent or borrow. This does not include any *auto* you lease, hire, rent or borrow from any of your *employees* or partners or members of their households.

9 =    NONOWNED *AUTOS* ONLY. Only those *autos* you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes *autos* owned by your *employees*, partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs.

19 =    MOBILE EQUIPMENT SUBJECT TO COMPULSORY OR FINANCIAL RESPONSIBILITY OR OTHER MOTOR VEHICLE INSURANCE LAW ONLY. Only those *autos* that are land vehicles and that would qualify under the definition of *mobile equipment* under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged.

**B. OWNED AUTOS YOU ACQUIRE AFTER THE POLICY BEGINS**

1.    If symbols 1, 2, 3, 4, 5, 6 or 19 are entered next to a coverage in Item Two of the Declarations, then you have coverage for *autos* that you acquire of the type described for the remainder of the policy period.

2.    But, if symbol 7 is entered next to a cov-

erage in Item Two of the Declarations, an *auto* you acquire will be a covered *auto* for that coverage only if:

    **a.** We already cover all *autos* that you own for that coverage or it replaces an *auto* you previously owned that had that coverage; and

    **b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. CERTAIN TRAILERS, MOBILE EQUIPMENT AND TEMPORARY SUBSTITUTE AUTOS**

If Liability Coverage is provided by this coverage form, the following types of vehicles are also covered *autos* for Liability Coverage:

**1.** *Trailers* with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

**2.** *Mobile equipment* while being carried or towed by a covered *auto*.

**3.** Any *auto* you do not own while used with the permission of its owner as a temporary substitute for a covered *auto* you own that is out of service because of its:

    **a.** Breakdown;

    **b.** Repair;

    **c.** Servicing;

    **d.** Loss; or

    **e.** Destruction.

## SECTION II - LIABILITY COVERAGE

**A. COVERAGE**

We will pay all sums an *insured* legally must pay as damages because of *bodily injury* or *property damage* to which this insurance applies, caused by an *accident* and resulting from the ownership, maintenance or use of a covered *auto*.

We will also pay all sums an *insured* legally must pay as a *covered pollution cost or expense* to which this insurance applies, caused by an *accident* and resulting from the ownership, maintenance or use of covered *autos*. However, we will only pay for the *covered pollution cost or expense* if there is either *bodily injury* or *property damage* to which this insurance applies that is caused by the same *accident*.

We have the right and duty to defend any *insured* against a *suit* asking for such damages or a *covered pollution cost or expense*. However, we have no duty to defend any *insured* against a *suit* seeking damages for *bodily injury* or *property damage* or a *covered pollution cost or expense* to which this insurance does not apply. We may investigate and settle any claim or *suit* as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who Is an Insured**

The following are *insureds*:

    **a.** You for any covered *auto*.

    **b.** Anyone else while using with your permission a covered *auto* you own, hire or borrow except:

        **(1)** The owner or anyone else from whom you hire or borrow a covered *auto*. This exception does not apply if the covered *auto* is a *trailer* connected to a covered *auto* you own.

        **(2)** Your *employee* if the covered *auto* is owned by that *employee* or a member of his or her household.

        **(3)** Someone using a covered *auto* while he or she is working in a business of selling, servicing, repairing, parking or storing *autos* unless that business is yours.

        **(4)** Anyone other than your *employees*, partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their *employees*, while moving property to or from a covered *auto*.

        **(5)** A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered *auto* owned by him or her or a member of his or her household.

    **c.** Anyone liable for the conduct of an *insured* described above but only to the extent of that liability.

**2. Coverage Extensions**

    **a. Supplementary Payments**

    We will pay for the *insured*:

        **(1)** All expenses we incur.

        **(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an *accident* we cover. We do not have to furnish these bonds.

        **(3)** The cost of bonds to release attachments in any *suit* against the *insured* we defend, but only for bond amounts within our Limit of Insurance.

        **(4)** All reasonable expenses incurred by the *insured* at our request, in-

cluding actual loss of earnings up to $250 a day because of time off from work.

(5) All court costs taxed against the *insured* in any *suit* against the *insured* we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the *insured*.

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any *suit* against the *insured* we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

b. **Out of State Coverage Extensions**

While a covered *auto* is away from the state where it is licensed we will:

(1) Increase the Limit of Insurance for Liability Coverage to meet the limit or limits specified by a compulsory or financial responsibility law in the jurisdiction where the covered *auto* is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property;

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out of state vehicles by the jurisdiction where the covered *auto* is being used.

We will not pay anyone more than once for the same elements of *loss* because of these extensions.

B. **EXCLUSIONS**

This insurance does not apply to any of the following:

1. **Expected or Intended Injury**

*Bodily injury* or *property damage* expected or intended from the standpoint of the *insured*.

2. **Contractual**

Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:

a. Assumed in a contract or agreement that is an *insured contract* provided the *bodily injury* or *property damage* occurs subsequent to the execution of the contract or agreement; or

b. That the *insured* would have in the absence of the contract or agreement.

3. **Workers' Compensation**

Any obligation for which the *insured* or the *insured's* insurer may be held liable under any workers' compensation law, disability benefits law or unemployment compensation law or any similar law.

4. **Employee Indemnification and Employer's Liability**

*Bodily injury* to:

a. An *employee* of the *insured* arising out of and in the course of:

(1) Employment by the *insured*; or

(2) Performing duties related to the conduct of the *insured's* business; or.

b. The spouse, child, parent, brother or sister of that *employee* as a consequence of paragraph a. above.

This exclusion applies:

a. Whether the *insured* may be liable as an employer or in any other capacity; and

b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to *bodily injury* to domestic *employees* not entitled to workers' compensation benefits or to liability assumed by the *insured* under an *insured contract*. For the purposes of the coverage form, a domestic *employee* is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. **Fellow Employee**

*Bodily injury* to:

a. Any fellow *employee* of the *insured* arising out of and in the course of the fellow *employee's* employment or while performing duties related to the conduct of your business; or

b. The spouse, child, parent, brother or sister of that fellow *employee* as a consequence of paragraph a. above.

6. **Care, Custody or Control**

*Property damage* to or covered *pollution cost or expense* involving property owned or transported by the *insured* or in the *insured's* care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

7. **Handling of Property**

*Bodily injury* or *property damage* resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the *insured* for movement into or onto the covered *auto*; or

b. After it is moved from the covered *auto* to the place where it is finally delivered by the *insured*.

**8. Movement of Property by Mechanical Device**

*Bodily injury* or *property damage* resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered *auto*.

**9. Operations**

*Bodily injury* or *property damage* arising out of the operation of:

a. Any equipment listed in paragraphs 6b and 6c of the definition of *mobile equipment*; or

b. Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of *mobile equipment* if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

*Bodily injury* or *property damage* arising out of *your work* after that work has been completed or abandoned.

In this exclusion, *your work* means:

a. Work or operations performed by *you* or on *your* behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

*Your work* includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in paragraphs a or b above.

*Your work* will be deemed completed at the earliest of the following times:

a. When all of the work called for in *your* contract has been completed.

b. When all of the work to be done at the site has been completed if *your* contract calls for work at more than one site.

c. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

*Bodily injury* or *property damage* arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of *pollutants*:

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered *auto*;

(2) Otherwise in the course of transit by or on behalf of the *insured*; or

(3) Being stored, disposed of, treated or processed in or upon the covered *auto*.

b. Before the *pollutants* or any property in which the *pollutants* are contained are moved from the place where they are accepted by the *insured* for movement into or onto the covered *auto*; or

c. After the *pollutants* or any property in which the *pollutants* are contained are moved from the covered *auto* to the place where they are finally delivered, disposed of or abandoned by the *insured*.

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar *pollutants* that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered *auto* or its parts, if:

(1) The *pollutants* escape, seep, migrate, or are discharged, dispersed or released directly from an *auto* part designed by its manufacturer to hold, store, receive or dispose of such *pollutants*; and

(2) The *bodily injury*, *property damage* or covered pollution cost or expense does not arise out of the operation of any equipment listed in paragraphs 6b and 6c of the definition of *mobile equipment*.

Paragraphs b. and c. above of this exclusion do not apply to *accidents* that occur away from premises owned by or rented to an *insured* with respect to *pollutants* not in or upon a covered *auto* if:

(1) The *pollutants* or any property in which the *pollutants* are contained are upset, overturned or damaged as a result of the maintenance or use of a covered *auto*; and

(2) The discharge, dispersal, seepage, migration, release or escape of the *pollutants* is caused directly by such upset, overturn or damage.

**12. War**

Bodily injury or property damage arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered autos while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered auto is being prepared for such a contest or activity.

**C. LIMIT OF INSURANCE**

Regardless of the number of covered autos, insureds, premiums paid, claims made or vehicles involved in the accident, the most we will pay for the total of all damages and covered pollution cost or expense combined, resulting from any one accident is the Limit of Insurance for Liability Coverage shown in the Declarations.

All bodily injury, property damage and covered pollution cost or expense resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one accident.

No one will be entitled to receive duplicate payments for the same elements of loss under this coverage form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III - PHYSICAL DAMAGE COVERAGE

**A. COVERAGE**

1. We will pay for loss to a covered auto or its equipment under:

   a. **Comprehensive Coverage**

      From any cause except:

      (1) The covered auto's collision with another object; or

      (2) The covered auto's overturn.

   b. **Specified Causes of Loss Coverage**

      Caused by:

      (1) Fire, lightning or explosion;

      (2) Theft;

      (3) Windstorm, hail or earthquake;

      (4) Flood;

      (5) Mischief or vandalism; or

      (6) The sinking, burning, collision or derailment of any conveyance transporting the covered auto.

   c. **Collision Coverage**

      Caused by:

      (1) The covered auto's collision with another object; or

      (2) The covered auto's overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered auto of the private passenger type is disabled. However, the labor must be performed at the

place of disablement.

3. **Glass Breakage - Hitting a Bird or Animal - Falling Objects or Missiles**

   If you carry Comprehensive Coverage for the damaged covered auto, we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. Loss caused by hitting a bird or animal; and

   c. Loss caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered auto's collision or overturn considered a loss under Collision Coverage.

4. **Coverage Extensions**

   a. **Transportation Expenses**

      We will also pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered auto of the private passenger type. We will pay only for those covered autos for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered auto is returned to use or we pay for its loss.

b. **Loss of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an *insured* becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

(1) Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered *auto*;

(2) Specified Causes of Loss only if the Declarations indicate that Specified Causes of Loss Coverage is provided for any covered *auto*; or

(3) Collision only if the Declarations indicate that Collision Coverage is provided for any covered *auto*.

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

## B. EXCLUSIONS

1. We will not pay for *loss* caused by or resulting from any of the following. Such *loss* is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the *loss*.

   a. Nuclear Hazard

   (1) The explosion of any weapon employing atomic fission or fusion; or

   (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

   b. War or Military Action

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for *loss* to any covered *auto* while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for *loss* to any covered *auto* while that covered *auto* is being prepared for such a contest or activity.

3. We will not pay for *loss* due and confined to:

   a. Wear and tear, freezing, mechanical or electrical breakdown.

   b. Blowouts, punctures or other road damage to tires.

   This exclusion does not apply to such *loss* resulting from the total theft of a covered *auto*.

4. We will not pay for *loss* to any of the following:

   a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   b. Any device designed or used to detect speed-measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed-measurement equipment.

   c. Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

   d. Any accessories used with the electronic equipment described in paragraph c above.

5. Exclusions 4c and 4d do not apply to equipment designed to be operated solely by use of the power from the *auto*'s electrical system that, at the time of *loss*, is:

   a. Permanently installed in or upon the covered *auto*;

   b. Removable from a housing unit which is permanently installed in or upon the covered *auto*;

   c. An integral part of the same unit housing any electronic equipment described in paragraphs a and b above; or

   d. Necessary for the normal operation of the covered *auto* or the monitoring of the covered *auto*'s operating system.

6. We will not pay for *loss* to a covered *auto* due to *diminution of value*.

## C. LIMIT OF INSURANCE

1. The most we will pay for *loss* in any one *accident* is the lesser of:

   a. The actual cash value of the damaged or stolen property as of the time of the *loss*; or

   b. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

2. $1,000 is the most we will pay for *loss* in any one *accident* to all electronic equipment that reproduces, receives or transmits audio, visual or data signals which, at the time of *loss*, is:

a. Permanently installed in or upon the covered auto in a housing, opening or other location that is not normally used by the auto manufacturer for the installation of such equipment;

b. Removable from a permanently installed housing unit as described in paragraph 2a above or is an integral part of that equipment; or

c. An integral part of such equipment.

3. An adjustment for depreciation and physical condition will be made in determining actual

cash value in the event of a total loss.

4. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

### D. DEDUCTIBLE

For each covered auto, our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to loss caused by fire or lightning.

## SECTION IV – BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

### A. LOSS CONDITIONS

1. **Appraisal for Physical Damage Loss.**

   If you and we disagree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

   If we submit to an appraisal, we will still retain our right to deny the claim.

2. **Duties in the Event of Accident, Claim, Suit or Loss.**

   We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

   a. In the event of accident, claim, suit or loss, you must give us or our authorized representative prompt notice of the accident or loss. Include:

      (1) How, when and where the accident or loss occurred;

      (2) The insured's name and address; and

      (3) To the extent possible, the names and addresses of any injured persons and witnesses.

   b. Additionally, you and any other involved insured must:

      (1) Assume no obligation, make no payment or incur no expense without our consent, except at the insured's own cost.

      (2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or suit.

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the suit.

      (4) Authorize us to obtain medical records or other pertinent information.

      (5) Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

   c. If there is loss to a covered auto or its equipment you must also do the following:

      (1) Promptly notify the police if the covered auto or any of its equipment is stolen.

      (2) Take all reasonable steps to protect the covered auto from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

      (3) Permit us to inspect the covered auto and records proving the loss before its repair or disposition.

      (4) Agree to examinations under oath at our request and give us a signed statement of your answers.

3. **Legal Action Against Us.**

   No one may bring a legal action against us under this coverage form until:

   a. There has been full compliance with all the terms of this coverage form; and

   b. Under Liability coverage, we agree in writing that the insured has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the insured's liability.

4. **Loss Payment - Physical Damage Coverages**

   At our option we may:

   a. Pay for, repair or replace damaged or stolen property;

   b. Return the stolen property at our expense. We will pay for any damage that results to the *auto* from the theft; or

   c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

   If we pay for the *loss*, our payment will include the applicable sales tax for the damaged or stolen property.

5. **Transfer of Rights of Recovery Against Others to Us**

   If any person or organization to or for whom we make payment under this coverage form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after *accident* or *loss* to impair them.

**B. GENERAL CONDITIONS**

1. **Bankruptcy**

   Bankruptcy or insolvency of the *insured* or the *insured's* estate will not relieve us of any obligations under this coverage form.

2. **Concealment, Misrepresentation or Fraud**

   This coverage form is void in any case of fraud by you at any time as it relates to this coverage form. It is also void if you or any other *insured*, at any time, intentionally conceal or misrepresent a material fact concerning:

   a. This coverage form;

   b. The covered *auto*;

   c. Your interest in the covered *auto*; or

   d. A claim under this coverage form.

3. **Liberalization**

   If we revise this coverage form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

4. **No Benefit to Bailee - Physical Damage Coverages**

   We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this coverage form.

5. **Other Insurance**

   a. For any covered *auto* you own, this coverage form provides primary insurance. For any covered *auto* you do not own, the insurance provided by this coverage form is excess over any other collectible insurance. However, while a covered *auto* which is a *trailer* is connected to another vehicle, the Liability Coverage this coverage form provides for the *trailer* is:

      (1) Excess while it is connected to a motor vehicle you do not own;

      (2) Primary while it is connected to a covered *auto* you own.

   b. For Hired Auto Physical Damage Coverage, any covered *auto* you lease, hire, rent or borrow is deemed to be a covered *auto* you own. However, any *auto* that is leased, hired, rented or borrowed with a driver is not a covered *auto*.

   c. Regardless of the provisions of paragraph a above, this coverage form's Liability Coverage is primary for any liability assumed under an *insured contract*.

   d. When this coverage form and any other coverage form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our coverage form bears to the total of the limits of all the coverage forms and policies covering on the same basis.

6. **Premium Audit**

   a. The estimated premium for this coverage form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the First Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the First Named Insured will get a refund.

   b. If this policy is issued for more than one year, the premium for this coverage form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

7. **Policy Period, Coverage Territory**

   a. Under this coverage form, we cover *accidents* and *losses* occurring:

      (1) During the policy period shown in the Declarations; and

2018-CH-04099
PAGE 13 of 20
4/6/2018 11:37 AM
ELECTRONICALLY FILED
CA-0001F(10-13)
Page 8 of 9 pages

(2) Within the coverage territory.

b. The coverage territory is:

(1) The United States of America;

(2) The territories and possessions of the United States of America;

(3) Puerto Rico;

(4) Canada; and

(5) Anywhere in the world if:

(a) A covered *auto* of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

(b) The *insured's* responsibility to pay damages is determined in a *suit* on the merits, in the United States of America, the territories and possessions of the United States of America,

Puerto Rico, or Canada or in a settlement we agree to.

c. We also cover *loss* to, or *accidents* involving, a covered *auto* while being transported between any of these places.

8. **Two or More Coverage Forms or Policies Issued by Us**

If this coverage form and any other coverage form or policy issued to you by us or any company affiliated with us applies to the same *accident*, the aggregate maximum Limit of Insurance under all the coverage forms or policies shall not exceed the highest applicable Limit of Insurance under any one coverage form or policy. This condition does not apply to any coverage form or policy issued by us or an affiliated company specifically to apply as excess insurance over this coverage form.

## SECTION V – DEFINITIONS

A. *"Accident"* includes continuous or repeated exposure to the same conditions resulting in *bodily injury* or *property damage*.

B. *"Auto"* means:

1. A land motor vehicle, *trailer* or semitrailer designed for travel on public roads; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, *auto* does not include *mobile equipment*.

C. *"Bodily injury"* means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

D. *"Covered pollution cost or expense"* means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any *insured* or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of *pollutants*; or

2. Any claim or *suit* by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of *pollutants*.

*Covered pollution cost or expense* does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of *pollutants*:

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from the covered *auto*;

(2) Otherwise in the course of transit by or on behalf of the *insured*; or

(3) Being stored, disposed of, treated or processed in or upon the covered *auto*;

b. Before the *pollutants* or any property in which the *pollutants* are contained are moved from the place where they are accepted by the *insured* for movement into or onto the covered *auto*; or

c. After the *pollutants* or any property in which the *pollutants* are contained are moved from the covered *auto* to the place where they finally are delivered, disposed of or abandoned by the *insured*.

Paragraph a above does not apply to fuels, lubricants, fluids, exhaust gases or other similar *pollutants* that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered *auto* or its parts, if:

(1) The *pollutants* escape, seep, migrate, or are discharged, dispersed or released directly from an *auto* part designed by its manufacturer to hold, store, receive or dispose of such *pollutants*; and

(2) The *bodily injury*, *property damage*

ELECTRONICALLY FILED

or covered pollution cost or expense does not arise out of the operation of any equipment listed in paragraphs 6b or 6c of the definition of mobile equipment.

Paragraphs b and c above do not apply to accidents that occur "away" from premises owned by or rented to an insured with respect to pollutants not in or upon a covered auto if:

(1) The pollutants or any property in which the pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of a covered auto; and

(2) The discharge, dispersal, seepage, migration, release or escape of the pollutants is caused directly by such upset, overturn or damage.

E. "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct or accidental loss.

F. "Employee" includes a leased worker. Employee does not include a temporary worker.

G. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or suit is brought.

H. "Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for bodily injury or property damage to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your employees, of any auto. However, such contract or agreement shall not be considered an insured contract to the extent that it obligates you or any of your employees to pay for property damage to any auto

rented or leased by you or any of your employees.

An insured contract does not include that part of any contract or agreement:

1. That indemnifies a railroad for bodily injury or property damage arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

2. That pertains to the loan, lease or rental of an auto to you or any of your employees, if the auto is loaned, leased or rented with a driver; or

3. That holds a person or organization engaged in the business of transporting property by auto for hire harmless for your use of a covered auto over a route or territory that person or organization is authorized to serve by public authority.

I. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. Leased worker does not include a temporary worker.

J. "Loss" means direct and accidental loss or damage.

K. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

a. Power cranes, shovels, loaders, diggers or drills; or

b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in paragraph 1, 2, 3 or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

b. Cherry-pickers and similar devices used to raise or lower workers; or

5. Vehicles not described in paragraph 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not mobile equipment but will be considered autos:

    a. Equipment designed primarily for:

        (1) Snow removal;

        (2) Road maintenance, but not construction or resurfacing; or

        (3) Street cleaning;

    b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, mobile equipment does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered autos.

L. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

M. "Property damage" means damage to or loss of use of tangible property.

N. "Suit" means a civil proceeding in which:

    1. Damages because of bodily injury or property damage; or

    2. A covered pollution cost or expense;

to which this insurance applies are alleged.

Suit includes:

    1. An arbitration proceeding in which such damages or covered pollution costs or expenses are claimed and to which the insured must submit or does submit with our consent; or

    2. Any other alternative dispute resolution proceeding in which such damages or covered pollution costs or expenses are claimed and to which the insured submits with our consent.

O. "Temporary worker" means a person who is furnished to you to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions.

P. "Trailer" includes semitrailer.

PAGE 16 of 29
2018-CH-04484
4/6/2018 11:37 AM
ELECTRONICALLY FILED

ACUITY ENHANCEMENTS - BUSINESS AUTO

CA-7247(11-15)

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

A. Temporary Substitute Vehicle Physical Damage

The following is added to Item C. Certain Trailers, Mobile Equipment and Temporary Substitute Autos under Section I - Covered Autos:

If Physical Damage Coverage is provided by this Coverage Form, any *auto* you do not own while used with permission of its owner as a temporary substitute for a covered *auto* you own that is out of service because of its breakdown, repair, servicing, *loss* or destruction is a covered *auto* for Physical Damage Coverage.

B. Who Is an Insured

The following are added to Who Is an Insured under Section II - Liability Coverage:

1. Newly Acquired Organizations

Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. This coverage does not apply to *bodily injury* or *property damage* that occurred before you acquired or formed the organization;

c. No person or organization is an *insured* with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

2. Employees as Insureds

Any *employee* of yours is an *insured* while using a covered *auto* you do not own, hire or borrow in your business or your personal affairs.

C. Increased Supplementary Payments

1. The limit shown in paragraph A2a(2) of Section II - Liability Coverage is increased to $3,000.

2. The limit shown in paragraph A2a(4) of Section II - Liability Coverage is increased to $300.

D. Fellow Employee Coverage

The Fellow Employee Exclusion contained in Section II - Liability Coverage does not apply.

E. Towing for Covered Autos after Covered Losses

The following is added to paragraph A4 Coverage Extensions of Section III - Physical Damage Coverage in the Business Auto Coverage Form and to paragraph - A4 Coverage Extension under Section IV - Physical Damage Coverage in the Motor Carrier Coverage Form and the Towing Coverage endorsement, if it applies to your policy:

If a covered *loss* to a covered *auto* renders the vehicle undriveable, we will pay for reasonable and necessary costs to tow the vehicle to the nearest service or salvage facility. This coverage only applies to a covered *auto* insured for Comprehensive or Collision coverage. Such payments will not reduce the limits of insurance described in C. Limit of Insurance.

F. Transportation Expenses

The Transportation Expenses Coverage Extension is replaced by the following:

We will also pay up to $75 per day to a maximum of $1,500 for temporary transportation expense incurred by you because of the total theft of a covered *auto* of the private passenger or *light truck* type. We will pay only for those covered *autos* for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered *auto* is returned to use or we pay for its *loss*.

G. Increased Sub-limit for Audio, Visual and Data Electronic Equipment Coverage

The sub-limit shown in paragraph C2 of the Limit of Insurance Provision of Section III - Physical Damage Coverage in the Business Auto Coverage Form is increased to $3,000.

H. The following are added to Coverage Extensions under Section III - Physical Damage Coverage Form and to Section IV - Physical Damage Coverage in the Motor Carrier Coverage Form:

1. Accidental Airbag Discharge

We will pay to replace an airbag that deploys without the car being involved in an accident. This coverage applies only to a covered *auto* which you own.

2. Loan/Lease Gap Coverage

In the event of a total *loss* to a covered *auto* of the private passenger or *light truck* type, we will pay any unpaid amount due

L00097807135041718

on the lease or loan; less:

a. The amount paid under the Physical Damage Coverage Section of the policy; and

b. Any:

(1) Overdue lease/loan payments at the time of the *loss*;

(2) Financial penalties imposed under a lease for excessive use, abnormal wear and tear or high mileage;

(3) Security deposits not returned by the lessor;

(4) Costs for extended warranties, Credit Life Insurance, Health, Accident or Disability Insurance purchased with the loan or lease; and

(5) Carry-over balances from previous loans or leases.

3. **Hired Auto Physical Damage Coverage.**

If hired *autos* are covered *autos* for Liability Coverage, then the Physical Damage Coverages provided under this Coverage Form for any *auto* you own are extended to *autos* of the private passenger or *light truck* type which you lease, rent or borrow for a period of 30 days or less; subject to the following limit.

The most we will pay under this extension is the lesser of the actual cash value, the cost of repair or $50,000, minus a deductible. The deductible will be equal to the largest deductible applicable to any owned *auto* of the private passenger or *light truck* type for that coverage. Subject to the above limit, deductible and excess provisions, we will provide coverage equal to the broadest coverage applicable to any covered *auto* you own of the private passenger or *light truck* type.

4. **Rental Reimbursement Coverage for Private Passenger Vehicles or Light Trucks**

a. This coverage applies only to a covered *auto* of the private passenger or *light truck* type.

b. We will pay for rental reimbursement expenses incurred by you for the rental of an *auto* because of a covered *loss* to an *auto* to which this extension applies. Payment applies in addition to the otherwise applicable amount of each coverage you have on a covered *auto*. No deductibles apply to this coverage.

c. We will pay only for those expenses incurred during the policy period beginning 24 hours after the *loss* and ending, regardless of the policy's expiration, with the lesser of the following number of days:

(1) The number of days reasonably required to repair or replace the covered *auto*. If *loss* is caused by theft, this number of days is added to the number of days it takes to locate the covered *auto* and return it to you.

(2) 30 days.

d. Our payment is limited to the lesser of the following amounts:

(1) Necessary and actual expenses incurred.

(2) $75 per day to a maximum of $1,500.

e. This coverage does not apply while there are spare or reserve *autos* available to you for your operations.

f. If *loss* results from the total theft of a covered *auto* to which this extension applies, we will pay under this coverage only that amount of your rental reimbursement expenses which is not already provided for under the Physical Damage Coverage Extensions.

g. The Rental Reimbursement Coverage described above does not apply to a covered *auto* that is described or designated as a covered *auto* on Rental Reimbursement Coverage Form CA-9923F.

5. **Fire Department Service Charge**

When the fire department is called to save or protect a covered *auto*, its equipment, its contents, or occupants from a covered *loss*, we will pay up to $1,000 for your liability for fire department service charges:

a. Assumed by contract or agreement prior to loss; or

b. Required by local ordinance.

No deductible applies to this additional coverage.

6. **Fire Extinguisher Recharge**

We will pay the actual cost of recharging or replacing, whichever is less, fire extinguishers kept in your covered *auto* that are intentionally discharged in an attempt to extinguish a fire.

7. **Rental Reimbursement, Business Income and Extra Expense Coverage**

Limits

The most we will pay for all *loss* for each covered *auto* involved in any one *accident* for Rental Reimbursement, Business Income and Extra Expense combined is $10,000.

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 18 of 29

## Coverage

a. Rental Reimbursement Coverage

(1) We will pay for expenses incurred by you during the *period of restoration* for the rental of an *auto* made necessary because of a covered *loss* to a covered *auto* used in your business. The *loss* must be caused by a cause of loss covered under item A1 of Physical Damage Coverage in this Coverage Part.

(2) This Rental Reimbursement Coverage does not apply to a covered *auto* of the private passenger or *light truck* type because coverage for these vehicles is provided in item 4 of this endorsement.

b. Business Income and Extra Expense Coverage

(1) Business Income Coverage

(a) Actual Loss Sustained Coverage – We will pay the actual loss of *business income* sustained by you as the result of the necessary suspension of your business during the *period of restoration* due to a *loss* to a covered *auto* used in your business. The *loss* must be caused by a cause of loss covered under item A1 of Physical Damage Coverage in this Coverage Part.

(b) Specified Amount per Day Coverage – At your option, we will pay up to $250 per day for a maximum of seven days during the *period of restoration* for income loss. The *loss* must be caused by a cause of loss covered under item A1 of Physical Damage Coverage in this Coverage Part.

(2) Extra Expense Coverage

We will pay the necessary and reasonable *extra expenses* that you incur during the *period of restoration* that you would not have incurred had there been no *loss* to a covered *auto* used in your business. The *loss* must be caused by a cause of loss covered under item A1 of Physical Damage Coverage in this Coverage Part.

## Conditions

a. Any payment for Business Income made under Specified Amount per Day Coverage reduces the payment

make under any other coverages listed in extension 7.

b. No other deductible applies to these coverages.

c. We will not pay under these coverages if you do not repair or replace the covered *auto*.

d. You must resume all or part of your business as quickly as possible.

e. If you have other *autos* you can use to reduce the amount of loss payable under these coverages, you are required to use them.

f. We will not pay for loss or expenses caused by suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of your business, we will cover such loss that affects your *business income*.

g. We will pay for expenses you incur to reduce the amount that would otherwise have been payable under this coverage. We will not pay more than the amount by which you actually reduce the *business income* loss or *extra expense* incurred.

8. Fuel in Vehicle Coverage

We will also pay, with respect to a covered *loss*, the actual loss sustained for the loss to the fuel used to operate your vehicle but only with respect to a covered *auto*. You must provide documentation supporting your claim for damages.

Deductible

A deductible applies to this coverage. Refer to paragraph N Deductible Applicable to Fuel in Vehicle, Miscellaneous Equipment Used With Covered Vehicle Coverages, and Electronic Logging Devices or Electronic On-Board Recorders Coverages.

9. **Miscellaneous Equipment Used With Covered Vehicle Coverage**

We will also pay, with respect to a covered *loss*, the actual cash value, repair cost or replacement cost, whichever is less, for loss to your *miscellaneous equipment* but only with respect to a covered *auto*.

Exclusions

We will not pay for *loss* caused by:

a. Theft, unless there are visible signs or marks of forcible entry into the covered *auto* and the theft is reported to law enforcement authorities; or

b. Mysterious disappearance.

(Continued next page)

**Deductible**

A deductible applies to this coverage. Refer to paragraph N. Deductible Applicable to Fuel in Vehicle, Miscellaneous Equipment Used With Covered Vehicle Coverages, and Electronic Logging Devices or Electronic On-Board Recorders Coverages.

**10. Electronic Logging Devices or Electronic On-Board Recorders**

We will also pay, with respect to a covered loss, up to $3,000 for the actual loss sustained to an electronic on-board recorder or electronic logging device permanently installed in the auto but only with respect to a covered auto.

**Deductible**

A deductible applies to this coverage. Refer to paragraph N. Deductible Applicable to Fuel in Vehicle, Miscellaneous Equipment Used With Covered Vehicle Coverages, and Electronic Logging Devices or Electronic On-Board Recorders Coverages. for further information.

**I. Deductible Provision**

Paragraph. D. Deductible of Section III – Physical Damage Coverage in the Business Auto Coverage Form and paragraph D. Deductible of Section IV – Physical Damage Coverage in the Motor Carrier Coverage Form are replaced by the following:

1. For each covered auto, our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to loss caused by fire or lightning.

2. For combinations of tractor, truck, semi-trailer or trailers when attached, together by coupling devices, at the time of loss, one deductible will apply.

   a. If more than one auto of the combination is damaged or stolen, the largest applicable deductible shown in the Declarations will apply.

   b. If only one auto of the combination is damaged or stolen, the deductible shown in the Declarations for that auto will apply.

3. The deductibles will not apply to loss caused by a collision of a covered auto with any other auto insured by us.

4. If the insured chooses to have a damaged windshield or other glass repaired instead of replaced, no deductible will apply to the loss.

**J. Knowledge of Claim or Suit**

The following is added to the Duties in the Event of Accident, Claim, Suit, or Loss Condition:

Knowledge of an accident, claim, suit or loss by an agent or employee of any insured shall not in itself constitute knowledge of the insured, unless your partners, executive officers, directors, managers, members or a person who has been designated by them to receive reports of accidents, claims, suits or loss shall have received such notice from the agent or employee.

**K. Waiver of Subrogation for Written Contracts**

The following is added to the Transfer of Rights of Recovery Against Others to Us Condition:

We waive any right of recovery we may have against a person or organization because of payments we make for bodily injury or property damage arising out of your use of a covered auto which occurs while under a contract with that person or organization. The waiver applies only to a person or organization with whom you have a written contract or agreement requiring you to waive the right of recovery under this policy. The written contract or agreement must have been executed prior to the accident causing bodily injury or property damage.

**L. Worldwide Coverage Territory for Hired Autos**

The following is added to paragraph B7 of Section IV – Business Auto Conditions in the Business Auto Coverage Form and to paragraph B7 of Section V – Motor Carrier Conditions in the Motor Carrier Coverage Form:

With respect to autos hired for 30 days or less, the coverage territory is extended to include all parts of the world if the insured's responsibility to pay damages is determined in a suit in the United States of America (including its territories and possessions), Puerto Rico or Canada or in a settlement we agree to.

**M. Mental Anguish Coverage**

The Definition of bodily injury is amended to include mental anguish.

**N. Deductible Applicable to Fuel in Vehicle, Miscellaneous Equipment Used With Covered Vehicle Coverages and Electronic Logging Devices or Electronic On-Board Recorders**

1. If loss to property covered by these extensions is the result of a loss to the covered auto under this Coverage Form's Comprehensive or Collision Coverage, then for each covered auto our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any

2018-CH-04484
4/6/2018 11:37 AM
ELECTRONICALLY FILED
(continued next page)

Comprehensive Coverage deductible shown in the Declarations does not apply to loss to property covered by an extension caused by fire or lightning.

2. If loss to property covered by these extensions is the result of a loss to the covered auto under this Coverage Form's Specified Causes of Loss Coverage, then for each covered auto our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by a $100 deductible.

3. In the event that there is more than one applicable deductible, only the highest deductible will apply. In no event will more than one deductible apply.

**D. Coverage Extensions Definitions**

1. "Business income" means the;

a. Net income (Net profit or loss before income taxes) that would have been earned or incurred if no loss would have occurred; and

b. Continuing normal operating expenses incurred, including payroll.

2. "Extra expense" means those expenses you incur to avoid or minimize the suspension of business and to continue your business operations.

3. "Light truck" means a truck with a gross vehicle weight of 10,000 pounds or less.

4. "Miscellaneous equipment" means; hand trucks, dollies, pallets, pads, covers, binders, tarps, tie-downs, chains and other similar equipment used in the handling of property being transported.

5. "Period of restoration" means the period of time that:

a. Begins:

(1) Twenty-four hours after the time of loss for Rental Reimbursement Coverage or Business Income Coverage; or

(2) Immediately after the time of loss for Extra Expense Coverage; and

b. Ends at the earliest of:

(1) The time required to resume your normal business operations; or

(2) The time that is reasonably necessary to repair or replace the covered auto.

Period of restoration does not include any increased period required due to the enforcement of any ordinance or law that requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of pollutants.

The expiration date of this policy will not cut short the period of restoration.

---

**ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION - PRIMARY**

CA-7210(10-98)

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

1. Who Is an Insured under Section II – Liability Coverage is amended to include the person(s) or organization(s) named in the Schedule, but only with respect to liability arising out of operations performed for that person or organization by you.

2. This endorsement shall not increase the limit of insurance. The coverage provided by this endorsement will be primary and noncontributory with respect to any other coverage available to the additional insured.

**SCHEDULE**

Person or Organization
(Name and Address)

AIM NATIONALEASE
16055 VAN DRUNEN RD.
SOUTH HOLLAND IL 60473.

PENSKE TRUCK LEASING CO. LP
& ITS PARTNERS
6150 PARKLAND DR
SOUTH BEND IN 46628

PAGE 21 of 29
2018-CH-04484
4/6/2018 11:37 AM
ELECTRONICALLY FILED

INDIANA UNINSURED AND UNDERINSURED MOTORISTS COVERAGE      CA 7036 (8 14)

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

For a covered *auto* licensed or principally garaged in, or *garage* operations conducted in, Indiana:

**1. COVERAGE**

**a. Uninsured Motorists Coverage**

We will pay all sums in excess of any deductible shown in the Declarations that the *insured* is legally entitled to recover as compensatory damages from the owner or driver of an *uninsured motor vehicle*. The damages must result from:

(1) *Bodily injury* sustained by the *insured* and caused by an *accident* with an *uninsured motor vehicle*. This coverage applies only if the Declarations indicate that Uninsured Motorists Bodily Injury Coverage applies; or

(2) *Property damage* caused by an *accident* with an *uninsured motor vehicle*. This coverage applies only if the Declarations indicate that Uninsured Motorists Property Damage Coverage applies.

The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the *uninsured motor vehicle*.

**b. Underinsured Motorists Coverage**

We will pay all sums the *insured* is legally entitled to recover as compensatory damages from the owner or driver of an *underinsured motor vehicle*. The damage must result from *bodily injury* sustained by an *insured* and caused by an *accident* with an *underinsured motor vehicle*. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the *underinsured motor vehicle*.

We will pay under this coverage only if paragraph (1) or (2) below applies:

(1) The limit of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

(2) A tentative settlement has been made between an *insured* and the insurer of the *underinsured motor vehicle* and we:

(a) Have been given prompt written notice of such tentative settlement; and

(b) Advance payment to the *insured* in an amount, equal to the tentative settlement within 30 days after receipt of notification.

**2. WHO IS AN INSURED**

If the Named Insured is designated in the Declarations as:

a. An individual, then the following are *insureds*:

(1) The Named Insured and any *family members*.

(2) Anyone else *occupying* a covered *auto* or a temporary substitute for a covered *auto*. The covered *auto* must be out of service because of its breakdown, repair, servicing, *loss* or destruction.

(3) Anyone for damages he or she is entitled to recover because of *bodily injury* sustained by another *insured*.

b. A partnership, limited liability company, corporation or any other form of organization, then the following are *insureds*.

(1) Anyone *occupying* a covered *auto* or a temporary substitute for a covered *auto*. The covered *auto* must be out of service because of its breakdown, repair, servicing, *loss* or destruction.

(2) Anyone for damages he or she is entitled to recover because of *bodily injury* sustained by another *insured*.

(3) The Named Insured for *property damage* only.

**3. EXCLUSIONS**

This insurance does not apply to:

a. Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of an *underinsured motor vehicle* in accordance with the procedure described in paragraph 1b(2).

b. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation law, disability benefits law or similar law;

c. *Bodily injury* if sustained by:

(1) An individual Named Insured while *occupying* any vehicle owned by that Named Insured that is not a covered *auto* under this Coverage Form; or

(2) Any *family member* while *occupying* any vehicle owned by the Named Insured that is insured on a primary basis under any other Coverage Form or policy.

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 22 of 29

d. Any *insured* using a vehicle without a reasonable belief that the *insured* is entitled to do so;

e. *Property damage* to an *auto* or to property contained in an *auto* owned by the Named Insured which is not a covered *auto*;

f. The direct or indirect benefit of any insurer of property;

g. *Property damage* for which the *insured* has been or is entitled to be compensated by other property or physical damage insurance;

h. Punitive or exemplary damages; and

i. *Property damage* caused by a hit-and-run vehicle.

j. *Bodily injury* or *property damage* arising directly or indirectly out of:

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

4. LIMIT OF INSURANCE

a. Uninsured Motorists Coverage

  (1) The Uninsured Motorists Bodily Injury Coverage Limit of Insurance shown in the Declarations applies regardless of the number of covered *autos, insureds,* premiums paid, claims made, or vehicles involved in the *accident.*

    (a) The "each person" Limit of Insurance is the most we will pay for all damages resulting from *bodily injury* to any one person caused by any one *accident,* including all damages claimed by any person or organization for care, loss of services or death resulting from the *bodily injury.*

    (b) Subject to the "each person" Limit of Insurance, the "each accident" Limit of Insurance is the most we will pay for all damages resulting from *bodily injury* caused by any one *accident.*

  (2) The Uninsured Motorists Property Damage Coverage Limit of Insurance shown in the Declarations applies regardless of the number of covered *autos, insureds,* premiums paid, claims made or vehicles involved in the *accident.*

The "each accident" Limit of Insurance is the most we will pay for all damages resulting from *property damage* caused by any one *accident.*

The amount of damages will be reduced by any deductible applying to Uninsured Motorists Property Damage Coverage.

b. Underinsured Motorists Coverage

The Underinsured Motorists Coverage Limit of Insurance shown in the Declarations applies regardless of the number of covered *autos, insureds,* premiums paid, claims made or vehicles involved in the *accident.*

  (1) The "each person" Limit of Insurance is the most we will pay for all damages resulting from *bodily injury* to any one person caused by any one *accident,* including all damages claimed by any person or organization for care, loss of services or death resulting from the *bodily injury.*

  (2) Subject to the "each person" Limit of Insurance, the "each accident" Limit of Insurance is the most we will pay for all damages resulting from *bodily injury* caused by any one *accident.*

c. The Limit of Insurance under this coverage shall be reduced by all sums paid or payable by or for anyone who is legally responsible, including all sums paid under this Coverage Form's Liability Coverage.

d. No one will be entitled to receive duplicate payments for the same elements of *loss* under this Coverage Form and any Liability Coverage Form or Medical Payments Coverage endorsement attached to this Coverage Part.

We will not make a duplicate payment under this Coverage for any element of *loss* for which payment has been made by or for anyone who is legally responsible.

We will not pay for any element of *loss* if a person is entitled to receive payment for the same element of loss under any workers' compensation, disability benefits or similar law.

e. We will not pay for a *loss* which is paid or payable under Physical Damage Coverage.

f. No *insured* shall recover duplicate payments for the same elements of *loss* or payments in excess of damages sustained.

5. CHANGES IN CONDITIONS

The Conditions are changed for Uninsured Motorists Coverage and Underinsured Motorists Coverage as follows:

a. Other Insurance in the Business Auto and Garage Coverage Forms and Other Insurance - Primary and Excess Insurance Provi-

sions in the Motor Carrier Endorsement and Motor Carrier Coverage Form is replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage, the following priorities of coverage apply:

| First Priority | The Uninsured Motorists Coverage or Underinsured Motorists Coverage applicable to the vehicle the *insured* was occupying at the time of the *accident*. |
| Second Priority | Any other coverage form or policy affording Uninsured Motorists Coverage or Underinsured Motorists Coverage to the *insured*. |

(1) The Limit of Insurance under the vehicle the *insured* was occupying under the coverage form or policy in the First Priority shall first be exhausted.

(2) The maximum recovery for damages under all coverage forms or policies may equal but shall not exceed the highest applicable limit of any one vehicle under any insurance providing coverage on either a First or Second Priority basis.

(3) We will pay only our share of the *loss*. Our share is the proportion that our limit of liability bears to the total of all limits applicable to the same level of priority.

b. For Uninsured Motorists Coverage, the Legal Action Against Us provision is replaced by the following:

(1) No one may bring a legal action against us under this Coverage Form until there has been full compliance with all terms of this Coverage Form.

(2) Any legal action against us under this Coverage Form must be brought within two years after the date of the *accident*. However, this paragraph b(2) does not apply to an *insured* if, within two years after the date of the *accident*, we and the *insured* agree to arbitration in accordance with this endorsement.

c. For Underinsured Motorists Coverage, the Legal Action Against Us provision is replaced by the following:

(1) No one may bring a legal action against us under this Coverage Form until there has been full compliance with all terms of this Coverage Form.

(2) Any legal action against us under this Coverage Form must be brought within two years after the date of the *accident*. However, this paragraph c(2) does

apply if, within two years after the date of the *accident*:

(a) We and the *insured* agree to arbitration in accordance with this endorsement.

(b) The *insured* has filed an action for *bodily injury* against the owner or operator of the *underinsured motorists vehicle*, and such action is:

(i) filed in a court of competent jurisdiction; and

(ii) not barred by the applicable state statute of limitations.

In the event that the two year time limitation identified in this Condition does not apply, the applicable state statute of limitations will govern legal action against us under this Coverage Form.

d. Duties In the Event of Accident, Claim, Suit or Loss is changed by adding the following:

(1) Promptly notify the police if a hit-and-run driver is involved;

(2) Promptly send us copies of the legal papers if a *suit* is brought; and

(3) A person seeking coverage from an insurer, owner or operator of an *underinsured motor vehicle* must also promptly notify us in writing of a tentative settlement between the *insured* and the insurer and allow us to advance payment to that *insured* in an amount equal to the tentative settlement within 30 days after receipt of notification to preserve our rights against the insurer, owner or operator of such vehicle.

e. Transfer of Rights of Recovery Against Others to Us is changed by adding the following:

(1) If we make any payment and the *insured* recovers from another party, the *insured* shall hold the proceeds in trust for us and pay us back the amount we have paid.

(2) With respect to Underinsured Motorists Coverage, our rights do not apply under this provision if we:

(a) Have been given prompt written notice of a tentative settlement between an *insured* and the insurer of the *underinsured motor vehicle*; and

(b) Fail to advance payment to the *insured* in an amount equal to the tentative settlement within 30 days after receipt of such notification.

If we advance payment to the *in-*

sured in an amount equal to the tentative settlement within 30 days after notification:

   (i) That payment will be separate from any amount the insured is entitled to recover under the provisions of this coverage; and

   (ii) We also have the right to recover the advance payment from the insurer, or the owner or operator of the *underinsured motor vehicle.*

(3) If we make a payment because the insurer of the uninsured motor vehicle or underinsured motor vehicle is or becomes insolvent, the Transfer Of Rights of Recovery Against Others To Us Condition does not apply to any rights of recovery against:

   (a) The Indiana Guaranty Fund; or

   (b) The *insured* of the insolvent insurer, except in amounts that exceed the limit of liability of the coverage form or policy that was issued by that insolvent insurer.

f. The following Condition is added:

   Arbitration

   If we and an *insured* disagree whether the *insured* is legally entitled to recover damages from the owner or driver of an *uninsured motor vehicle* or *underinsured motor vehicle* or do not agree as to the amount of damages that are recoverable by that *insured,* then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

   Unless both parties agree otherwise, arbitration will take place in the county in which the *insured* lives. Local rules of law as to arbitration procedures and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

6. ADDITIONAL DEFINITIONS

   As used in this endorsement:

   a. *"Family member"* means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such

Named Insured's household, including a ward or foster child.

b. *"Occupying"* means in, upon or getting in, on, out or off.

c. *"Property damage"* means damage to a covered *auto,* or to property owned by the Named Insured or if the Named Insured is an individual, a *family member* while contained in a covered *auto.* However, *property damage* does not include loss of use of damaged or destroyed property.

d. *"Uninsured motor vehicle"* means a land motor vehicle or *trailer:*

   (1) For which no liability bond or policy at the time of an *accident* provides at least the amounts required by the financial responsibility law of Indiana;

   (2) For which an insuring or bonding company denies coverage or is or becomes insolvent; or

   (3) Which is a hit-and-run vehicle and neither the driver nor the owner can be identified. The vehicle must hit an *insured,* a covered *auto* or a vehicle an *insured* is occupying; or must hit another vehicle that hits an *insured,* a covered *auto* or a vehicle an *insured* is occupying.

   However, *uninsured motor vehicle* does not include any vehicle:

   (1) Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by the financial responsibility law of Indiana;

   (2) Owned by a governmental unit or agency while being used in an authorized manner; or

   (3) Designed for use mainly off public roads while not on public roads.

e. *"Underinsured motor vehicle"* means a land motor vehicle or *trailer* for which the sum of all liability bonds or policies at the time of an *accident* provides at least the amounts required by the financial responsibility law of Indiana but their limits are either:

   (1) Less than the Limits of Insurance for Underinsured Motorists Coverage; or

   (2) Reduced by payments to others injured in the *accident* to an amount which is less than the Limits of Insurance for Underinsured Motorists Coverage.

   However, *underinsured motor vehicle* does not include any vehicle:

   (1) Owned or operated by a self-insurer under any applicable motor vehicle law,

except a self-insurer who is or becomes insolvent and cannot provide the amounts required;

(2) Owned by a governmental unit or agen-

cy while being used in an authorized manner; or

(3) Designed for use mainly off public roads while not on public roads.

## LESSOR - ADDITIONAL INSURED AND LOSS PAYEE

CA 2001R(3-06)

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

1. **COVERAGE**

   a. Any *leased auto* designated or described in the Schedule will be considered a covered *auto* you own and not a covered *auto* you hire or borrow.

   b. For a *leased auto* designated or described in the Schedule, Who Is an Insured is changed to include as an *insured* the lessor named in the Schedule. However, the lessor is an *insured* only for *bodily injury* or *property damage* resulting from the acts or omissions by:

      (1) You;

      (2) Any of your *employees* or agents; or

      (3) Any person, except the lessor or any *employee* or agent of the lessor, operating a *leased auto* with the permission of any of the above.

   c. The coverages provided under this endorsement apply to any *leased auto* described in the Schedule until the expiration date of the lease, the expiration date of the policy or when the lessor or his or her agent takes possession of the *leased auto*, whichever occurs first.

2. **LOSS PAYABLE CLAUSE**

   a. We will pay, as interest may appear, you and the lessor named in this endorsement for *loss* to a *leased auto*.

   b. The insurance covers the interest of the lessor unless the *loss* results from fraudulent acts or omissions on your part.

   c. If we make any payment to the lessor, we will obtain his rights against any other party.

3. **CANCELLATION**

   a. If we cancel the policy for any reason other than nonpayment of premium, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

   b. If the policy is cancelled due to nonpayment of premium, we will mail to the lessor, a copy of the policy lapse notice we send the insured.

   c. If you cancel the policy, we will mail notice to the lessor.

   d. Cancellation ends this agreement.

4. The lessor is not liable for payment of your premiums.

5. **ADDITIONAL DEFINITION**

   As used in this endorsement:

   "*Leased auto*" means an *auto* leased or rented to you, including any substitute, replacement or extra *auto* needed to meet seasonal or other needs, under a lease or rental agreement that requires you to provide direct primary insurance for the lessor.

### SCHEDULE

**Lessor**
(Name and Address)

XTRA LEASE LLC
5330 W 47TH ST.
CHICAGO IL 60638.

**Designation or Description of Leased Autos.**

| Model Year | Vehicle Description | ID Number |
|---|---|---|
| | HIRED AUTOS | |

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 26 of 79

ENDORSEMENT FOR MOTOR CARRIER POLICIES OF INSURANCE FOR
PUBLIC LIABILITY UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER
ACT OF 1980 (MCS-90)

CA-7100(2-11)

Issued to ___KINGSBURY ACRES GREENHOUSE INC C/O BILL CHRISTAKES 20601 S LA GRANGE RD FRANKFORT___

___IL 60423___

Dated at ___SHEBOYGAN, WISCONSIN___ on ___JANUARY 31, 2016___

Amending Policy No. ___X95151___ Effective Date ___APRIL 15, 2016___

Name of Insurance Company ___ACUITY, A MUTUAL INSURANCE COMPANY___

Countersigned by

*Ben Salzmann*

President

This insurance is primary and the company shall not be liable for amounts in excess of $750,000 for each
accident.

Whenever required by the Federal Motor Carrier Safety Administration (FMCSA), the company agrees to furnish
the FMCSA a duplicate of said policy and all its endorsements. The company also agrees, upon telephone
request by an authorized representative of the FMCSA, to verify that the policy is in force as of a particular date.
The telephone number to call is: 920-458-9131.

Cancellation of this endorsement may be effected by the company or the insured by giving (1) thirty-five (35) days
notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of
mailing shall be sufficient proof of notice), and (2) if the insured is subject to the FMCSA's registration
requirements under 49 U.S.C. 13901, by providing thirty (30) days notice to the FMCSA (said 30 days notice to
commence from the date the notice is received by the FMCSA at its office in Washington, D.C.).

## DEFINITIONS AS USED IN THIS ENDORSEMENT

*Accident* includes continuous or repeated exposure
to conditions which results in bodily injury, property
damage, or environmental damage which the in-
sured neither expected nor intended.

*Motor Vehicle* means a land vehicle, machine,
truck, tractor, trailer, or semitrailer propelled or
drawn by mechanical power and used on a highway
for transporting property, or any combination thereof.

*Bodily Injury* means injury to the body, sickness, or
disease to any person, including death resulting from
any of these.

*Property Damage* means damage to or loss of use
of tangible property.

*Environmental Restoration* means restitution for
the loss, damage, or destruction of natural resources
arising out of the accidental discharge, dispersal,
release or escape into or upon the land, atmo-
sphere, watercourse, or body of water, of any com-
modity transported by a motor carrier. This shall
include the cost of removal and the cost of neces-
sary measures taken to minimize or mitigate damage
to human health, the natural environment, fish, shell-
fish, and wildlife.

*Public Liability* means liability for bodily injury,
property damage, and environmental restoration.

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 27 of 29

Form Approved OMB No. 2126-0008.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo.

It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement there-on, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately, to each accident, and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

THE SCHEDULE OF LIMITS SHOWN BELOW DOES NOT PROVIDE COVERAGE. The limits shown in the schedule are for information purposes only.

## SCHEDULE OF LIMITS - *PUBLIC LIABILITY*

| Type of Carriage | Commodity Transported | Minimum Insurance |
|---|---|---|
| (1) For-hire (in interstate or foreign commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Property (nonhazardous). | $  750,000 |
| (2) For-hire and Private (in interstate, foreign or intrastate commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Hazardous substances, as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Division 1.1, 1.2, and 1.3 materials; Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material, as defined in 49 CFR 173.403. | 5,000,000 |
| (3) For-hire and Private (in interstate or foreign commerce, in any quantity, or in intrastate commerce, in bulk only, with a gross vehicle weight rating of 10,000 or more pounds). | Oil listed in 49 CFR 172.101; hazardous waste, hazardous materials, and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | 1,000,000 |
| (4) For-hire and Private (in interstate or foreign commerce, with a gross vehicle weight rating of less than 10,000 pounds). | Any quantity of Division 1.1, 1.2, or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | 5,000,000 |

**MOTOR CARRIER ENDORSEMENT**

CA 7274 (10-13)

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

For any operations you engage in as a *motor carrier*, the policy is changed as follows:

1. Who Is An Insured under Covered Autos Liability Coverage is replaced by the following:

   1. **Who Is An Insured**

      The following are *insureds*:

      a. You for any covered *auto*.

      b. Anyone else while using with your permission a covered *auto* you own, hire or borrow except:

         (1) The owner, or any *employee*, agent or driver of the owner, or anyone else from whom you hire or borrow a covered *auto*.

         (2) Your *employee* or agent if the covered *auto* is owned by that *employee* or agent or a member of his or her household.

         (3) Someone using a covered *auto* while they are working in a business of selling, servicing, repairing or parking *autos* unless that business is yours.

         (4) Anyone other than your *employees*, partners (if you are a partnership), members (if you are a limited liability company), a lessee or borrower of a covered *auto* or any of their *employees*, while moving property to or from a covered *auto*.

         (5) A partner (if you are a partnership) or member (if you are a limited liability company) for a covered *auto* owned by him or her or a member of his or her household.

      c. The owner or anyone else from whom you hire or borrow a covered *auto* that is a *trailer* while the *trailer* is connected to another covered *auto* that is a power unit, or, if not connected, is being used exclusively in your business.

      d. The lessor of a covered *auto* that is not a *trailer* or any *employee*, agent or driver of the lessor while the *auto* is leased to you under a written agreement if the written agreement between the lessor and you does not require the lessor to hold you harmless and then only when the leased *auto* is used in your busi-

ness as a *motor carrier* for hire.

      e. Anyone liable for the conduct of an *insured* described above, but only to the extent of that liability.

However, none of the following is an *insured*:

      a. Any *motor carrier* for hire or his or her agents or *employees*, other than you and your *employees*:

         (1) If the *motor carrier* is subject to motor carrier insurance requirements and meets them by a means other than *auto* liability insurance.

         (2) If the *motor carrier* is not insured for hired *auto* under an *auto* liability insurance form that insures on a primary basis the owners of the *auto* and their agents and *employees* while the *autos* are leased to that *motor carrier* and used in his or her business.

            However, paragraph a. above does not apply if you have leased an *auto* to the for-hire *motor carrier* under a written lease agreement in which you have held that *motor carrier* harmless.

      b. Any rail, water or air carrier or its *employees* or agents, other than you and your *employees*, for a *trailer* if *bodily injury* or *property damage* occurs while the *trailer* is detached from a covered *auto* you are using and:

         (1) Is being transported by the carrier; or

         (2) Is being loaded on or unloaded from any unit of transportation by the carrier.

2. Physical Damage Coverage is changed by adding the following exclusion:

   We will not pay for *loss* to:

   Any covered *auto* while in anyone else's possession under a written *trailer* interchange agreement. But this exclusion does not apply to a *loss* payee; however, if we pay the loss payee, you must reimburse us for our payment.

3. The Other Insurance Condition is replaced by the following:

   5. **Other Insurance – Primary And Excess Insurance Provisions**

      a. While any covered *auto* is hired or borrowed from you by another *motor carrier*, this Coverage Form's Covered Autos Liability Coverage is:

         (1) Primary if a written agreement

PAGE 29 OF 43

CA 7274 (10-13)
(Continued next page)
2018-CH-04695
4/6/2018 11:37 AM
ELECTRONICALLY FILED



ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
CALENDAR: 10
PAGE 1 of 30
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

between you as the lessor and the other *motor carrier* as the lessee requires you to hold the lessee harmless.

(2) Excess over any other collectible insurance if a written agreement between you as the lessor and the other *motor carrier* as the lessee does not require you to hold the lessee harmless.

b. While any covered *auto* is hired or borrowed by you from another *motor carrier*, this Coverage Form's Liability Coverage is:

(1) Primary if a written agreement between the other *motor carrier* as the lessor and you as the lessee does not require the lessor to hold you harmless; and then only while the covered *auto* is used exclusively in your business as a *motor carrier* for hire.

(2) Excess over any other collectible insurance if a written agreement between the other *motor carrier* as the lessor and you as the lessee requires the lessor to hold you harmless.

c. While a covered *auto* which is a *trailer* is connected to a power unit, this Coverage Form's Liability Coverage is:

(1) Provided on the same basis, either primary or excess, as the Covered Autos Liability Coverage provided for the power unit, if the power unit is a covered *auto*.

(2) Excess if the power unit is not a covered *auto*.

d. Any Trailer Interchange Coverage provided by this Coverage Form is primary for any covered *auto*.

e. Except as provided in paragraphs a, b, c and d above, this Coverage Form provides primary insurance for any covered *auto* you own and excess insurance for any covered *auto* you don't own.

f. For Hired Auto Physical Damage Coverage, any covered *auto* you lease, hire, rent or borrow is deemed to be a covered *auto* you own. However, any *auto* that is leased, hired, rented or borrowed with a driver is not a covered *auto*.

g. Regardless of the provisions of paragraphs a, b, c, d and e above, this Coverage Form's Liability Coverage is primary for any liability assumed under an *insured contract*.

h. When this Coverage Form and any other Coverage Form or policy cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

4. Additional Definitions

As used in this endorsement:

a. "Motor carrier" means a person or organization providing transportation by *auto* in the furtherance of a commercial enterprise.

b. "Trailer" includes a semitrailer or a dolly used to convert a semitrailer into a trailer. But for Trailer Interchange Coverage only, *trailer* also includes a container.

SCHEDULE

PHYSICAL DAMAGE COVERAGE

The Physical Damage Coverage exclusion in paragraph 2 of this endorsement is removed for each of the following coverages:

Coverages

## EXCLUSION OF TERRORISM

CA-2384F(10-13).

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury, damage, loss or expense, is shown in italics:

1. "Terrorism" means activities against persons, organizations or property of any nature:

a. That involve the following or preparation for the following:

(1) Use or threat of force or violence; or

(2) Commission or threat of a dangerous act; or

(3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information or mechanical system; and

b. When one or both of the following apply:

(1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

(2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury, damage, loss or expense" means any injury, damage, loss or expense covered under any Coverage Form or Policy to which this endorsement is applicable, and includes but is not limited to bodily injury, property damage, personal injury, personal and advertising injury, loss, loss of use, rental reimbursement after loss or covered pollution cost or expense, as may be defined under this Coverage Form, Policy or any applicable endorsement.

B. Except with respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, or Garagekeepers Coverage, Customers' Sound Receiving Equipment, the

following exclusion is added:

### Exclusion Of Terrorism

We will not pay for any injury, damage, loss or expense caused directly or indirectly by terrorism, including action in hindering or defending against an actual or expected incident of terrorism. Any injury, damage, loss or expense is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury, damage, loss or expense. But this exclusion applies only when one or more of the following are attributed to an incident of terrorism:

1. The terrorism is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the terrorism was to release such material; or

3. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

a. Physical injury that involves a substantial risk of death; or

b. Protracted and obvious physical disfigurement; or

c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of terrorism which occur within a 72-hour period and appear to be carried

out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs B5 and B6 are exceeded.

With respect to this exclusion, Paragraphs B5 and B6 describe the thresholds used to measure the magnitude of an incident of *terrorism* and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of *terrorism*, there is no coverage under this Coverage Form, Policy or any applicable endorsement.

C. With respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage or Garagekeepers Coverage - Customers' Sound Receiving Equipment, the following exclusion is added:

**Exclusion Of Terrorism**

We will not pay for any *loss*, loss of use or rental reimbursement after *loss* caused directly or indirectly by *terrorism*, including action in hindering or defending against an actual or expected incident of *terrorism*. But this exclusion applies only when one or more of the following are attributed to an incident of *terrorism*:

1. The *terrorism* is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the *terrorism* was to release such material; or

3. The *terrorism* is carried out by means of the dispersal or application of pathogenic or poi-

sonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the *terrorism* was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the *terrorism* and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions.

Multiple incidents of *terrorism* which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold in Paragraph C5 is exceeded.

With respect to this exclusion, Paragraph C5 describes the threshold used to measure the magnitude of an incident of *terrorism* and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of *terrorism*, there is no coverage under this Coverage Form, Policy or any applicable endorsement.

D. In the event of any incident of *terrorism* that is not subject to the exclusion in Paragraph B or C, coverage does not apply to *any injury*, *damage*, *loss* or expense that is otherwise excluded under this Coverage Form, Policy or any applicable endorsement.

---

**ASBESTOS EXCLUSION**

IL 7012(3-14)

This endorsement modifies insurance provided under the following:

BIS-PAK BUSINESS LIABILITY AND MEDICAL EXPENSE COVERAGE FORM
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
DIRECTORS' AND OFFICERS' LIABILITY COVERAGE PART
EMPLOYEE BENEFITS LIABILITY COVERAGE PART
ERRORS AND OMISSIONS COVERAGE PART
GARAGE COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
POLLUTION LIABILITY COVERAGE FORM

PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS-COMPLETED OPERATIONS LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM

The following exclusion is added:

**Asbestos**

This insurance does not apply to any *bodily injury* or *property damage* arising out of activities related to, but not limited to, manufacture, mining, storage, distribution, installation, sale, use, exposure to, service, testing for, repair, containment or removal of asbestos, asbestos fibers, asbestos dust, or products containing asbestos.

**NUCLEAR ENERGY LIABILITY EXCLUSION - BROAD FORM**　　　　　IL 0021F (3-14)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
DIRECTORS AND OFFICERS' LIABILITY COVERAGE PART
EMPLOYEE BENEFITS LIABILITY COVERAGE PART
ERRORS AND OMISSIONS COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
POLLUTION LIABILITY COVERAGE FORM
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS-COMPLETED OPERATIONS LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM.

1. The insurance does not apply:

    a. Under any Liability Coverage to *bodily injury* or *property damage*:

       (1) With respect to which an *insured* under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

       (2) Resulting from the *hazardous properties* of *nuclear material* and with respect to which:

          (a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954 or any law amendatory thereof; or

          (b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    b. Under any Medical Payments coverage, to expenses incurred with respect to *bodily injury* resulting from the *hazardous properties* of *nuclear material* and arising out of the operation of a *nuclear facility* by any person or organization.

    c. Under any Liability Coverage, to *bodily injury* or *property damage* resulting from the *hazardous properties* of *nuclear material*, if:

       (1) The *nuclear material*:

          (a) Is at any *nuclear facility* owned by, or operated by or on behalf of, an *insured*; or

          (b) Has been discharged or dispersed therefrom.

       (2) The *nuclear material* is contained in *spent fuel* or *waste* at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an *insured*; or

       (3) The *bodily injury* or *property damage* arises out of the furnishing by an *insured* of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any *nuclear facility*, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3). applies only to *property damage* to such *nuclear facility* and any property thereat.

2. As used in this endorsement:

    a. "*Hazardous properties*" include radioactive, toxic or explosive properties.

    b. "*Nuclear material*" means *source material*, *special nuclear material* or *byproduct material*.

    c. "*Source material*," "*special nuclear material*," and "*byproduct material*" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

    d. "*Spent fuel*" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a *nuclear reactor*.

    e. "*Waste*" means any waste material:

       (1) Containing *byproducts material* other than the tailings or *wastes* produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its *source material* content; and

       (2) Resulting from the operation by any person or organization of any *nuclear facility* included under the first two paragraphs of the definition of *nuclear facility*.

    f. "*Nuclear facility*" means:

       (1) Any *nuclear reactor*;

       (2) Any equipment or device designed or used for:

          (a) Separating the isotopes of uranium or plutonium;

          (b) Processing or utilizing *spent fuel*; or

(c) Handling, processing or packaging waste;

(3) Any equipment or device used for the processing, fabricating or alloying of *special nuclear material* if at any time the total amount of such material in the custody of the *insured* at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(4) Any structure, basin, excavation, prem-

ises or place prepared or used for the storage or disposal of *waste*;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

g. *"Nuclear reactor"* means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h. *"Property damage"* includes all forms of radioactive contamination of property.

---

**INDIANA CHANGES**

CA-7041(10-12)

For a covered *auto* licensed in, or *garage operations* conducted in Indiana, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Changes In Conditions**

1. Except as provided in paragraph 2 of this endorsement, the Other Insurance Condition in the Business Auto and Garage Coverage Forms and the Other Insurance – Primary and Excess Insurance Provisions in the Motor Carrier Coverage Form is changed by adding the following and supersedes any provision to the contrary:

    If there is other applicable insurance available under one or more policies or provisions of coverage, any insurance we provide for any covered *auto* owned by an *insured* is primary and shall first be exhausted.

2. The Other Insurance Condition in the Business Auto and Garage Coverage Forms and the Other Insurance – Primary and Excess Insurance Provisions in the Motor Carrier Coverage Form is changed by adding the following:

    a. When two coverage forms providing liability coverage apply to an *auto* and:

        (1) One provides coverage to a named insured engaged in the business of sell-

ing, repairing, servicing, delivering, testing, road testing, parking or storing *autos*; and

    (2) The other provides coverage to a person not engaged in that business; and

    (3) At the time of an *accident* a person described in 2a(2) is operating an *auto* owned by the business described in 2a(1);

    then that person's liability coverage is primary and the coverage form issued to a business described in 2a(1) is excess over any coverage available to that person.

    b. When two coverage forms providing liability coverage apply to an *auto* and:

        (1) One provides coverage to a named insured engaged in the business of repairing, servicing, parking or storing *autos*; and

        (2) The other provides coverage to a person not engaged in that business; and

        (3) At the time of an *accident* an *insured* under the coverage form described in 2b(1) is operating an *auto* owned by a person described in 2b(2);

    then the liability coverage form issued to the business described in 2b(1) is primary and the coverage form issued to a person described in 2b(2) is excess over any coverage available to the business.

STATED AMOUNT INSURANCE

CA-9928F(3-10)

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the coverage form apply unless modified by the endorsement.

Note: The amount shown in the Declarations is not necessarily the amount you will receive at the time of loss for the described property. Please refer to the Limit of Insurance and Deductible provision which follows:

1. This endorsement provides only those coverages where a premium is shown in the Declarations.

2. For each covered auto, the Physical Damage Coverage Limit of Insurance is replaced by the following:

   Limit of Insurance

   a. The most we will pay for loss in any one accident is the least of the following amounts:

      (1) The actual cash value of the damaged or stolen property as of the time of the loss;

      (2) The cost of repairing or replacing the damaged or stolen property; or

      (3) The Limit of Insurance shown in the Declarations.

   b. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

   c. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

3. Deductible

   a. For each covered auto, our obligation to pay:

      (1) The actual cash value of the damaged or stolen property as of the time of the loss will be reduced by the applicable deductible shown in the Declarations;

      (2) The cost of repairing or replacing the damaged or stolen property with property of like kind and quality will be reduced by the applicable deductible shown in the Declarations; or

      (3) The damages for loss that would otherwise be payable will be reduced by the applicable deductible shown in the Declarations prior to the application of the Limit of Insurance shown in the Declarations.

   b. Any Comprehensive Coverage Deductible shown in the Declarations does not apply to loss caused by fire or lightning.

CA-9928F(3-10)

## COMMON POLICY CONDITIONS

IL 0017F(11-98)

All Coverage Parts included in this policy are subject to the following conditions.

### A. CANCELLATION

1. The First Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the First Named Insured written notice of cancellation at least:

a. Ten days before the effective date of cancellation if we cancel for nonpayment of premium; or

b. Thirty days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the First Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the First Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the First Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The First Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### D. INSPECTIONS AND SURVEYS

1. We have the right to:

a. Make inspections and surveys at any time;

b. Give you reports on the conditions we find; and

c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

a. Are safe or healthful; or

b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1 and 2 of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2 of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

### E. PREMIUMS

The First Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

### F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 7 of 30

INDIANA CHANGES - CANCELLATION AND NONRENEWAL                    IL-7045(3-14)

This endorsement modifies insurance provided under the following:

BIS-PAK COVERAGE PART
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
DIRECTORS AND OFFICERS LIABILITY COVERAGE PART
EMPLOYEE BENEFITS LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
ERRORS AND OMISSIONS COVERAGE PART
LIQUOR LIABILITY COVERAGE FORM
POLLUTION LIABILITY COVERAGE FORM
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS-COMPLETED OPERATIONS LIABILITY COVERAGE FORM

1. Paragraph 2 of the Cancellation Common Policy Condition is replaced by the following:

   a. If this policy has been in effect for 90 days or less and is not a renewal or continuation policy, we will give the First Named Insured written notice of cancellation at least 30 days prior to cancelling the policy except:

      (1) When cancellation is for nonpayment of premium, we will give at least 10 days written notice.

      (2) When cancellation is due to fraud or material misrepresentation, we will give at least 20 days written notice.

   b. If this policy has been in effect for more than 90 days or is a renewal or continuation policy:

      (1) We may cancel this policy only for one or more of the following reasons:

         (a) Nonpayment of premium;

         (b) There is a substantial change in the scale of risk covered by the policy;

         (c) The insured has perpetrated a fraud or material misrepresentation upon us;

         (d) The insured has failed to comply with reasonable safety recommendations; or

         (e) Reinsurance of the risk associated with the policy has been cancelled.

      (2) We will give the First Named Insured written notice of cancellation at least 45 days prior to cancelling the policy except:

         (a) When cancellation is for nonpayment of premium, we will give at least 10 days written notice.

         (b) When cancellation is due to fraud or material misrepresentation, we will give at least 20 days written notice.

2. Paragraph 5 of the Cancellation Common Policy Condition is replaced by the following:

   If this policy is cancelled, we will send the First Named Insured any premium refund due. If we cancel, the refund will be computed pro rata. If the First Named Insured cancels, the refund will be computed at 90% of pro rata. The cancellation will be effective even if we have not made or offered a refund.

3. The following Condition is added and supercedes any provision to the contrary:

   NONRENEWAL

   a. If we decide not to renew this policy, we will send written notice to the First Named Insured at least 45 days prior to the expiration date of the policy if the policy is written for a period of one year or less. If the policy is written for a period of more than one year, notice will be sent at least 45 days prior to the anniversary date of the policy.

   b. We will mail or deliver our notice to the First Named Insured's last mailing address known to us.

   c. If notice is mailed, proof of mailing will be sufficient proof of notice.

## INDIANA CHANGES - WORKERS' COMPENSATION EXCLUSION

IL-0117R(12-10)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL EXCESS LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE FORM.
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM

A. For insurance provided under the:

Commercial General Liability Coverage Part
Employment-Related Practices Liability Coverage Part
Liquor Liability Coverage Form
Owners And Contractors Protective Liability Coverage Part
Products/Completed Operations Liability Coverage Form
Railroad Protective Liability Coverage Form

The following is added to the Workers' Compensation and Similar Laws Exclusion:

This exclusion also applies to any obligation of the insured under the Indiana Workers' Compensation statutes arising out of the failure of the insured to exact from a contractor (or subcontractor if the insured is a contractor) a certificate from the workers' compensation board showing that the contractor (or subcontractor) has complied with the applicable workers' compensation insurance requirements.

B. For insurance provided under the Commercial Automobile Coverage Part, the following is added to the Workers' Compensation Exclusion:

This exclusion also applies to any obligation of the insured under the Indiana Workers' Compensation statutes arising out of the failure of the insured to exact from a contractor (or subcontractor if the insured is a contractor) a certificate from the workers' compensation board showing that the contractor (or subcontractor) has complied with the applicable workers' compensation insurance requirements.

C. For insurance provided under the Commercial Excess Liability Coverage Form, the following is added to exclusion 2e:

This exclusion also applies to any obligation of the insured under the Indiana Workers' Compensation statutes arising out of the failure of the insured to exact from a contractor (or subcontractor if the insured is a contractor) a certificate from the workers' compensation board showing that the contractor (or subcontractor) has complied with the applicable workers' compensation insurance requirements.

## INDIANA CHANGES

IL-0158F(3-14)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTO COVERAGE PART
COMMERCIAL CRIME - LIABILITY FOR GUESTS' PROPERTY, SAFE DEPOSIT BOX COVERAGE FORM K
COMMERCIAL CRIME - LIABILITY FOR GUESTS' PROPERTY PREMISES COVERAGE FORM L
COMMERCIAL CRIME - SAFE DEPOSITORY LIABILITY COVERAGE FORM M
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY - LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY - MORTGAGE HOLDERS ERRORS AND OMISSIONS COVERAGE FORM*
DIRECTORS' AND OFFICERS' LIABILITY COVERAGE PART
EMPLOYEE BENEFITS LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
ERRORS AND OMISSIONS COVERAGE PART

FARM LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
POLLUTION LIABILITY COVERAGE FORM
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS-COMPLETED OPERATIONS LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM

* Under the Mortgage Holders Errors and Omissions Coverage Form, the following condition applies only to Coverage C and Coverage D.

The following condition is added:

Notice given by or on behalf of the insured to any of our authorized agents in Indiana, with particulars sufficient to identify the insured, shall be considered to be notice to us.

## INDIANA CHANGES - AMENDMENT OF DEFINITION OF POLLUTANTS          CA-7264(10-12)

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

The following replaces the definition of *"Pollutants"* under the Definitions section:

*"Pollutants"* means any solid, liquid, gaseous, bacterial, fungal, electromagnetic, thermal or other substance that can be toxic or hazardous, cause irritation to animals or persons and/or cause contamination to property and the environment including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Specific examples identified as pollutants include, but are not limited to, diesel, kerosene, and other fuel oils, gasoline, butane, propane, natural gas, and other fuels, brake fluid, transmission fluid, and other hydraulic fluids, ethylene glycol, methanol, ethanol, isopropyl alcohol, and propylene glycol, and other antifreeze additives, grease, tar, petroleum distillates, and other petroleum products, carbon monoxide, and other exhaust gases, stoddard solvent, mineral spirits, and other solvents, chromium compounds, emulsions/emulsifiers, naphtha, tetrachloroethylene, perchloroethylene (PERC), trichloroethylene (TCE), methylene chloroform, and other dry cleaning chemicals, methyl isobutyl ketone, methyl ethyl ketone, n-butyl acetate, 2-butoxyethanol, hexylene glycol, peroxides, freon, polychlorinated biphenyl (PCB), CFC113, chlorofluorocarbons, chlorinated hydrocarbons, adhesives, pesticides, insecticides, barium, 1,2-Dichloroethylene, ethylene dichloride, dichloromethane, methylene chloride, ethylbenzene, lead, Mercury, Selenium, sulfate, xylene, silica, sewage, and industrial waste materials and all substances specifically listed, identified, or described by one or more of the following references: Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) Priority List Hazardous Substances (1997 and all subsequent editions), Agency for Toxic Substances and Disease Registry ToxFAQs™, and/or U.S. Environmental Protection Agency EMCI Chemical References Complete Index. Substances identified as examples above or by the referenced lists also include materials or substances to be discarded, recycled, reconditioned, or reclaimed.

The definition of *pollutants* applies whether or not such solid, liquid, gaseous, bacterial, fungal, electromagnetic or thermal irritant or contaminant is your product or products used by or for you, and/or is an integral part of or incidental to your business or operations or has any function in your business, operations, premises, site, or location.

## INDIANA CHANGES - CONCEALMENT, MISREPRESENTATION OR FRAUD          IL-0156F(7-89)

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BIS-PAK COVERAGE PART
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

The Concealment, Misrepresentation or Fraud Condition is replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for any loss or damage in any case of:

1. Concealment or misrepresentation of a material fact; or

2. Fraud,

committed by an insured at any time and relating to a claim under this policy.

## COVERED AUTO SYMBOLS ENDORSEMENT - TRUCKERS

CA-7016(7-97)

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

Part A. Description of Covered Auto Designation Symbols of Section I - Covered Autos is changed to revise the descriptions of symbol "8," HIRED AUTOS ONLY, and symbol "9," NONOWNED AUTOS ONLY.

8 = HIRED AUTOS ONLY. Only those autos you lease, hire, rent or borrow. This does not include any private passenger type auto you lease, hire rent or borrow from any member of your household, any of your employees, partners or agents or members of their households.

9 = NONOWNED AUTOS ONLY. Only those autos you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes private passenger type autos owned by your employees or partners or members of their households but only while used in your business or your personal affairs.

## LOSS PAYABLE CLAUSE

CA-7027(12-93)

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

1. We will pay, as interest may appear, you and the loss payee named in the Schedule for loss to a covered auto.

2. The insurance covers the interest of the loss payee unless the loss results from conversion, secretion or embezzlement on your part.

### 3. CANCELLATION

a. If we cancel the policy for any reason other than nonpayment of premium, we will mail notice to the loss payee in accordance with the Cancellation Common Policy Condition.

b. If the policy is cancelled due to nonpayment of premium, we will mail to the loss payee, a copy of the policy lapse notice we send the insured.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. Cancellation ends this agreement.

4. If we make any payment to the loss payee, we will obtain their rights against any other party.

## SCHEDULE

First Named Insured and Address:

KINGSBURY ACRES GREENHOUSE INC
C/O BILL CHRISTAKES
20601 S LA GRANGE RD
FRANKFORT IL 60423

Loss Payee (Name and Address)

WELLS FARGO EQUIPMENT FINANCE
550 S 4TH ST
MINNEAPOLIS MN 55415

Company Name and Address:

ACUITY, A Mutual Insurance Company
2800 South Taylor Drive
PO Box 58
Sheboygan, WI 53082-0058

Agency Name and Number:

SHANAHAN INSURANCE AGENCY INC
8071-AL

Policy Number:  X93151

Policy Period:   Effective Date:   04-15-16

                 Expiration Date:  04-15-17

| Unit Number | Model Year | Description of Applicable Vehicles Vehicle Description | ID Number |
|---|---|---|---|
| 001 | 2008 | INTERNATIONAL 4000 SERIES 4300 | 1HTMMAAN18H558087 |

| Unit Number | Physical Damage Deductibles Comprehensive | Specified Causes of Loss | Collision |
|---|---|---|---|
| 001 | $ 500 | | $ 500 |



WORKERS' COMPENSATION

## Information Page

1. Named Insured and Address:

KINGSBURY ACRES GREENHOUSE INC
C/O BILL CHRISTAKES
20601 S LA GRANGE RD
FRANKFORT IL 60423

Agency Name and Number:

SHANAHAN INSURANCE AGENCY INC
8071-AL
21237 S LA GRANGE RD
FRANKFORT IL 60423
Insured Policy Number: X93151
Policy Number: CWC-X93151-00

Identification Number: 130935729
FEIN: 461524709

The Named Insured is:
CORPORATION

2. Policy Period: Inception 04-15-16 Expiration 04-15-17
12:01 A.M. standard time at the address of the insured stated herein.

3. A. Workers' Compensation Insurance: Part One of the policy applies to the Workers' Compensation Law of the states listed here:

Indiana

B. Employers' Liability Insurance: Part Two of the policy applies to work in each state listed in Item 3.A. The limits of our liability under Part Two are:

Bodily Injury by Accident ..... Each Accident ................................. $ 500,000
Bodily Injury by Disease ..... Policy Limit ................................... 500,000
Bodily Injury by Disease ..... Each Employee .............................. 500,000

C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here:

All states except North Dakota, Ohio, Washington and Wyoming and States designated in Item 3.A. above.

D. Endorsements:

| Form Number | Form Title | Premium |
|---|---|---|
| WC 00 04 06 A(08-95) | Premium Discount Endorsement ............................... $ | |
| WC-7098 (04-08) | Indiana Second Injury Fund Surcharge ........................ | 169.00 |
| WC 00 03 08 (04-84) | Partners, Officers and Others Exclusion Endorsement ........ | |
| WC 00 00 00 C(01-15) | Workers' Compensation and Employers' Liability Insurance Policy .................................................... | |
| WC 00 04 03 (04-84) | Experience Rating Modification Factor Endorsement .......... | |
| WC 00 04 04 (04-84) | Pending Rate Change Endorsement ........................... | |
| WC 00 04 14 (07-90) | Notification of Change in Ownership Endorsement ............ | |
| WC 00 04 19 (01-01) | Premium Due Date Endorsement .............................. | |

Insured Renewal or Replacement Number: X93151
Renewal or Replacement Number: CWC-X93151-00

WC 00 00 01 A(6-01)                    Policyholder - Original                    SO 01.01/31/18

L00097807160041718

Page 2

Insured Policy Number: X93151
Policy Number: CWC-X93151-00
Effective Date: 04-15-16

| Form Number | Form Title | Premium |
|---|---|---|
| WC 00 04 22 B(01-15) | Terrorism Risk Insurance Program Reauthorization Act Disclosure Endorsement | |
| WC 00 04 21 D(01-15) | Catastrophe (Other than Certified Acts of Terrorism) Premium Endorsement | |

4. Premium: The premium for this policy will be determined by our Manual of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classification of Operations | Unit No. | Code No. | Premium Basis (Estimated Total Annual Remuneration) | Rates (Per $100 of Remuneration) | Estimated Annual Premiums |
|---|---|---|---|---|---|
| Indiana | | | | | |
| Farm - Nursery Employees and Drivers | 001 | 0005 | 487,761 | $ 3.28 | $ 15,999.00 |
| Clerical Office Employees NOC | 002 | 8810 | If Any | .18 | Included |
| Employers' Liability With Work Comp - Incr. Limits 500,000 BI per Accident, 500,000 Disease per Employee, 500,000 Aggregate Disease Limit | 003 | 9807 | | | 128.00 |
| | | | | | 16,127.00 |
| Experience Modification | | | | X | 1,360 |
| | | | | | 21,933.00 |
| Less Premium Discount | | | | | 1,086.00 |
| Expense Constant | | 0900 | | | 160.00 |
| Provisions for Terrorism | 004 | 9740 | 487,761 | .01 | 49.00 |
| Provisions for Catastrophe (Other than Certified Acts of Terrorism) | 005 | 9741 | 487,761 | .01 | 49.00 |

Total Estimated Annual Premium ...... $ 21,105.00
Annual Minimum Premium : ..... $ 1,193.00

Named Insured
KINGSBURY ACRES GREENHOUSE INC
Federal Employer Identification Number: 461524709
State Unemployment Number:

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 14 of 30

WC 00 00 01 A(5-01)

SQ.01.0131/18

L00097807161041718

Insured Policy Number: X93151
Policy Number: CWC-X93151-00
Effective Date: 04-15-16

**Locations Covered:**

S HUPP & 1ST RD
LA PORTE IN 46350

Countersigned by SHANAHAN INSURANCE AGENCY INC
Authorized Representative

Date of Issue: 01-31-18

L00097807162041718

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 16 of 30

## WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY INSURANCE POLICY

### Index of Policy Provisions

| | Page | | Page |
|---|---|---|---|
| AGREEMENT | 1 | F. Other Insurance | 3 |
| | | G. Limits of Liability | 3 |
| GENERAL SECTION | 1 | H. Recovery From Others | 4 |
| A. The Policy | 1 | I. Actions Against Us | 4 |
| B. Who Is Insured | 1 | | |
| C. Workers' Compensation Law | 1 | PART THREE - OTHER STATES INSURANCE | 4 |
| D. State | 1 | A. How This Insurance Applies | 4 |
| E. Locations | 1 | B. Notice | 4 |
| | | | |
| PART ONE - WORKERS' COMPENSATION INSURANCE | 1 | PART FOUR - YOUR DUTIES IF INJURY OCCURS | 4 |
| A. How This Insurance Applies | 1 | | |
| B. We Will Pay | 1 | PART FIVE - PREMIUM | 4 |
| C. We Will Defend | 1 | A. Our Manuals | 4 |
| D. We Will Also Pay | 1 | B. Classifications | 4 |
| E. Other Insurance | 1 | C. Remuneration | 4 |
| F. Payments You Must Make | 1 | D. Premium Payments | 5 |
| G. Recovery From Others | 2 | E. Final Premium | 5 |
| H. Statutory Provisions | 2 | F. Records | 5 |
| | | G. Audit | 5 |
| PART TWO - EMPLOYERS' LIABILITY INSURANCE | 2 | PART SIX - CONDITIONS | 5 |
| A. How This Insurance Applies | 2 | A. Inspection | 5 |
| B. We Will Pay | 2 | B. Long Term Policy | 5 |
| C. Exclusions | 2 | C. Transfer of Your Rights and Duties | 5 |
| D. We Will Defend | 3 | D. Cancellation | 5 |
| E. We Will Also Pay | 3 | E. Sole Representative | 5 |

IMPORTANT: This Index is not part of the Workers' Compensation and Employers' Liability Policy and does not provide coverage. Refer to the Workers' Compensation and Employers' Liability Policy itself for actual contractual provisions.

PLEASE READ THE WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY POLICY CAREFULLY.

## AGREEMENT

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows:

## GENERAL SECTION

### A. THE POLICY

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

### B. WHO IS INSURED

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

### C. WORKERS' COMPENSATION LAW

Workers' Compensation Law means the work-ers' or workmen's compensation law and occupational disease law of each state or territory named in Item 3A of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

### D. STATE

State means any state of the United States of America and the District of Columbia.

### E. LOCATIONS

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page. If it covers all other workplaces in Item 3A states, unless you have other insurance or are self-insured for such workplaces.

## PART ONE - WORKERS' COMPENSATION INSURANCE

### A. HOW THIS INSURANCE APPLIES

This workers' compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.

2. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

### B. WE WILL PAY

We will pay promptly when due the benefits required of you by the workers' compensation law.

### C. WE WILL DEFEND

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding, or suit that is not covered by this insurance.

### D. WE WILL ALSO PAY

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1. Reasonable expenses incurred at our request, but not loss of earnings;

2. Premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

3. Litigation costs taxed against you;

4. Interest on a judgment as required by law until we offer the amount due under this insurance; and

5. Expenses we incur.

### E. OTHER INSURANCE

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

### F. PAYMENTS YOU MUST MAKE

You are responsible for any payments in excess of the benefits regularly provided by the workers' compensation law including those required because:

1. Of your serious and willful misconduct;

2. You knowingly employ an employee in violation of law;

3. You fail to comply with a health or safety law or regulation; or

4. You discharge, coerce or otherwise discriminate against any employee in violation of the workers' compensation law.

If we make any payments in excess of the benefits regularly provided by the workers' compensation law on your behalf, you will reimburse us promptly.

## G. RECOVERY FROM OTHERS

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

## H. STATUTORY PROVISIONS

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.

2. Your default or the bankruptcy or insolvency of you, or your estate will not relieve us of our duties under this insurance after an injury occurs.

3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

4. Jurisdiction over you is jurisdiction over us for purposes of the workers' compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5. This insurance conforms to the parts of the workers' compensation law that apply to:

   a. Benefits payable by this insurance;

   b. Special taxes, payments into security or other special funds; and assessments payable by us under that law.

6. Terms of this insurance that conflict with the workers' compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO - EMPLOYERS' LIABILITY INSURANCE

### A. HOW THIS INSURANCE APPLIES

This employers' liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A of the Information Page.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

### B. WE WILL PAY

We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers' Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. For which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2. For care and loss of services; and,

3. For consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee;

provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. Because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

### C. EXCLUSIONS

This insurance does not cover:

1. Liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. Punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. Bodily injury to an employee while employed in violation of law with your actual

knowledge or the actual knowledge of any of your executive officers;

4. Any obligation imposed by a workers' compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. Bodily Injury intentionally caused or aggravated by you;

6. Bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7. Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;

8. Bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 U.S.C. Sections 901 et seq.), the Nonappropriated Fund Instrumentalities Act (5 U.S.C. Sections 8171 et seq.), the Outer Continental Shelf Lands Act (43 U.S.C. Sections 1331 et seq.), the Defense Base Act (42 U.S.C. Sections 1651-1654), the Federal Mine Safety and Health Act (30 U.S.C. Sections 801 et seq. and 901-944), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws;

9. Bodily injury to any person in work subject to the Federal Employers' Liability Act (45 U.S.C. Sections 51 et seq.); any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws;

10. Bodily Injury to a master or member of the crew of any vessel, and does not cover punitive damages related to your duty or obligation to provide transportation, wages, maintenance, and cure under any applicable maritime law;

11. Fines or penalties imposed for violation of federal or state law;

12. Damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 U.S.C. Sections 1801 et seq.) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

### D. WE WILL DEFEND

We have the right and duty to defend, at our expense, any claim, proceeding or suit against

you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

### E. WE WILL ALSO PAY

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1. Reasonable expenses incurred at our request, but not loss of earnings;

2. Premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. Litigation costs taxed against you;

4. Interest on a judgment as required by law until we offer the amount due under this insurance; and

5. Expenses we incur.

### F. OTHER INSURANCE

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

### G. LIMITS OF LIABILITY

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3B of the Information Page. They apply as explained below.

1. Bodily Injury by Accident

The limit shown for "bodily injury by accident-each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury by Disease

The limit shown for "bodily injury by disease-policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease-each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

L00097807167041718

Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3. We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

## H. RECOVERY FROM OTHERS

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

## I. ACTIONS AGAINST US

There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability. The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

## PART THREE - OTHER STATES INSURANCE

### A. HOW THIS INSURANCE APPLIES

1. This other states insurance applies only if one or more states are shown in Item 3C of the Information Page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3A of the Information Page.

3. We will reimburse you for the benefits required by the workers' compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3A of the Information Page, coverage will not be afforded for that state unless we are notified within 30 days.

### B. NOTICE

Tell us at once if you begin work in any state listed in Item 3C of the Information Page.

## PART FOUR - YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1. Provide for immediate medical and other services required by the workers' compensation law.

2. Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3. Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5. Do nothing after an injury occurs that would interfere with our right to recover from others.

6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE - PREMIUM

### A. OUR MANUALS

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

### B. CLASSIFICATIONS

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your

actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

### C. REMUNERATION

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. All your officers and employees engaged in work covered by this policy; and

2. All other persons engaged in work that could make us liable under Part One - Workers' Compensation Insurance of this policy, if you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers' compensation obligations.

### D. PREMIUM PAYMENTS

You will pay all premium when due. You will pay the premium even if part or all of a workers' compensation law is not valid.

### E. FINAL PREMIUM

The premium shown on the Information Page, schedules and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is cancelled, final premium will be determined in the following way unless our

manuals provide otherwise:

1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short rate cancellation table and procedure. Final premium will not be less than the minimum premium.

### F. RECORDS

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

### G. AUDIT

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

## PART SIX - CONDITIONS

### A. INSPECTION

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

### B. LONG TERM POLICY

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

### C. TRANSFER OF YOUR RIGHTS AND DUTIES

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within 30

after your death, we will cover your legal representative as insured.

### D. CANCELLATION

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. We must mail or deliver to you, not less than 10 days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy, is changed by this statement to comply with the law.

### E. SOLE REPRESENTATIVE

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium and give or receive notice of cancellation.

**TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT DISCLOSURE ENDORSEMENT**

WC 00 04 22 B(1-15)

This endorsement addresses requirements of the Terrorism Risk Insurance Act of 2002, as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2015. It serves to notify you of certain limitations under the Act, and that your insurance carrier is charging premium for losses that may occur in the event of an "Act of Terrorism."

Your policy provides coverage for workers compensation losses caused by Acts of Terrorism, including workers compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions and conditions in your policy, and any applicable federal and/or state laws, rules or regulations.

**Definitions**

The definitions provided in this endorsement are based on and have the same meaning as the definitions in the Act. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply.

"Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments thereto, including any amendments resulting from the Terrorism Risk Insurance Program Reauthorization Act of 2015.

"Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States as meeting all of the following requirements:

  a. The act is an act of terrorism.

  b. The act is violent or dangerous to human life, property or infrastructure.

  c. The act resulted in damage within the United States, or outside of the United States in the case of the premises of United States missions or certain air carriers or vessels.

  d. The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured Loss" means any loss resulting from an act of terrorism (and, except for Pennsylvania, including an act of war, in the case of workers compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at the premises of United States missions or to certain air carriers or vessels.

"Insurer Deductible" means for the period beginning on January 1, 2015 and ending on December 31, 2020, an amount equal to 20% of our direct earned

premiums during the immediately preceding calendar year.

**Limitation of Liability**

The Act limits our liability to you under this policy. If aggregate Insured Losses exceed $100,000,000,000 in a calendar year and if we have met our Insurer Deductible, we are not liable for the payment of any portion of the amount of Insured Losses that exceeds $100,000,000,000; and for aggregate Insured Losses up to $100,000,000,000, we will pay only a pro rata share of such Insured Losses as determined by the Secretary of the Treasury.

**Policyholder Disclosure Notice**

1. Insured Losses would be partially reimbursed by the United States Government. If the aggregate industry Insured Losses exceed:

  a. $100,000,000, with respect to such Insured Losses occurring in calendar year 2015, the United States Government would pay 85% of our Insured Losses that exceed our Insurer Deductible.

  b. $120,000,000, with respect to such Insured Losses occurring in calendar year 2016, the United States Government would pay 84% of our Insured Losses that exceed our Insurer Deductible.

  c. $140,000,000, with respect to such Insured Losses occurring in calendar year 2017, the United States Government would pay 83% of our Insured Losses that exceed our Insurer Deductible.

  d. $160,000,000, with respect to such Insured Losses occurring in calendar year 2018, the United States Government would pay 82% of our Insured Losses that exceed our Insurer Deductible.

  e. $180,000,000, with respect to such Insured Losses occurring in calendar year 2019, the United States Government would pay 81% of our Insured Losses that exceed our Insurer Deductible.

  f. $200,000,000, with respect to such Insured Losses occurring in calendar year 2020, the United States Government would pay 80% of our Insured Losses that exceed our Insurer Deductible.

2. Notwithstanding item 1 above, the United States Government will not make any payment under the Act for any portion of Insured Losses that exceeds $100,000,000,000.

3. The premium charge for the coverage your policy provides for Insured Losses is included in the amount shown in Item 4 of the Information Page or in the Schedule below.

WC 00 04 22 B(1-15)

L00097807170041718

## SCHEDULE

| State | Rate | Premium |
|-------|------|---------|
| IN | $ 0.010 | $ 49.00 |

## PREMIUM DISCOUNT ENDORSEMENT

WC 00 04 06A(8-95)

The premium for this policy and the policies, if any, listed in item 3 of the Schedule may be eligible for a discount. This endorsement shows your estimated discount in items 1 or 2 of the Schedule. The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit. Premium subject to retrospective rating is not subject to premium discount.

### SCHEDULE

| 1. State | Premium Discount | | | |
|----------|------|------|------|------|
| | First $10,000 | Next $190,000 | Next $1,550,000 | Balance |
| INDIANA | 0.0% | 9.1% | 11.3% | 12.3% |

2. Average percentage discount . . . . . . . . . . . . . . . . . . . . . . . . . . N/A

3. Other policies:

4. If there are no entries in items 1, 2 and 3 of the Schedule, see the Premium Discount Endorsement attached to your policy number.

## PARTNERS, OFFICERS AND OTHERS EXCLUSION ENDORSEMENT

WC 00 03 08(4-84)

The policy does not cover bodily injury to any person described in the Schedule.

The premium basis for the policy does not include the remuneration of such persons.

You will reimburse us for any payment we must make because of bodily injury to such persons.

### SCHEDULE

| Partners | Officers | Others |
|----------|----------|--------|
| | | DAVID CHRISTAKES |
| | | RICHARD CHRISTAKES |

## NOTIFICATION OF CHANGE IN OWNERSHIP ENDORSEMENT

WC 00 04 14(7-90)

Experience rating is mandatory for all eligible insureds. The experience rating modification factor, if any, applicable to this policy, may change if there is a change in your ownership or in that of one or more of the entities eligible to be combined with you for experience rating purposes. Change in ownership includes sales, purchases, other transfers, mergers, consolidations, dissolutions, formations of a new entity and other changes provided for in the applicable experience rating plan manual.

You must report any change in ownership to us in writing within 90 days of such change. Failure to report such changes within this period may result in revision of the experience rating modification factor used to determine your premium.

**CATASTROPHE (OTHER THAN CERTIFIED ACTS OF TERRORISM) PREMIUM ENDORSEMENT**

WC 00 04 21 D(1-15)

This endorsement is notification that your insurance carrier is charging premium to cover the losses that may occur in the event of a Catastrophe (other than Certified Acts of Terrorism) as that term is defined below. Your policy provides coverage for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism). This premium charge does not provide funding for Certified Acts of Terrorism contemplated under the Terrorism Risk Insurance Program Reauthorization Act Disclosure Endorsement (WC 00 04 22 B), attached to this policy.

For purposes of this endorsement, the following definitions apply:

Catastrophe (other than Certified Acts of Terrorism): Any single event, resulting from an Earthquake, Noncertified Act of Terrorism, or Catastrophic Industrial Accident, which results in aggregate workers compensation losses in excess of $50 million.

Earthquake: The shaking and vibration at the surface of the earth resulting from underground movement along a fault plane or from volcanic activity.

Noncertified Act of Terrorism: An event that is not certified as an Act of Terrorism by the Secretary of Treasury pursuant to the Terrorism

Risk Insurance Act of 2002 (as amended) but that meets all of the following criteria:

a. It is an act that is violent or dangerous to human life, property, or infrastructure;

b. The act results in damage within the United States, or outside of the United States in the case of the premises of United States missions or air carriers or vessels as those terms are defined in the Terrorism Risk Insurance Act of 2002 (as amended); and

c. It is an act that has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Catastrophic Industrial Accident: A chemical release, large explosion, or small blast that is localized in nature and affects workers in a small perimeter the size of a building.

The premium charge for the coverage your policy provides for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism) is shown in Item 4 of the Information Page or in the Schedule below.

**SCHEDULE**

| State | Rate | Premium |
|-------|------|---------|
| IN | $ 0.010 | $ 49.00 |

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 25 of 30

WC 00 04 21 D(1-15)

## PREMIUM DUE DATE ENDORSEMENT

WC 00 04 19(1-01)

This endorsement is used to amend:

Section D Of Part Five of the policy is replaced by this provision.

PART FIVE - PREMIUM

D. Premium Payment is amended to read:

You will pay all premium when due. You will pay the premium even if part or all of a workers' compensation law is not valid. The due date for audit and retrospective premiums is the date of the billing.

## EXPERIENCE RATING MODIFICATION FACTOR ENDORSEMENT

WC 00 04 03(4-84)

The premium for the policy will be adjusted by an experience rating modification factor. The factor was not available when the policy was issued. The factor, if any, shown on the Information Page is an estimate. We will issue an endorsement to show the proper factor, if different from the factor shown, when it is calculated.

## PENDING RATE CHANGE ENDORSEMENT

WC 00 04 04(4-84)

A rate change filing is being considered by the proper regulatory authority. The filing may result in rates different from the rates shown on the policy. If it does, we will issue an endorsement to show the new rates and their effective date. If only one state is shown in Item 3A. of the Information Page, this endorsement applies to that state. If more than one state is shown there, this endorsement applies only in the state shown in the Schedule.

## INDIANA SECOND INJURY FUND SURCHARGE

WC-7098(4-08)

This endorsement modifies insurance provided under the following:

WORKERS' COMPENSATION

The total Indiana Second Injury Fund Surcharge is included in the Total Estimated Annual Premium shown on the Information Page.

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 27 of 30

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 28 of 30

## Your Policyholder Identification Cards

INSURANCE IDENTIFICATION CARD



| | |
|---|---|
| Policy Number | X93151 |
| Policy Period | 04-27-17 To 04-15-18 |
| Named Insured | KINGSBURY ACRES GREENHOUSE INC |
| Your Agency | SHANAHAN INSURANCE AGENCY INC |
| | 815.469.4545 |
| Your Car | 08 INTERNATIONAL 4000 SERIES 4300 |
| | 1HTMMAAN18H558087 |

FOR ALL CLAIMS CALL 800.242.7666

Acuity, A Mutual Insurance Company

TO REMOVE, FOLD FORWARD AND BACK ALONG EACH PERFORATION AROUND CARD.
*KEEP ONE CARD IN YOUR VEHICLE AT ALL TIMES*

INSURANCE IDENTIFICATION CARD



| | |
|---|---|
| Policy Number | X93151 |
| Policy Period | 04-27-17 To 04-15-18 |
| Named Insured | KINGSBURY ACRES GREENHOUSE INC |
| Your Agency | SHANAHAN INSURANCE AGENCY INC |
| | 815.469.4545 |
| Your Car | 08 INTERNATIONAL 4000 SERIES 4300 |
| | 1HTMMAAN18H558087 |

FOR ALL CLAIMS CALL 800.242.7666

Acuity, A Mutual Insurance Company

TO REMOVE, FOLD FORWARD AND BACK ALONG EACH PERFORATION AROUND CARD.
*KEEP ONE CARD IN YOUR VEHICLE AT ALL TIMES*

## Your Policyholder Identification Cards

INSURANCE IDENTIFICATION CARD



| | |
|---|---|
| Policy Number | X93151 |
| Policy Period | 04-27-17 To 04-15-18 |
| Named Insured | KINGSBURY ACRES GREENHOUSE INC |
| Your Agency | SHANAHAN INSURANCE AGENCY INC |
| | 815.469.4545 |
| Your Car | HIRED AND NONOWNED AUTOS |

FOR ALL CLAIMS CALL 800.242.7666

Acuity, A Mutual Insurance Company

TO REMOVE, FOLD FORWARD AND BACK ALONG EACH PERFORATION AROUND CARD.
*KEEP ONE CARD IN YOUR VEHICLE AT ALL TIMES*

INSURANCE IDENTIFICATION CARD



| | |
|---|---|
| Policy Number | X93151 |
| Policy Period | 04-27-17 To 04-15-18 |
| Named Insured | KINGSBURY ACRES GREENHOUSE INC |
| Your Agency | SHANAHAN INSURANCE AGENCY INC |
| | 815.469.4545 |
| Your Car | HIRED AND NONOWNED AUTOS |

FOR ALL CLAIMS CALL 800.242.7666

Acuity, A Mutual Insurance Company

TO REMOVE, FOLD FORWARD AND BACK ALONG EACH PERFORATION AROUND CARD.
*KEEP ONE CARD IN YOUR VEHICLE AT ALL TIMES*

## Your Policyholder Identification Cards

Intentionally Left Blank

Intentionally Left Blank

Acuity, A Mutual Insurance Company

Acuity, A Mutual Insurance Company

TO REMOVE, FOLD FORWARD AND BACK ALONG EACH PERFORATION AROUND CARD.
*KEEP ONE CARD IN YOUR VEHICLE AT ALL TIMES*

ELECTRONICALLY FILED
4/6/2018 11:37 AM
2018-CH-04484
PAGE 30 of 30

Keep one card in your
vehicle at all times.




IF YOU HAVE AN ACCIDENT OR LOSS

1. Write down the names and addresses of persons and of witnesses involved, and license numbers.
2. Notify the police immediately.
3. Report the accident or loss to us promptly. If anyone is injured or your car or the property of others is substantially damaged, telephone us at the number shown on this card.
4. Do not admit liability, authorize repairs or discuss the accident with anyone except a known Acuity representative or the police.

Keep one card in your
vehicle at all times.



IF YOU HAVE AN ACCIDENT OR LOSS

1. Write down the names and addresses of persons and of witnesses involved, and license numbers.
2. Notify the police immediately.
3. Report the accident or loss to us promptly. If anyone is injured or your car or the property of others is substantially damaged, telephone us at the number shown on this card.
4. Do not admit liability, authorize repairs or discuss the accident with anyone except a known Acuity representative or the police.

Keep one card in your
vehicle at all times.




IF YOU HAVE AN ACCIDENT OR LOSS

1. Write down the names and addresses of persons and of witnesses involved, and license numbers.
2. Notify the police immediately.
3. Report the accident or loss to us promptly. If anyone is injured or your car or the property of others is substantially damaged, telephone us at the number shown on this card.
4. Do not admit liability, authorize repairs or discuss the accident with anyone except a known Acuity representative or the police.



**Illinois Department of Insurance**

320 West Washington Street
Springfield, Illinois 62767



9214 7969 0099 9790 1620 7233 93

L00097807177041718





NATIONAL CASUALTY COMPANY
One West Nationwide Blvd
MC 1-04-701
Columbus, OH 43215-2220